# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

### CASE NO.:

6:06-cv-183-ORL-28KRS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PATRICK KIRKLAND, | ) |
| TROPICAL VILLAGE, INC., | ) |
| CLARITY DEVELOPMENT CORPORATION, and | ) |
| SENIOR ADULT LIVING CORPORATION, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| SUNSET BAY CLUB, INC., | ) |
| SUMMERHILL VENTURES, INC., | ) |
| PELICAN BAY CLUB, INC., and | ) |
| ISLEWORTH ADULT COMMUNITY, INC., | ) |
| | ) |
| Relief Defendants. | ) |
| | ) |

FILED

2006 FEB 16 AM 8:33

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

## I. INTRODUCTION

1.       The Commission brings this action to enjoin Defendants from continuing to defraud investors through the sale of securities issued by Defendants Tropical Village, Inc. ("Tropical"), Clarity Development Corporation ("Clarity"), and Senior Adult Living Corp., a/k/a Senior Adult Living, Inc. ("Senior Adult") in violation of the antifraud and registration provisions of the federal securities laws. From at least 1999 to the present, those three companies – all of which Defendant Patrick B. Kirkland controls – have raised more than $59

million from at least 115 investors nationwide by offering and selling unregistered securities in the form of investments in real estate developments located in Florida, Georgia, and Texas. Advertising in national publications such as The Wall Street Journal and Money Magazine, the Defendants are selling investments called triplexes, which are apartments designed for shared senior rental living, promising exorbitant profits of 23% to 55% generated by the rental income pooled and distributed among the developments' owners.

2.     In connection with the offer and sale of the triplexes, the Defendants have made numerous material misrepresentations and omissions to potential and actual investors. First, the Defendants' profit projections of 23% to 55% are based on false tenant occupancy levels of 95% for each development. Kirkland and his companies, through sales agents, also falsely assure prospective investors they are receiving more than 200 calls a day from seniors interested in leasing the properties, and that there is a waiting list. In fact, since their inception, the completed developments have had rental rates of 34% or less, and investors who purchased triplexes are losing money.

3.     All the while, Kirkland has profited handsomely from the sale of the triplex investments, paying himself millions in investor funds to maintain his lavish lifestyle that includes expensive homes, cars, jewelry, and a jet aircraft. Additionally, Kirkland, Clarity and Senior Adult have failed to disclose, among other things, the fact that the state of California issued desist-and-refrain orders against Kirkland, Tropical and Clarity for state securities law violations. Instead, every time California securities regulators have issued a desist-and-refrain order, Kirkland, undeterred, has simply incorporated a new company and continued doing business as usual.

4.      Emergency relief in the form of a temporary restraining order and a preliminary injunction is necessary to prevent Kirkland and his companies from continuing to defraud investors.  Unless immediately restrained and enjoined, the Defendants could complete pending sales on triplexes that have not yet closed, resulting in investors turning over as much as $72 million more to the Defendants.  Moreover, Kirkland continues to solicit new investors through Senior Adult.  Senior Adult's website is advertising a new development, The Estates At Lady Lake, located in Lady Lake, Florida.  The Commission further seeks emergency relief in the form of an asset freeze and the appointment of a receiver in order to prevent the further dissipation of investor assets.

## II.  DEFENDANTS AND RELIEF DEFENDANTS

### A.  Defendants

5.      Kirkland, age 62, resides in Orlando, Florida.  He is president and sole director of Senior Adult.  He was president and sole director of Clarity, and the president and one of two directors of Tropical.  He is also the sole director of Relief Defendants Pelican Bay Club, Inc. and Isleworth Adult Community, Inc., one of two directors of Relief Defendant Sunset Bay Club, Inc., and an officer of Relief Defendant Summerhill Ventures, Inc.  Kirkland is the subject of two desist-and-refrain orders and a temporary restraining order issued by the state of California over violations of that state's securities laws.

6.      Tropical was a Florida corporation, incorporated in April 1999 that was located in Orlando, Florida.  Kirkland offered and sold the triplex investments through Tropical from approximately April 1999 through about November 2004.  The securities Tropical offered and sold were never registered with the Commission.  Tropical is subject to the aforementioned

California desist-and-refrain orders and the temporary restraining order.  The state of Florida administratively dissolved Tropical on September 16, 2005 for failure to file its annual report.

7.    Clarity is a Florida corporation incorporated in December 2004, and located in Orlando, Florida.  Kirkland formed Clarity to continue the former Tropical offering after California issued its first desist-and-refrain order against Tropical on November 19, 2004. Clarity operated out of the same offices as Tropical.  Clarity offered and sold the triplex investments from December 2004 through approximately June 2005.  The securities Clarity offered and sold were never registered with the Commission.  Clarity is subject to the two California desist-and-refrain orders, and the temporary restraining order.

8.    Senior Adult is a Florida corporation incorporated in October 2005, and located in Orlando, Florida.  Kirkland formed Senior Adult to continue the former Clarity offering after California issued its second desist-and-refrain order against Clarity on June 6, 2005.  It operates out of the same offices as its predecessors, Tropical and Clarity, offering the same triplex investments as Tropical and Clarity sold.  The securities Senior Adult offers have never been registered with the Commission.  Senior Adult is also subject to the California temporary restraining order.

### B.  Relief Defendants

9.    Sunset Bay Club, Inc. is a Florida corporation incorporated in October 2001 and located in Orlando, Florida.  It is the record owner of the units remaining at the triplex development Sunset Bay Club, located in New Port Richie, Florida.  It is also the record owner of triplexes Kirkland and Senior Adult are selling to investors in a development called Turtle Cove, located in Lakeland, Florida.  Kirkland and his former wife are the directors of Sunset Bay Club.

10.     Summerhill Ventures is a Georgia corporation incorporated in June 2000 and located in Acworth, Georgia.  It is the record owner of the units remaining at the triplex development Summerhill Ventures, located in Marietta, Georgia.  Kirkland is an officer of Summerhill Ventures.

11.     Pelican Bay Club, Inc. is a Florida corporation incorporated in April 2002 and located in Orlando, Florida.  It is the record owner of the land on which Kirkland and Senior Adult are developing the Pelican Bay Club triplex development, located in Palm Bay, Florida. Kirkland is the president and sole director of Pelican Bay Club.

12.     Isleworth Adult Community, Inc. is a Texas corporation incorporated in February 2005 and located in Houston, Texas.  It is the record owner of the land on which Kirkland and Senior Adult are developing the Isleworth Adult Community triplex development, located in Houston, Texas.  Kirkland is the sole director of Isleworth Adult Community.

### III. JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

14.     Venue is proper in the Middle District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Middle District of Florida.  In addition, the principal offices of Tropical, Clarity, and Senior Adult, and of Relief Defendants Sunset Bay Club and Pelican Bay Club are located in the Middle District of Florida, and Kirkland resides in the Middle District of Florida.

15.     Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.  THE DEFENDANTS' FRAUDULENT OFFERING

### A.  Overview of the Fraudulent Investment and Offering

#### 1. The Developments

16.     From approximately April 1999 through the present, Kirkland, through Tropical, then Clarity, and now Senior Adult, has offered and sold investments nationwide in triplex units located in six senior developments in Florida, Georgia, and Texas.  A triplex consists of three floors, with each floor containing five bedrooms and a shared kitchen and living room, for a total of fifteen bedrooms per triplex.

17.     Kirkland and the other Defendants do not market the triplexes as residences for investors.  Instead, they market the triplexes as desirable, affordable rental housing, with senior citizens as prospective tenants, that an independent management company will run and that will provide a substantial rental income stream.  Depending on the triplex development, Defendants have told investors in written materials and during high pressure sales pitches over the phone that rental income for each development will generate annual returns of 23% to 55%.  Kirkland and sales agents for the three companies have assured prospective investors that if they purchase a triplex, there is nothing to do other than sit back and collect the profit checks.

18.     The cost of a triplex ranges from $595,000 to $825,000, depending on the development and the date of purchase.  Kirkland and the three Defendant companies require investors to make a 10% down payment on a unit to reserve it, and close on the unit after

completion of construction.  The balance of the purchase price is due at closing, and investors usually obtain loans secured by mortgages for the remainder of the purchase price.

19.     From about April 1999 to the present, Kirkland and his companies have offered investments in six development projects:  Harbor Bay, located in Kissimmee, Florida; Sunset Bay Club; Summerhill Ventures; Pelican Bay Club; Isleworth Adult Community; and Turtle Cove. Harbor Bay, Sunset Bay Club, and Summerhill Ventures are completed and have tenants.  Isleworth Adult Community, Pelican Bay Club, and Turtle Cove are in various phases of development.  The number of triplexes at each development ranges from 14 to 52.

20.     From about April 1999 through November 2004, Tropical and Kirkland obtained financing and purchased the land on which all six developments are or will be constructed.  They further designed the developments and, in the case of the completed developments, obtained the necessary construction permits, oversaw construction, and furnished the completed units.

21.     Tropical and Kirkland initially employed and oversaw a management company for two completed developments, Harbor Bay and Sunset Bay Club.  The management companies operate the developments and take care of all business activities, including maintaining the buildings, finding, screening, and selecting tenants, collecting and pooling all the triplexes' rents, and paying all of the development's expenses, including their own management fees.  The management companies also have assessed investors monthly fees to cover the losses the developments have experienced.

22.     Tropical and Kirkland also initially appointed the completed developments' homeowners or condominium associations' boards.  Kirkland originally sat on the boards for both Harbor Bay and Sunset Bay Club.  Kirkland directed the boards, as their first order of business, to draft a pooling agreement under which all rents for each development are pooled and from which all

expenses are paid.  Under the pooling agreements, the remainder of rental income, if any, is to be distributed as profits to investors.  Sunset Bay Club and Harbor Bay have pooling agreements in place.

### 2. The Investment and Offering

23.     From about April 1999 through November 2004, Kirkland and Tropical offered and sold triplex investments in all six developments.  From December 2004 through at least October 2005, Kirkland and Clarity continued to offer and sell triplex investments in five of the six developments.  From October 2005 to the present, Kirkland and Senior Adult have been offering triplex investments in four of the six developments.  Regardless of the entity through which Kirkland orchestrated the sales of the triplex investments, the sales methods and offering materials he used were virtually identical.

24.     Tropical and Clarity advertised their investments in newspapers such as The New York Times, The Wall Street Journal and The Los Angeles Times, and magazines such as Money Magazine and Smart Money, listing a toll-free number to contact.  The advertisements listed "recession proof" investments with returns ranging from 23% to 55%, depending on the particular advertisement.

25.     Tropical and Clarity maintained, and Senior Adult currently maintains, websites providing information about Kirkland, the triplex investment, and all six developments.  All three websites state that a professional management company will manage each development.  Tropical's and Clarity's websites claimed, and Senior Adult's website claims, that Kirkland has more than thirty years experience in developing and financing in Texas, Georgia, and Florida.  Both Tropical's and Clarity's websites claimed Kirkland had a successful seven-year track record in leasing and

managing senior triplexes, and Senior Adult's website describes the investments as being a lucrative opportunity for investors.

26.     Kirkland has employed sales agents to assist him and Tropical, Clarity, and Senior Adult in selling the triplex investments.  When interested investors call the toll-free number listed in the advertisements and on the websites, the sales agents describe the investment opportunity.  If an individual expresses interest, the sales agent sends a package of offering materials.

27.     The written offering materials Tropical, Clarity, and Senior Adult have sent to investors are similar in all material respects.  The written offering materials usually include, among other things, a letter from Kirkland or the sales agent, a mission statement and company history section, an estimated cash flow statement, photographs of a sample triplex, a layout and floor plan, a "most frequently asked questions" section, and statistical and demographic population data for the metropolitan area surrounding the development.

28.     After sending offering materials to a prospective investor, either Kirkland or a sales agent calls the person to follow up, and often uses high-pressure sales tactics to try to close the deal. For example, they tell prospective investors they must act quickly because only a few units are left or prices are going up.

29.     During the calls, Kirkland and sales agents for Tropical, Clarity and Senior Adult assure prospective investors they will not have to do anything but collect their profit checks.  They also tell investors an onsite management company will do everything involved with renting the units, including advertising for tenants, screening tenants, collecting rents, paying expenses, and sending the profit checks to each investor.

30.     Kirkland and sales agents for the three companies tell investors that rents for all units in a development will be pooled and profits distributed evenly among investors, so that even if

that investor's unit is empty, he or she will receive a profit.

31.     Kirkland and the sales agents have promised some investors the return of their down payments if they were not able to obtain financing.  They also have promised some investors they would make six months of mortgage payments, after which they assured investors the units would be profitable.  They also have promised to pay up to 3% of the investors' closing fees.

32.     Since the commencement of the offering, Tropical, Clarity and Senior Adult have raised more than $59 million from at least 115 investors nationwide through offer and sale of the triplex investments.  Senior Adult continues to offer and sell the same triplex investment in four of the six developments, and is preparing to market a new development.  The most recent bank and company financial records the Commission has obtained show that if all investors who placed deposits on triplexes as of September 2005 close on those units, Senior Adult stands to receive as much as $72 million more in investor funds.

33.     No registration statement has been filed or was in effect with the Commission in connection with the securities offered by Tropical, Clarity, and Senior Adult.  Kirkland has not been and is not currently registered with the Commission.

### B.  Misrepresentations and Omissions

34.     Tropical offered and sold triplex investments from about April 1999 through November 2004.  Clarity took over as the entity offering and selling in December 2004, and continued doing so through October 2005, when Senior Adult was formed and took over.  Senior Adult continues marketing and selling triplexes today.  Kirkland has controlled each entity and supervised the sales and solicitation process from the start of Tropical through today.  During that time, in connection with the offer, purchase and sale of these investments, Kirkland and sales agents operating on behalf of each entity used identical sales procedures and made identical material

representations on behalf of each entity to prospective and actual investors that they knew, or were reckless in not knowing, were false or misleading.  They also knowingly or recklessly failed to disclose material information on behalf of each entity to investors about, among other things, the developments' low tenant occupancy rates, the investments' rates of return, and lawsuits and state orders regarding Kirkland and Tropical.

### *1.  False Statements and Omissions Regarding Projected Profits and Tenant Occupancy Rates*

35.     Advertisements by Tropical and Clarity appearing from 1999 through the present in national publications such as The New York Times, The Wall Street Journal, and the Los Angeles Times have projected "recession proof" annual returns ranging from 23% to 55%.

36.     Furthermore, in the offering materials Kirkland and sales agents for all three companies mail to prospective investors, they almost always include a chart projecting the annual triplex investment income.  The chart represents that each triplex investment will generate annual returns of 23% to 55% on the investor's 10% down payment.  The rate of return varies with the date and the development, but each projection is based on 95% of the triplexes of that particular development being full.

37.     For example, offering materials Tropical sent to one investor in August 2002 projected a profit for Pelican Bay Club triplex owners of 40%, and a 44% rate of return for Harbor Bay owners, both based on a 95% occupancy rate.  In April 2004, Tropical sent materials to another investor projecting a 29% return for triplex owners, again based on a 95% occupancy rate.

38.     Starting at least as early as November 2002, Kirkland and the three companies either received or had access to information showing that rental rates on completed developments (Harbor

Bay and Sunset Bay Club) were a fraction of the 95% they were continuing to tell investors they could achieve.

39.     For example, a June 2004 management company report showing occupancy rates at Sunset Bay Club showed occupancy levels at just under 14% for the months of March, April, and May 2004.   As a Sunset Bay Club board member, Kirkland received this report.   Monthly management company reports for Sunset Bay Club generated from July 2004 through December 2005, which Kirkland received or had access to, showed occupancy rates at the development ranging from 14% to 34% -- well below the 95% Kirkland and his agents were projecting.

40.     With occupancy rates ranging between 14% and 34%, Tropical investors who invested in Harbor Bay and Sunset Bay Club have been losing money each month, rather than making any profits.   Investors in these two developments have experienced losses of $2,000 to $5,000 per month.   Starting as early as November 2002, by virtue of letters and management company reports he received or had access to, Kirkland knew or was reckless in not knowing investors were losing money.

41.     Despite receiving or having access to reports showing actual rental rates were far less than 95% and that investors were losing money each month, Kirkland and sales agents for Tropical, Clarity and Senior Adult have continued to project exorbitant profits for investors based on a 95% tenant occupancy rate, both in offering materials mailed to investors and in their national media advertisements.   Because they knew or were reckless in not knowing their projections lacked any reasonable basis, Kirkland and representatives of Tropical, Clarity, and Senior Adult knew or were reckless in not knowing their tenant occupancy rates and profit projections were unreasonable, false and misleading.

## 2. False Statements Regarding High Demand for Triplexes

42.     In their offering materials and on their websites, Tropical and Clarity claimed they received approximately 200 calls per day from prospective tenants. Tropical claimed it typically did not even need to advertise. The "Frequently Asked Questions" section in both companies' websites and in Tropical's offering materials stated the company would have no difficulty leasing the triplexes, and assured investors that Kirkland had a successful seven-year track record of leasing and managing senior triplexes.

43.     Kirkland and sales agents operating under his direction also told investors there was a waiting list of tenants ready to move in, and, that as a result, there would be no difficulty in leasing investors' units.

44.     All of these statements were false. Tropical and Clarity never received anywhere near 200 calls a day from prospective tenants, and throughout the time when the Defendants have offered the triplexes as investments, there has been a glut of available rooms for tenants.

45.     To hide the low occupancy rates, Kirkland told his sales agents to direct all investor questions regarding occupancy to him. To create the appearance of tenants, and to induce investors to close on units for which they placed down payments, Kirkland shifted leases from one triplex to another. In at least one instance, Kirkland directed one of his employees to create fake leases to induce an investor to close on his investment.

## 3. Failure to Disclose California Orders

46.     On November 19, 2004, pursuant to a request from the California Department of Corporations, the state of California issued a Desist-and-Refrain Order against Tropical, Kirkland, and a Tropical sales agent ("First California Order"). The First California Order finds the triplex investments Tropical sold were securities under California law and that Tropical sold

them without a valid state securities registration.  The First California Order further finds that Tropical, Kirkland, and the sales agent made material misrepresentations to investors in connection with the sale of those investments.  As this Complaint does, the First California Order alleged that Kirkland and Tropical had misrepresented the occupancy rate of the triplexes, and therefore made baseless profit projections.  The First California Order directs Kirkland and Tropical to desist and refrain from offering or selling the triplex investments in California.

47.  In response to the First California Order, Kirkland told his sales agents they could continue to solicit California investors as long as they used a different name.  Kirkland then stopped selling investments under the Tropical name, immediately formed Clarity, and continued to solicit investors, including California investors, for the same triplex investments in the same developments, using the same offering materials and the same sales tactics, and making the same misrepresentations and omissions.  With the exception of the name change from Tropical to Clarity, the operation was identical.

48.  Clarity's offering materials and its website failed to disclose any information about the First California Order.

49.  After Kirkland and Clarity continued to solicit California investors, on June 6, 2005, pursuant to another request from the California Department of Corporations, the state of California issued a second Desist-and-Refrain Order against Tropical, Clarity, Kirkland and two Clarity sales agents ("Second California Order").  Like the First California Order, the Second California Order finds the triplex investments Tropical and Clarity sold were securities under California law and that the companies were selling them without a valid state securities registration. The Second California Order further finds that Tropical, Clarity, Kirkland, and their

sales agents made the same material misrepresentations and omissions to investors, and again ordered them to desist and refrain from offering or selling the triplex investments in California.

50.     Kirkland followed the same deceptive pattern as he did after the First California Order.  He ceased offering the investments under the Clarity name, formed Senior Adult, and continued to solicit investors for the same triplex investments in the same developments, using the same offering materials and the same sales tactics, and making the same misrepresentations and omissions.  With the exception of the name change from Clarity to Senior Adult, the operation was again identical.

51.     Predictably, Kirkland and Senior Adult have failed to disclose either of the two California Orders in any fashion to prospective investors.  Senior Adult's offering materials and website also fail to disclose any information regarding the California Orders.  The website notes simply that the triplex investments are not available to California investors, but does not explain why.  However, despite this claim on the website, Senior Adult continues to solicit investors in California.

52.     After Kirkland formed Senior Adult in response to the Second California Order and continued to solicit California investors, the state filed a civil suit in California Superior Court, alleging the same violations of California law and the same misrepresentations and omissions as the two California Orders.  On December 13, 2005, the Superior Court issued a Temporary Restraining Order against Tropical, Clarity, Senior Adult, Kirkland, and several of Senior Adult's employees ("Third California Order").  The Third California Order, among other things, forbids Kirkland or any company he owns or controls from soliciting investors in California.

53.     Kirkland and Senior Adult have failed to disclose any of the three California Orders in their offering materials or on Senior Adult's website.

*4. Failure to Disclose Investor Lawsuits*

54.     Several investors in various developments Tropical and Kirkland offered and sold sued them in Florida state courts, attempting either to obtain refunds of down payments on triplex units for which no closing took place, or to rescind the sale of triplexes.

55.     Furthermore, more than sixty investors filed a lawsuit against Tropical, Clarity, Kirkland, and one employee of both companies in the United States District Court for the Middle District of Florida in November 2004.   The lawsuit alleges violations by Tropical, Clarity and Kirkland of state and federal securities laws, and brings additional common law causes of action based on alleged misrepresentations and omissions of material fact similar to those alleged in this Complaint.

56.     Tropical, Clarity and Senior Adult failed to disclose any of the numerous lawsuits investors have filed against the company, including the federal court lawsuit.   The offering materials and websites did not mention them, and neither Kirkland nor any sales agent ever disclosed their existence.

57.     In contrast, on at least one occasion, Kirkland and a sales agent assured a prospective investor that Tropical had never been sued.

**V. CLAIMS FOR RELIEF**

**COUNT I**

**Sale Of Unregistered Securities In Violation Of
Sections 5(a) and 5(c) of the Securities Act**

58.     The Commission repeats and realleges paragraphs 1 through 57 of its Complaint.

59.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the securities and transactions described in this Complaint.

60.     Defendants Kirkland and Tropical since April 1999, Clarity since December 2004, and Senior Adult since October 2005, to the present, directly and indirectly, have:  (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise; (b) carried securities or causing such securities, as described in this Complaint, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described in this Complaint, without a registration statement having been filed or being in effect with the Commission as to such securities.

61.     By reason of the foregoing, the Defendants have, directly and indirectly, violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (b).

## COUNT II

### Fraud In Violation Of Section 17(a)(1) Of The Securities Act

62.     The Commission repeats and realleges paragraphs 1 through 57 of its Complaint.

63.     Defendants Kirkland and Tropical since April 1999, Clarity since December 2004, and Senior Adult since October 2005, to the present, have directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use

17

of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

64.     By reason of the foregoing, the Defendants have directly and indirectly, violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

**COUNT III**

**Fraud In Violation Of Sections 17(a)(2) And 17(a)(3) Of The Securities Act**

65.     The Commission repeats and realleges paragraphs 1 through 57 of its Complaint.

66.     Defendants Kirkland and Tropical since April 1999, Clarity since December 2004, and Senior Adult since October 2005, to the present, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

67.     By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

**COUNT IV**

**Fraud In Violation Of Section 10(b) Of The Exchange Act
And Rule 10b-5 Promulgated Thereunder**

68.     The Commission repeats and realleges paragraphs 1 through 57 of its Complaint.

69.     Defendants Kirkland and Tropical since April 1999, Clarity since December 2004, and Senior Adult since October 2005, to the present, have directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

70.     By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.

## VI.  RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction, restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from

violating: (a) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c); (b) Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); (c) Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3); and (d) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, thereunder, 17 C.F.R. § 240.10b-5.

## III.

### Asset Freeze and Accountings

Issue an Order temporarily freezing the assets of the Defendants and Relief Defendants until further Order of the Court, and requiring sworn accountings by the Defendants and Relief Defendants.

## IV.

### Appointment of a Receiver

Issue an Order appointing a Receiver over the assets of Defendants Tropical, Clarity, and Senior Adult and Relief Defendants Sunset Bay Club, Pelican Bay Club, Summerhill Ventures, and Isleworth Adult Community to marshal and safeguard all of said assets, and any other duties the Court deems appropriate, and to prepare a report to the Court and the Commission detailing the activities of the Defendants and the whereabouts of investor funds.

## V.

### Records Preservation and Expedited Discovery

Issue an Order requiring the Defendants and Relief Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody, possession or subject to their control, and to respond to discovery on an expedited basis.

## VI.

### Disgorgement

Issue an Order requiring the Defendants and Relief Defendants to disgorge all ill-gotten profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## VII.

### Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

## VIII.

### Repatriation of Investor Proceeds

Issue an Order requiring the Defendants and Relief Defendants to take such steps as are necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Complaint in this action which are held by them or are under their direct or indirect control, and deposit such funds into the registry of the United States District Court for the Middle District of Florida, and provide the Commission and the Court a written description of the funds and assets so repatriated.

## IX.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## X.

### <u>Retention of Jurisdiction</u>

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

February 16, 2006                    By:     _Robert R. Levenson_

Robert Levenson
Regional Trial Counsel
Florida Bar. No. 0089771
Direct Dial No. (305) 982-6341
levensonr@sec.gov
***Lead Counsel***

Raynette Nicoleau
Senior Counsel
Florida Bar. No. 0278210
Direct Dial No. (305) 982-6308

Brian Knight
Senior Counsel
Florida Bar. No. 0993662
Direct Dial No. (305) 982-6385

Elizabeth Fatovich
Senior Counsel
New York Bar No. 3984283
Direct Dial No. (305) 416-6250

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL  33131
(305) 982-6300
(305) 536-4154 (facsimile)