# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

             Plaintiff,

-vs-                                          Case No.  6:06-cv-183-Orl-28KRS

PATRICK KIRKLAND, TROPICAL
VILLAGE, INC., CLARITY
DEVELOPMENT CORPORATION, and
SENIOR ADULT LIVING
CORPORATION,

             Defendants,

SUNSET BAY CLUB, INC.,
SUMMERHILL VENTURES, INC.,
PELICAN BAY CLUB, INC., and
ISLEWORTH ADULT COMMUNITY,
INC.,

             Relief Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **RENEWED INITIAL APPLICATION FOR APPROVAL OF FEES AND COSTS OF RECEIVER'S ACCOUNTANTS (Doc. No. 352)** |
| **FILED:** | **September 28, 2007** |

I.    **PROCEDURAL HISTORY.**

On February 16, 2006, the SEC filed a complaint seeking injunctive relief, disgorgement, and penalties for alleged violations of the securities laws against Patrick Kirkland, and various entities controlled by Kirkland.  Doc. No. 1.  On the same day, the SEC filed emergency motions requesting the imposition of a temporary restraining order and the appointment of a receiver.  Doc. Nos. 3, 6. The Court granted both motions and accepted the SEC's recommendation that the Court appoint Judith M. Mercier as Receiver.  Doc. Nos. 9, 10.

The Receiver took possession of the books and records of the receivership entities.   The Receiver immediately retained a forensic accounting firm, Grant Thornton LLP ("GT") and the accounting firm Kapila & Company ("Kapila") to assist her.

On November 2, 2006, the Receiver filed her first application to pay GT's fees and costs.  Doc. No. 182.  I denied this motion without prejudice because the motion was not signed by an attorney. Doc. No. 197.  In my order, I advised the Receiver that any renewed motion must be supported by sufficient evidence regarding the accountants' backgrounds, experience, and customary billing rates, as well as showing that the hours worked were reasonable.  *Id.*

The Court has granted the SEC's motion for summary judgment, ruling that Kirkland violated the Securities Act of 1933, permanently enjoining Kirkland and others associated with him from further violations of the Act, and ordering Kirkland to disgorge all ill-gotten profits or proceeds received from the investing public.  Doc. No. 339 at 40-41.  As of the writing of this Report, the Court had not ruled on the SEC's Motion for a Final Judgment Ordering Disgorgement, Prejudgment Interest, and a Civil Penalty requesting that Kirkland be ordered to pay (1) disgorgement of his ill-gotten gains of $7,955,320.25, (2) prejudgment interest on disgorgement of $1,153,692.22, and

(3) a civil money penalty of $250,000, for a total of $9,359,012.47.  Doc. No. 390 at 1.  The Receiver

represents that the receivership estate presently consists of $3,274,500.00 in cash, and other

unliquidated assets of approximately $3 million in value as of the time the present motion was filed.

Doc. No. 352 at 4.[1]

     In the present motion, the Receiver moves for authorization to pay the fees and expenses of

GT, who assisted the Receiver in identifying and marshaling the assets of the receivership estate, and

Kapila, who assisted with certain corporate tax matters.  In support of the motion, the Receiver filed

the following documents:

- Declaration of Judith M. Mercier, doc no. 351, with the following attachments:[2]

  - Biographies of certain GT employees and of Soneet R. Kapila, doc. no. 351-5;

  - GT's invoice for services rendered from February 16, 2006 through August 31, 2006, doc. no. 351-28;

  - Kapila's invoices for services rendered from September 27, 2006 through April 7, 2007, doc. no. 351-29.

- Declaration of Andrew M. Brumby, doc. no. 349.

As of the writing of this report, neither the SEC nor Kirkland has responded to the motion.[3]

Banco Popular North America ("Banco Popular"), an intervenor in this case, filed its combined

---

[1] The Receiver referenced Exhibit 13 to her declaration as the statement of value of the receivership estate.  However, Exhibit 13 was not submitted to the Court.

[2] Mercier's declaration was filed in support of not only the motion to approve fees for the accountants, but also the motions to approve the Receiver's fees and those of her attorneys.  I have identified only those portions of her declaration that relate to this specific motion.

[3] The Receiver certified that the SEC did not object to the motion, but that Kirkland did object.  Doc. No. 351 at 1.  By failing to file a timely response to the motion, Kirkland has waived his objection.

response to this motion and the motion to compensate the Receiver and her attorneys.  Doc. No. 379.

Banco Popular's objections to payment of the accountants are that the receivership assets should not

be used until the Receiver's obligations with respect to a construction project underway by Pelican

Bay Club, Inc., a relief defendant, are fulfilled.  Doc. No. 379.

## II.    APPLICABLE LAW.

The order of appointment provides that the Receiver is authorized to "employ legal counsel,

actuaries, accountants, clerks, consultants, and assistants as the Receiver deems necessary and to fix

and pay their reasonable compensation and reasonable expenses," with the Court's approval.  Doc.

No. 10 at 4.  Courts have held that a lodestar-style analysis is appropriate in evaluating the

reasonableness of fees charged by accountants and other non-attorney professionals.  *See, e.g.*, *SEC*

*v. Marker*, No. 1:02CV01109, 2007 WL 2733711 (M.D.N.C. Sep. 17, 2007); *In re Computer Learning*

*Centers, Inc.*, 285 B.R. 191, 199 (Bankr. E.D. Va. 2002) ("The same procedure is used to determine

a reasonable fee for accountants as attorneys. . . .").

Claims for professional services must be supported by evidence that the hourly rate is

reasonable and commensurate with rates paid for similar services, and that the time expended was

reasonable.  *See Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).  Similarly,

requests for reimbursement of expenses must be supported by sufficient information for the Court to

determine that the expenses are actual and necessary costs.  *See Peoples Credit First, LLC*, No. 8:03-

cv-2353-TBM, 2005 WL 3981599, at *5 (M.D. Fla. Dec. 21, 2005) ; *see also In re Southeast Banking*

*Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).    Expenses should be limited to the actual out-of-pocket

costs, sans profit, and should not include overhead expenses such as secretarial overtime, mileage and

the like.  *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) (routine office

overhead normally is not compensable); *Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12;

*cf. Lang v. Reedy Creek Improvement Dist.*, No. 94-cv-693-Orl-19DAB, 1997 WL 809200 (M.D. Fla.

Dec. 23, 1997)(finding in a civil rights case that the prevailing party was entitled to its expenses, sans

profit).

### III.    ANALYSIS.

*A.     Accountants' Fees.*

The following summarizes the amounts sought by the Receiver for accountants' fees:

| GT PROFESSIONAL | YEAR LICENSED/ PRIOR EXPERIENCE | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|---|
| Maria M. Yip, Partner | No information provided regarding training or experience.[4] | $204.13[5] | 141.50[6] | $28,884.36 |
| Daniel A. Medina, Manager - Economic Advisory Services | Certified computer forensic specialist with 7 years of public accounting experience, including 4 years  focusing on matters relating to fraud and corporate misconduct. | $127.50 | 22.50 | $2,868.75 |

---

[4] The Court's independent investigation of the record in this case reveals that Yip testified during a hearing that she has a bachelor's degree in accounting from Florida International University, she is a CPA and a certified fraud examiner, and has practiced accountancy for fourteen years.  She has prior experience with receivership cases and her practice focuses on investigative accounting.  Transcript of Hearing on Motions, March 29, 2006 at 84-86.

[5] GT's standard rates for managers range from $420.00 - $430.00 per hour, standard rates for senior associates range from $300.00 - $350.00 per hour, and standard rates for associates range from $240.00 - $250.00 per hour.  Doc. No. 351-5.  GT originally agreed to bill Yip at the rate of $300.00 per hour, and $185.00 per hour for its managers and associates.  *Id.*  The Receiver subsequently negotiated a 31% hourly rate reduction to $204.13 for Yip and $127.50 for the managers and associates.  *Id.* at 5.

[6] Aggregated hours were obtained from the summary of billings.  Doc. No. 351-5 at 8.

| GT PROFESSIONAL | YEAR LICENSED/ PRIOR EXPERIENCE | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|---|
| Ana L. Campos, Manager - Economic Advisory Services | Brazilian licensed attorney with an LL.M. in Comparative Law from the University of Miami School of Law; 8 years of experience relating to investigations involving complex legal and financial issues. | $127.50 | 125.75 | $16,033.13 |
| Luciano Humberto, Senior Associate - Economic Advisory Services | 15 years experience regarding information systems design, systems administration, and data mining services. | $127.50 | 337.25 | $42,999.38 |
| Pilar Vasallo, Senior Associate - Economic Advisory Services | CPA (Florida); 20+ years of experience in diverse facets of financial and managerial accounting.  She is experienced with forensic reconstruction of bookkeeping records and general ledgers of companies that have been forced into bankruptcy, and in conducting asset searches. | $127.50 | 100.75 | $12,845.63 |
| Jessica Huebner, Senior Associate - Economic Advisory Services | CPA (Wisconsin); 5 years of experience in providing forensic accounting, computer forensics, and litigation support. | $127.50 | 471.25 | $60,084.36 |
| Sandra Williams, Senior Associate - Economic Advisory Services | Employed since January 2006. Prior experience in conducting compliance audits of NASD member firms, and internal investigations involving financial accounting and securities fraud. | $127.50 | 449.25 | $57,279.36 |

| GT PROFESSIONAL | YEAR LICENSED/ PRIOR EXPERIENCE | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|---|
| Jordan I. Lechner, Associate - Forensic Accounting and Investigative Services | Unspecified length of experience in providing forensic accounting, litigation support, and computer forensic services on various matters involving economic damages, fraud and embezzlement.  Unspecified length of experience in electronic data seizure, preservation and analysis; recovery of lost, hidden or deleted information; recovery of encrypted and password protected data; data modeling, report design and analysis.  No information regarding education or training. | $127.50 | 213.50 | $27,221.25 |
| Thomas de Araujo, Associate - Forensic Accounting and Investigative Services | No information regarding education or training.  Worked since October 2005 for GT focusing on forensic accounting, computer forensics, and litigation support.  Previous work in the accounting field. | $127.50 | 439.25 | $56,004.38 |
| Christian Fonseca, Associate - Forensic Accounting and Investigative Services | No information provided regarding training or experience. | $127.50 | 367.75 | $46,888.13 |
| Cinthya Tarud, Associate - Economic Advisory Services. | No information provided regarding training or experience.  Unspecified length of prior experience in forensic accounting. | $127.50 | 344.25 | $43,891.86 |
| **Total** | | | 3,013.00 | $395,000.59 |

With respect to the Kapila professionals, it appears that five people provided services: Demots; Lesley J. Johnson; Piotrowski; Cohen; and Barbe. Doc. No. 351-29. No biographical information was provided regarding any of these individuals. Doc. No. 351-5. Their request for fees is summarized below:

| KAPILA PROFESSIONAL | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|
| Demots | $180.00 | 13.2 | $2,376.00 |
| Johnson | $370.00 | 7.0 | $2,590.00 |
| Johnson | $400.00 | 4.9 | $1,960.00 |
| Piotrowski | $130.00 | .5 | $65.00 |
| Piotrowski | $146.00 | 19.1 | $2,788.60 |
| Cohen | $180.00 | 24.7 | $4,446.00 |
| Barbe | $310.00 | 6.0 | $1,860.00 |
| **Total** | | 75.40 | $16,085.60 |

       1.   <u>Reasonable Hourly Rates</u>.

The first step in a lodestar calculation is to determine whether the hourly rates of each professional for whose work fees are sought is reasonable. A reasonable hourly rate is the prevailing rate in the relevant market for individuals of similar skill and experience. The movant bears the burden of establishing this prevailing rate through evidence other than his own affidavit stating his opinion regarding the reasonable rate. Such evidence can include hourly rates awarded in other cases. *Norman v. Hous. Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988). When the fee petition is insufficient to establish the reasonable hourly rate, a judge may rely on her own knowledge and experience in determining the rate without benefit of outside evidence. *Id.* at 1303.

I have previously cautioned the Receiver in this case that evidence should be presented to support the hourly rates sought by the accounting professionals.  Doc. No. 96 at 4.   Despite this admonition, the Receiver submitted biographies for only some of the accounting professionals for whose work fees are sought, and her opinion that the overall fees (as reduced) are reasonable. Brumby, a law firm partner, also opines that the accountants' overall fees are reasonable.  Doc. No. 349-2.

Although Brumby opines that GT's fees overall as reduced are reasonable, he expresses no opinion regarding market rates for individual accountants of various degrees of experience.  Attached to Brumby's declaration, however, are copies of motions and decisions that address various receiver fee applications and accountant fee applications.  The attachments that relate to accountants' fees are as follows:

- *SEC v. KS Advisors, Inc.*, United States District Court for the Middle District of Florida, Case No. 2:04-cv-105-FtM-29DNF.  The Receiver in that case retained GT and agreed to pay $300.00 per hour for Maria Yip's services, and $265.00 per hour for Daniel Medina's services, for a total fee of $79,528.75.  Doc. No. 349-4 at 6-7.  After an evidentiary hearing, the magistrate judge found the hourly rates to be reasonable, and recommended that the presiding district judge approve the request.  2:04-cv-105-FtM-29DNF, Doc. No. 105.  The Court adopted the Report and Recommendation and awarded the requested amount without comment.  Doc. No. 349-4 at 3.

- *FTC v. Debt Mgmt. Found. Serv.*, United States District Court for the Middle District of Florida, Case No. 8:04-cv-1674-EAK-MSS.  The Receiver's application sought $225.00 per hour to compensate CPA Kent S. Miller.  Doc. No. 349-5 at 5.  Miller received a B.S. in Commerce from St. Louis University in 1966, had received CPA certificates from Florida, Louisiana, Missouri, and North Carolina, and was then licensed in Florida and Missouri.  He had over 40 years of experience of accounting experience performing a wide range of services, plus forensic accounting experience. He also previously had been appointed as a receiver.  Case No. 8:04-cv-1674-EAK-MSS, doc. no. 24-5.  The Court granted the request by endorsed order.  Doc. No. 349-5 at 8.

• *SEC v. Crowley*, United States District Court for the Southern District of Florida, Case No. 04-80354-cv-Middlebrooks. The receiver sought an average blended rate of $230.79 for Kapila in July 2004. Doc. No. 349-6 at 21.[7] In addition to the blended rate, Kapila provided hourly rates for its accountants (none of whom are involved in this case). A partner licensed in 1983 was billed at $350.00; a principal licensed in 1986 was billed at $300.00 per hour; technology consultants with 8-20 years experience were billed at $200.00 per hour; a consultant licensed in 1986 was billed at $168.00 per hour; a consultant licensed in 2002 was billed at $140.00 per hour; an analyst with 30 years experience was billed at $130.00 per hour; an analyst with 20 years of experience was billed at $96.00 per hour; and one year analysts were billed from $66.00-70.00 per hour. All of these rates were subject to an agreed 10% discount. *Id*. at 28. The magistrate judge recommended approval of the request. *Id*. at 58.

In November 2007, I analyzed the fees of certain members of Kapila in *SEC v. Digges*, United States District Court for the Middle District of Florida, Case No. 6:06-cv-137-ORL-19KRS. In that case, I determined that a reasonable hourly rate based on the information before the Court for Lesley Johnson, who was a CPA and Certified Insolvency and Restructuring Advisor (CIRA) with 21 years experience, was $300.00. *Digges*, Doc. No. 156 at 7. I also determined based on the information before the Court that the reasonable hourly rate for analysts with 21-32 years of experience was $126.00, for analysts with 9 years of experience was $100.00, and for analysts with 3 to 5 years of experience (including Piotrowski) was $90.00. *Id*. My recommendation was adopted over objection on December 13, 2007. *Digges*, Doc. No. 174.

Based on all of the information submitted and the analysis performed in the *Digges* case, I have determined reasonable hourly rates for each of the GT professionals. I find $300.00 per hour is reasonable for Yip based on the award in *KS Advisors*. The reasonable hourly rate for Medina is

---

[7] There is a discrepancy in the actual blended rate sought. In the memorandum, the Receiver requested $230.79 per hour, but the summary of fees attached in support of the application shows a blended rate of $207.71. Doc. No. 349-6 at 28.

$185.00 based on the original rate at which GT offered to bill him and the award of a higher rate in *KS Advisors*.  Similarly, based on GT's original billing rate agreement and their experience, a reasonable hourly rate for Campo, Humberto, Vasallo, and Huebner[8] is $185.00.  Given the ambiguity in describing the length of experience possessed by Williams, Lechner, deAraujo, Fonseca, and Tarud, I conclude that these individuals had less than two years of experience at the time the services were performed, and a reasonable hourly rate for each of them is $70.00.

With respect to the Kapila professionals, it is only from my work on the *Digges* case that I know anything about the backgrounds of Johnson and Piotrowski.  I find no basis to change my evaluation of their reasonable billing rates from that found to be reasonable in *Digges*.  Therefore, I find that Johnson has a reasonable billing rate of $300.00 per hour, and Piotrowski has a reasonable billing rate of $90.00 per hour.  As to the other Kapila professionals, in the absence of any information regarding their skills and experience, I presume that these individuals had less than two years of experience at the time the services were performed, and a reasonable hourly rate for each of them is $70.00.

---

[8] Although Huebner has fewer years experience than Campo, Humberto, and Vasallo, she is a licensed CPA.  Huebner, therefore, can command a higher billing rate than other professionals who are not CPAs.

2.      Reasonable Number of Hours.

After reviewing the Kapila invoices, I find that the hours worked are reasonable in the absence of objection.

The GT Time Sheets reflect that GT employees held a large number of meetings with each other, often to discuss the status of various assignments or for planning, for which each employee typically billed his or her time. *See, e.g.*, multiple billings for meetings on 2/20/06, 2/21/06, 2/27/06, 2/28/06, 3/3/06. Time spent to coordinate work among various professionals or to develop strategy is compensable when necessary. *Scelta v. Delicatessen Support Serv., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002). Such time, however, may be excluded when the description is too vague or the conferences are excessive. *See O'Rear v. Am. Family Life Assurance Co. of Columbus, Inc.* 144 F.R.D. 410, 415 (M.D. Fla. 1992) (finding attorney conferences excessive); *McNeil v. Ogburn*, 507 F. Supp. 96, 97 (N.D. Fla. 1981) (finding description of telephone conferences too vague to support payment). In this case, the amount of time spent in such meetings is unknown as GT does not allocate an amount of time to each task described on their time sheets. *See, e.g.,* 2/20/06 de Araujo 9.25 hours; 2/20/06 Fonseca 9.75 hours; 2/20/06 Huebner 5.25 hours. Also, billing descriptions of "supervision and assistance to associates" or "supervision and support to associates" are too vague and do not describe the actual work performed. *See, e.g.,* 3/8/06 Medina 2.25 hours; 3/10/06 Humberto 1.25 hours; 3/14/06 Campos 7.75 hours; 3/15/06 Campos 4.25 hours; 3/22/2006 Campos 8.25 hours; 3/23/06 Campos 4.75 hours; 3/24/06 Campos 4.35 hours.

The lack of task billing is particularly troublesome as there are numerous entries for over eight hours in a single work day where the description does not adequately support the time spent on the task(s). For example, on February 22, 2006, deAraujo spent 13.5 hours reviewing banking and

accounting records and preparing a preliminary report of sources of deposits to and uses for disbursements.  Doc. No. 351-28 at 4.  On the same day, Fonseca spent 13.75 hours and Huebner spent 11.25 hours performing essentially the same tasks as de Araujo, *id.*; GT offers no evidence that these individuals were working on different banking or accounting records.

A similar problem is evident with the preparation of Yip's affidavit, which was filed at 9:07 a.m. on May 16, 2006.  Doc. No. 98, Ex. 1.  Prior to the filing, five individuals worked on the affidavit.  There were multiple reviews by different individuals with little description to differentiate the work.  *See* 5/12/06 Huebner 7.5 hours; 5/12/06 Yip 3.0 hours; 5/15/06 deAraujo 5.0 hours; 5/15/06 Huebner 8.50 hours; 5/15/06 Humberto 6.25 hours; 5/15/06 Williams 7.5 hours; 5/15/06 Yip 1.5 hours.  Given the filing date and time, one would not expect any additional billings related to the affidavit after May 15, 2006.  Additional billings by multiple professionals, however, continued for days thereafter.  *See* 5/16/06 deAraujo 8.5 hours; 5/16/06 Huebner 9.75 hours; 5/16/06 Humberto 5.75; 5/16/06 Williams 11.5 hours; 5/17/06 deAraujo 10.75 hours; 5/17/06 Humberto 5.5 hours; 5/17/06 Williams 13.5 hours; 5/18/06 deAraujo 14.5 hours; 5/18/06 Humberto 8.25 hours; 5/18/06 Lechner 7.5 hours; 5/18/06 Williams 10.25 hours; 5/18/06 Yip 2.0 hours; 5/19/06 deAraujo 7.25 hours; 5/19/06 Humberto 5.5 hours; 5/19/06 Lechner 4.5 hours; 5/19/06 Williams 4.25 hours.  Again, multiple reviews were conducted by different individuals and different individuals reported working on the same exhibits.

Where the billing records do not indicate any sort of division of labor among the professionals, courts often find the work is redundant.  *See Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999) (multiple attorneys billing time to draft briefs was redundant).  In this case, the

descriptions are often deficient for the Court to determine the volume of records being reviewed or whether each person was engaged in a discrete task that did not duplicate the work of another person.

Complicating the Court's ability to analyze the reasonableness of the hours worked is that the description of tasks performed sometimes was incomplete. *See, e.g.,* 2/20/06 Medina; 2/21/06 Fonseca; 2/27/06 Tarud; 3/7/06 Fonseca; 3/8/06 Humberto; 3/9/06 Humberto; 3/9/06 deAraujo; 3/10/06 Humberto; 3/11/06 Humberto; 3/14/06 Vasallo; 3/15/06 Huebner; 3/16/06 Campos.

Fee applicants are required to exercise billing judgment and exclude those hours that would be unreasonable to bill to a client. *Norman,* 836 F.2d at 1301. In particular, "excessive, redundant or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* (internal quotations and citations omitted). The court is charged with the responsibility for deducting for redundant hours. *Id.*

GT's billing statements reflect numerous instances of duplication of effort, inefficiency and failure to support the hours worked described on the time sheets. Because GT did not use task billing, the Court cannot eliminate specific redundant or unnecessary entries. Given the magnitude of the redundancies, I find that it is more appropriate to use the 31% reduction negotiated by the Receiver as applied to the reasonable number of hours rather than reducing the reasonable hourly rate by this amount as recommended by the Receiver. *See* Doc. No. 352-5 at 5; *see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149-50 (11th Cir. 1993).

3.     Lodestar.

The accountants' work was necessary to identify and marshal assets, and to support the Receiver and SEC's motions. Specifically, Yip testified at the hearing on the motions to conduct an auction sale of fixtures, furniture and equipment, and to expand the receivership. Transcript of

Hearing on Motions, March 29, 2006.  She also provided an affidavit supporting the SEC's response

to Kirkland's motion to modify the order of preliminary injunction and other emergency relief.  Doc.

No. 98, Ex. 1.  Yip further supported the SEC's motion for final judgment.  Doc. No. 390, Ex. 1.

Without this work, there likely would not be assets available to pay Banco Popular or other creditors.

Accordingly, I recommend that the Court overrule Banco Popular's objection to payment of fees to

the accountants.

Therefore, I recommend that the Court approve fees for accounting professionals as follows:

| GT PROFESSIONAL | REASONABLE HOURLY RATE | HOURS WORKED REDUCED BY 31% | TOTAL |
|---|---|---|---|
| Maria M. Yip, Partner | $300.00 | 97.60 | $29, 280.00 |
| Daniel A. Medina,  Manager - Economic Advisory Services | $185.00 | 15.50 | $2,867.50 |
| Ana L. Campos,  Manager - Economic Advisory Services | $185.00 | 86.75 | $16,048.75 |
| Luciano Humberto,  Senior Associate - Economic Advisory Services | $185.00 | 232.75 | $43,058.75 |
| Pilar Vasallo, Senior Associate - Economic Advisory Services | $185.00 | 69.50 | $12,857.50 |
| Jessica Huebner, Senior Associate - Economic Advisory Services | $185.00 | 325.25 | $60,171.25 |
| Sandra Williams, Senior Associate - Economic Advisory Services | $70.00 | 310.00 | $21,700.00 |
| Jordan I. Lechner, Associate - Forensic Accounting and Investigative Services | $70.00 | 147.30 | $10,311.00 |

| GT PROFESSIONAL | REASONABLE HOURLY RATE | HOURS WORKED REDUCED BY 31% | TOTAL |
|---|---|---|---|
| Thomas de Araujo,  Associate - Forensic Accounting and Investigative Services | $70.00 | 303.00 | $21,210.00 |
| Christian Fonseca,  Associate - Forensic Accounting and Investigative Services | $70.00 | 253.75 | $17,762.50 |
| Cinthya Tarud, Associate - Economic Advisory Services. | $70.00 | 237.50 | $16,625.00 |
| **Total** | | **2,079.21** | **$222,641.25** |

| KAPILA PROFESSIONAL | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|
| Demots | $70.00 | 13.2 | $924.00 |
| Johnson | $300.00 | 11.9 | $3,570.00 |
| Piotrowski | $90.00 | 19.6 | $1,764.00 |
| Cohen | $70.00 | 24.7 | $1,729.00 |
| Barbe | $70.00 | 6.0 | $420.00 |
| **Total** | | **75.4** | **$8,407.00** |

B.      *Out-of-Pocket Expenses*.

As previously noted, the order of appointment provides that the Receiver is authorized to "employ legal counsel, actuaries, accountants, clerks, consultants, and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses," with the Court's approval.  Doc. No. 10 at 4.

GT seeks reimbursement of out-of-pocket expenses related to travel to Georgia to visit certain properties, and acquiring hard drives to be used to store evidence.  Doc. No. 351-28 at 44.  These amounts equal $2,983.12, which I find reasonable in the absence of objection.

GT also seeks to recover administrative expenses at 5% (presumably calculated by multiplying the total fees before discount by 5%) in the amount of $28,699.50. *Id.* This fee includes expenses related to "Courier, Supplies, Postage, Computer Supplies, Long Distance and Copy Charges." Doc. No. 351-28 at 2. Initially, I note that supplies are typically considered an overhead expense that is not recoverable. *See, e.g., Sheffer v. Experian Info. Solutions, Inc.,* 290 F. Supp. 2d 538, 552 (E.D. Pa. 2003)(office supplies are part of overhead and was adequately reflected in attorneys' hourly rate); *Vernon v. Port Auth.*, 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002)(cost of legal dividers fell under category of overhead costs or supplies and was not compensable).

The larger problem with GT's request is that there is no showing that the 5% fee represents the actual costs incurred for allowable items. Although GT undoubtedly incurred copying costs in marshaling the evidence, there is no evidence of the number of copies made or any other evidence upon which the Court could make a finding that the copying costs were reasonable. Similarly, GT presents no evidence from which the Court can determine the reasonable and necessary costs for courier services, postage or long distance telephone charges. Without any evidence to support its request, I find GT's request for an administrative expense fee as a percentage of total fees to be unreasonable, and I recommend that it be denied. Accordingly, I recommend that the Court approve payment of expenses to GT in the amount of $2,983.12.

Kapila seeks reimbursement of out-of-pocket expenses in the amount of $39.82. The expenses requested by Kapila are reasonable in the absence of specific objection. Accordingly, I recommend that the Court approve payment of expenses to Kapila in the amount of $39.82.

III.   **RECOMMENDATION.**

For the reasons set forth in the foregoing report, I respectfully recommend that:

1.      The Court **GRANT** in part Receiver's Renewed Initial Application for Approval of Fees and Costs of Receiver's Accountants (Doc. No. 352);

2.      The Court authorize the Receiver to disburse $222,641.25 in professional fees and $2,983.12 in expenses from the receivership estate to Grant Thornton LLP; and,

3.      The Court authorize the Receiver to disburse $8,407.00 in professional fees and $39.82 in expenses from the receivership estate to Kapila & Company.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 11th, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy