# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

-vs-                                                    Case No.  6:06-cv-183-Orl-28KRS

PATRICK KIRKLAND, TROPICAL
VILLAGE, INC., CLARITY
DEVELOPMENT CORPORATION, and
SENIOR ADULT LIVING
CORPORATION,

                    Defendants,

SUNSET BAY CLUB, INC.,
SUMMERHILL VENTURES, INC.,
PELICAN BAY CLUB, INC., and
ISLEWORTH ADULT COMMUNITY,
INC.,

                    Relief Defendants.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **RENEWED INITIAL APPLICATION FOR APPROVAL OF RECEIVER'S FEES AND COSTS (Doc. No. 348)** |
| **FILED:** | **September 28, 2007** |

| | |
|---|---|
| **MOTION:** | **RENEWED INITIAL APPLICATION FOR APPROVAL OF FEES AND COSTS OF RECEIVER'S LEGAL COUNSEL (Doc. No. 353)** |
| **FILED:** | **September 28, 2007** |

Receiver Judith M. Mercier moves this Court for the entry of an order authorizing payment of her reasonable fees and expenses and the fees and expenses of her attorneys at Holland & Knight LLP (H&K) for the period of February 15, 2006 through July 31, 2007. [1]

## I.   PROCEDURAL HISTORY.

On February 16, 2006, the SEC filed a complaint seeking injunctive relief, disgorgement, and penalties for alleged violations of the securities laws against Patrick Kirkland, and various entities controlled by Kirkland.  Doc. No. 1.  On the same day, the SEC filed an emergency motion requesting the appointment of a receiver for the defendants and the relief defendants who would have

> full and exclusive power, duty and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of Tropical, Clarity, Senior Adult, Sunset Bay Club, Summerhill Ventures, Pelican Bay Club, and Isleworth Adult Community; marshal and safeguard all of the assets of Tropical, Clarity, Senior Adult and the Relief Defendants; and take whatever actions are necessary for the protection of the investors.

Doc. No. 6 at 1-2.   The SEC recommended the appointment of Mercier as Receiver and H&K as counsel for the Receiver.  Doc. No. 6 at 2.  In the motion, the SEC reiterated representations made to it by Mitchell Herr, a partner at H&K and former receiver in a SEC case, regarding the legal services it would provide to the Receiver.  Specifically, Herr wrote in a letter dated February 15, 2006, that the time of all H&K partners would be "billed at the blended rate of $350 per hour, subject to an upward

---

[1] The Court previously addressed by separate order the attorneys' fees for the Receiver's counsel in Scotland and authorized the Receiver to disburse a total of £4,217.44 (approximately $8,491.61). Doc. No. 421.

annual adjustment not to exceed 10%" and that H&K "will ensure that all work is pushed down to the lowest billing rate personnel competent to handle the specific task." Doc. No. 6-2 at 3.  He indicated that H&K anticipated using a senior associate whose rate was $245.00 per hour, a mid-level associate whose rate was $210.00 per hour, and contract attorneys at the rate of $125.00 per hour if extensive document review was required.  *Id.*; Doc. No. 6 at 3.

On February 16, 2006, the Court granted the SEC's motion and appointed Mercier as Receiver.[2]  Doc. Nos. 10.  The order of appointment provides that the Receiver was authorized to "employ legal counsel, actuaries, accountants, clerks, consultants, and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses," with the Court's approval.  Doc. No. 10 at 4.

On September 29, 2006, the Receiver moved for authorization to pay her and her attorneys' fees and costs.  Doc. No. 169.  The Court adopted my Report and Recommendation that the motion be denied without prejudice due to various inadequacies of the application.  Doc. Nos. 211, 226.  Therefore, neither the Receiver nor H&K have been compensated for their time since the beginning of the receivership.

The Court has granted the SEC's motion for summary judgment, ruling that Kirkland violated the Securities Act of 1933, permanently enjoining Kirkland and others associated with him from further violations of the Act, and ordering Kirkland to disgorge all ill-gotten profits or proceeds received from the investing public.  Doc. No. 339 at 40-41.  The SEC's Motion for a Final Judgment Ordering Disgorgement, Prejudgment Interest, and a Civil Penalty requests that Kirkland be ordered

---

[2]  In the order appointing the Receiver, the Court did not find that the proposed hourly rates were reasonable in the relevant central Florida market.

to pay (1) disgorgement of his ill-gotten gains of $7,955,320.25, (2) prejudgment interest on disgorgement of $1,153,692.22, and (3) a civil money penalty of $250,000.00, for a total of $9,359,012.47. Doc. No. 390 at 1. The Court has not yet ruled on the SEC's motion.

At the time the present motions were filed, the receivership estate held $3,274,500.00 in cash and other unliquidated assets of approximately $3,000,000.00 in value. Doc. No. 353 at 7. The Receiver has subsequently been granted leave to abandon several assets, and has entered into a settlement agreement requiring payment of funds from the receivership estate. *See* n. 4 *infra*. There is no current accounting before the Court of the receivership's assets.

In the present motions, the Receiver again moves for authorization to pay her fees and expenses and the fees and expenses of H&K. In support of the motion, the Receiver filed the following documents:

- Declaration of Judith M. Mercier, doc no. 351-2, with the following attachments:[3]

  - Mercier's Biography, doc. no. 351-3;

  - Biographies of H&K attorneys, doc. no. 351-4;

  - Time sheets of Mercier for February 2006 to July 2007, doc. nos. 351-6 through 351-11;

  - Time sheets of H&K for February 2006 to July 2007, doc. nos. 351-12 through 351-22;

  - Summary of write offs for the receivership, doc. no. 351-23;

  - Invoices from Oakland Data Services, Inc. for paralegal services, doc. no. 351-24 through 351-26;

---

[3]     Judith M. Mercier's declaration was filed in support of not only the motion to approve fees for the attorneys, but also the motions to approve the Receiver's fees and those of her accountants. I have identified only those portions of her declaration that relate to the specific aspects of the motions addressed in this Report and Recommendation.

- • Invoices from Corporate Integrity Services LLC for investigative services, doc. no. 351-27.

- • Declaration of Andrew M. Brumby, doc. no. 349.

The SEC did not file a response to the motions, but it informed the Receiver that it has no objection. Doc. No. 348 at 1, 16; Doc. No. 353 at 1.  Although Kirkland objected to the motions when contacted by the Receiver, he has not filed responses to the motions.  Doc. No. 348 at 16; Doc. No. 353 at 1.  Intervener Banco Popular North America ("BPNA") filed its combined response to the motions and the motion to compensate the accountants.  Doc. No. 379.  BPNA objects to the payment of any of the professionals until the Receiver's obligations with respect to Pelican Bay Project are fulfilled. *Id*.

The Receiver moved to abandon the Pelican Bay Project.  Doc. No. 375.  BPNA opposed the Receiver's motion to abandon, and threatened to sue the Receiver and the receivership estate if necessary to recover the money owed to BPNA on the construction loan used to build the Pelican Bay Project.  Doc. No. 380.  The Court ordered the parties to participate in a settlement conference before me to attempt to resolve the issues related to the Pelican Bay Project.  Doc. No.  419.  I conducted a settlement conference, at which the relevant parties, other than Defendant Kirkland, reached an agreement in principal regarding the Pelican Bay Project.  On April 3, 2008, the parties filed a notice of an agreed order regarding the motion to abandon the Pelican Bay Project.  Doc. No. 467.  The Court approved the agreed order on April 24, 2008, rendering moot BPNA's objections to the present motions.  Doc. Nos. 467 at 6; Doc. No. 495.[4]

---

[4] Under the settlement, the receivership agreed to pay $72,097.00 to the City of Palm Bay, to pay $230,000.00 to BPNA, and to abandon the Pelican Bay Project in exchange for a release of the $10,650,000.00 loan owed by relief defendant Pelican Bay Club, Inc. to BNPA and release of

## II.    APPLICABLE LAW.

### A.    Determination of Fees.

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e
> is . . . permitted to obtain counsel for himself, and counsel fees are considered as
> within the just allowances that may be made by the court. . . . So far as the allowances
> to counsel are concerned, it is a mere question as to their reasonableness. . . . The
> compensation is usually determined according to the circumstances of the particular
> case, and corresponds with the degree of responsibility and business ability required
> in the management of the affairs intrusted to him, and the perplexity and difficulty
> involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).  A receiver owes a duty to exercise reasonable care

to protect and preserve the assets of the receivership estate.  In carrying out this duty, the receiver

"must exercise ordinary care and prudence, that is, the same care and diligence that an ordinary

prudent person would exercise in handling his or her own estate, or under like circumstances."  65

Am. Jur. 2d *Receiver* § 146 (2007).

In determining a reasonable fee for a receiver and his attorneys, "[a] basic consideration is the

nature and complexity of the legal problems confronted and the skill necessary to resolve them."  *SEC*

*v. W.L. Moody & Co.*, 374 F. Supp. 465, 485 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)

(hereinafter "*Moody*").  "Although time is a material factor, the difficulty of the job, the expertise

necessary to accomplish it, and the results achieved are more significant here."  *Id.* at 486.

Many courts begin the analysis with the lodestar approach, which is based on the reasonable

hourly rate in the relevant market of the professionals for whom fees are sought and the reasonable

number of hours expended.   *See, e.g., FTC v. Peoples Credit First, LLC,* No. 8:03cv2353T17TBM,

2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006)(citing *Johnson v. Ga. Highway Express, Inc.*,

---

the Receiver and the receivership estate, among other things.  Doc. Nos. 380 at 3; Doc. No. 467 at
9-10.

488 F.2d 714, 717-19 (5th Cir. 1974)); *see also SEC v. Goren*, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).   Claims for professional services must be supported by evidence that the hourly rate is reasonable and commensurate with rates paid for similar services, and that the time expended was reasonable.  *See Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).  Further, "it is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers. . . ."  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Such non-legal work should be billed at a lesser rate.  *Id*.

With respect to paralegals, work that is appropriately compensated at a paralegal rate might include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id*.  Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents is not compensable. *See, e.g., Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney. Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses.") (internal quotations omitted)*; Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. at 288 n.10 ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate.  *See*

*Peoples Credit First, LLC*, 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp*., 314 B.R. 250, 271 (S.D. Fla. 2004).   Expenses should be limited to the actual out-of-pocket costs, sans profit, and should not include overhead expenses such as secretarial overtime, mileage and the like. *See Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12; *cf. Lang v. Reedy Creek Improvement Dist*., No. 94-cv-693-Orl-19, 1997 WL 809200 (M.D. Fla. Dec. 23, 1997)(finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit).

"No receivership is intended to generously reward court-appointed officers." *Moody*, 374 F. Supp. at 483.  Both a receiver and his counsel must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary irrespective of the amount of money in the receivership estate.  *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4.  This is particularly true when, as in the present case, the receivership estate will not recover sufficient assets to pay full restitution to the victims of the fraud alleged in the complaint.  *See id.* at *5.

**B.    Effect of a Conflict of Interest**.

The Rules Regulating the Florida Bar (the "Rules") govern the professional conduct of all members of the bar of this Court.  Local Rule 2.04(d).  As a general matter, the Rules prohibit a lawyer from representing a client if the representation of one client will be directly adverse to another client.  Rule 4-1.7(a).  Notwithstanding the existence of a conflict of interest, a lawyer may represent clients with conflicting interests if four requirements are met:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before

a tribunal; and (4) each affected client gives informed consent,
confirmed in writing or clearly stated on the record at a hearing.

Rule 4-1.7(b).  Comments to Rule 4-1.7(a) make it clear that a lawyer cannot represent opposing

parties in litigation.  Further, a lawyer ordinarily "may not act as advocate against a client the lawyer

represents in some other matter, even if the other matter is wholly unrelated."  Rule 4-1.7, Comment.

A lawyer also "may not represent multiple parties to a negotiation whose interests are fundamentally

antagonistic to each other."  *Id*.

If one attorney within a firm is prohibited from representing clients due to a conflict of interest,

the disqualification from representation is imputed to the other members of the firm.  Rule 4-1.10(a).

When a lawyer becomes associated with a firm, "the firm may not knowingly represent a person in

the same or a substantially related matter in which that lawyer . . . had previously represented a client

whose interests are materially adverse to that person. . . ."  Rule 4-1.10(b).

If the court determines that a conflict of interest arose between parties represented by an

attorney, the attorney may not recover any fees for services performed after the date he knew or should

have known that he could not ethically represent both clients.  *James T. Butler, P.A. v. Walker*, 932

So. 2d 1218 (Fla. 5th Dist. Ct. App. 2006).

## III.    ANALYSIS.

### A.    Existence of a Conflict of Interest in this Case.

In prior orders, I have expressed concerns regarding a conflict of interest between H&K, the

Receiver as a partner with H&K, and BPNA.  See Doc. Nos. 409, 412.  My analysis indicates that a

conflict of interest arose between the Receiver, her counsel and BPNA at least as of June 26, 2006.[5]

---

[5]  The conflict may have arisen on an earlier date when an attorney who represents BPNA
generally joined H&K as a partner, if the Receiver, standing in the shoes of the borrower, then had

Whether BNPA's written limited waivers of the conflict satisfactorily cured the conflict has not been briefed.  *See* Declaration of Mitchell E. Herr, Doc. No. 416-2, Ex. B and C.   The Receiver also has not briefed whether she breached her fiduciary duty in failing to disclose earlier H&K's relationship with BPNA.

Accordingly, I recommend that the Court not award any fees to H&K or the Receiver for the time period after May 31, 2006, until they have had an opportunity to address fully the conflict and fiduciary duty issues.   If the Court should determine that a conflict of interest existed, H&K and the Receiver would not be entitled to compensation for that portion of their work related to their conflict with BPNA.[6]  *See Snyderburn v. Bantock*, 625 So. 2d 7, 15 (Fla. 5th Dist. Ct. App. 1993) (allowing attorney to collect fees except as it relates to prosecution of claims adverse to former clients); *cf. Fed. Trade Comm'n v. Certified Merchant Servs.* 126 Fed. Appx. 651, 654 (5th Cir. 2005) (affirming 20%

---

an adverse relationship with BPNA, as the lender, with respect to any overdue obligations under the loan. My review of the time sheets for work performed before June 26, 2006, also suggests that a potential conflict was evident well before June 26, 2006.  The timesheets reflect that H&K was aware as of 4/11/2006 that there were construction lien claims apparently involving the Pelican Bay Project. Doc. No. 351-4 at 10 (4/11/2006 – McDowell).  This entry is followed by work regarding "Pelican Bay issues," or "Pelican Bay status," not otherwise described.  *Id.* at 18 (4/19/06 – McDowell); *id.* at 22 (4/24/06 – McDowell).  Beginning at least by May 23, 2006, Attorney Kenneth R. Richie appears to have been assigned to address the problems at Pelican Bay. Doc. No. 351-15 at 14 (5/23/06 – Richie); *id.* at 16 (5/24/06 – Richie); *id.* at 17 (5/25/06 – Richie); *id.* at 23 (5/31/06 – Richie); Doc. No. 351-16 at 6 (6/7/06 – Richie); *id.* at 7 (6/8/06 – Richie).  On June 13, 2006, Attorney McDowell began reviewing "possible exit strategies from Pelican Bay property" and contacted the lender "regarding funding of additional items." Doc. No. 351-16 at 9; *see also id.* at 12 (6/19/06 – McDowell); *id.* at 13 (6/20/06 – Richie; 6/21/06 – Richie); *id.* at 14 (6/22/06 – Richie). Moreover, the Receiver stated in her declaration in support of the present motions that "[m]y counsel and I . . . were able to persuade BPNA to fund continuing construction on a non-recourse basis to the Receivership," doc. no. 351-2 ¶ 34, which is a clear indication that the Receiver and H&K negotiated in the best interest of the receivership to the detriment of another client of the law firm, BPNA.

[6]  The Court also may require refund of any fees and costs awarded for work performed and expenses incurred before May 31, 2006, if it determines that any of these fees and costs are not compensable due to the conflict of interest.

disgorgement of receiver's fees for breach of fiduciary duty that did not permeate the entire receivership but only affected it in part). The Court should direct H&K and the Receiver to list the time spent on the Pelican Bay Project separately from other work in any renewed application for fees and require them to address the conflict of interest issue.

### B.   Receiver's Fees.

#### 1.   Reasonable Hourly Rate.

Judith M. Mercier, Esq., was appointed Receiver at the recommendation of the SEC.  *See* Doc. No. 6 at 2.  At the time of her appointment, she had been a practicing attorney for approximately 12 years since her graduation from law school in 1994.  She has practiced in the area of commercial litigation, including but not limited to contract disputes, business torts, ERISA and media law.  She is the team leader for H&K's ERISA litigation team, and is a contributing author to the 2006 Supplement to the *Employee Benefits Law Treatise* (2d Ed.).  Doc. No. 351-3 at 2.  Prior to law school, Mercier received a B.S. in accounting in 1986 and her CPA in 1990.  *Id.*  She worked in both private and public accounting and has provided tax and audit services for a regional CPA firm, supervised accounting departments, and managed financial and tax transactions for companies involved in development, construction and property management.  Doc. No. 6-2 at 4.  She previously served as lead counsel to a receiver in a case in the United States District Court for the Middle District of Florida,  *SEC v. KS Advisors, Inc.*, Case No. 2:04-cv-00105-JES-DNF.  Doc. No. 6-2 at 1.  She has no previous experience as a receiver.

Mercier avers that her usual hourly rate is $375.00, but for her work on this matter she seeks a blended hourly rate of $350.00 per hour, which is the same rate sought by her fellow H&K partners for legal work.  Doc. No. 351-2 at 15.  A review of her time sheets reveals that she performed both

administrative work as Receiver and legal work as an attorney.  She does not, however, separate out for the Court work performed as an attorney and administrative work as Receiver.

Generally, a receiver will not be paid the hourly rate of a partner in a law firm for administrative work done in her capacity as a receiver.  *See, e.g., Goren*, 272 F. Supp. 2d at 208. This is because the hourly rate reasonable for legal work would likely overcompensate an individual for the administrative work performed as a receiver.  *Cf. SEC v. Sebastian Int'l Enter., Inc.*, 6:99-cv-1053-Orl-28KRS (M.D. Fla. 2005)(Doc. Nos. 652, 654) (nonlawyer Receiver awarded $2,000.00 per quarter flat-fee for his work); *Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.13 (requiring Receiver to provide justification for his work as an attorney rather than relying on less costly attorneys from his law firm).

Recently, the Honorable Gregory A. Presnell awarded Attorney James D. Silver an hourly rate of $325.00 per hour for his administrative and legal work as the Receiver in *SEC v. Digges*, 6:06-cv-137-Orl-31DAB (M.D. Fla. 2007)(Doc. No. 159 at 7).  Attorney Silver had been practicing law for 25 years and had practiced in the area of bankruptcy and creditors' rights for 20 years.  He had served as lead counsel for two receivers in other cases, and had lectured on receivership issues at the Florida Receiver's Forum.  *Id.*

In 2006, the Honorable Elizabeth A. Kovachevich awarded Attorney Mark Bernet his requested reduced hourly rate of $225.00 per hour for his administrative work as the Receiver in the case of *FTC v. Peoples Credit First, LLC*, 8:03-cv-2353-Orl-T-TBM (M.D. Fla. 2006)(Doc. No. 57 at 3; Doc. No. 259).  Bernet graduated from law school in 1986 and developed a practice representing creditors of bankrupt and distressed business entities.  *Id.* Doc. No. 8 at 5.  He had previously acted as a receiver in multiple actions, disposing of hundreds of millions of dollars worth of real and

personal property.  *Id*.  He also had served as counsel to several bankruptcy trustees and had been

appointed as a trustee as well.  *Id*.

      In 2005, the Honorable John Antoon, II, awarded David Almstead, a businessman skilled in

the business of the company in receivership, a flat-fee of $2,000.00 per calendar quarter for his work

as the substitute Receiver in *SEC v. Sebastian International Enterprises, Inc.,* and he awarded

Almstead's attorney a flat-fee of $3,000.00 per calendar quarter.  Receiver Almstead, through his

attorney, proposed this method of compensation to reduce the administrative expenses and time related

to repeated fee applications.  *See Sebastian Int'l Enter., Inc.,* Case No. 6:99-cv-1053-Orl-28KRS

(M.D. Fla. 2005)(Doc. NMay 5, 2008os. 648, 649, 652 & 654).

      In the present case, Mercier's experience is less than that of either Receiver Silver or Receiver

Bernet.  Both Silver and Bernet practiced law for more than 20 years at the time they were appointed

to be receivers, while Mercier had practiced law for only 12 years.  Silver had significant experience

with receiverships, serving as counsel for two receivers and lecturing on receiverships.  Bernet had

previous experience as a receiver, and his practice specialized in dealing with distressed business

entities.  Mercier's experience was limited to one role as counsel for a receiver.  Her practice emphasis

is ERISA law, not bankruptcy or business workout law.  Mercier had no experience in real estate

development or construction, unlike Receiver Almstead who had significant experience in the business

of the company in receivership.  While Mercier's education and experience as an accountant and CPA

allowed her to understand financial information relevant to the receivership, the fees she requested for

work performed by Grant Thornton, LLP and Kapila & Co. reflect that she delegated much of the

accounting work to outside accountants.

It would be in the best interest of the receivership to compensate Mercier for her work as Receiver on a flat-fee basis such as the one approved by the Court in *Sebastian International Enterprises, Inc.* However, because the SEC did not negotiate such an arrangement with Receiver Mercier[7], and the Court's order of appointment permits the Receiver and her attorneys to "reasonable compensation . . . commensurate with their duties and obligations" doc. no. 10 at 6, it appears necessary to establish a reasonable hourly rate for Mercier's work as Receiver. Accordingly, I find that $200.00 per hour is a reasonable hourly rate for Mercier's administrative work as the Receiver.

Because Mercier has chosen not to separate her work as Receiver from her work as an attorney, I recommend that the Court allow her the reasonable rate for her work as a Receiver for all reasonable hours worked through the end of May 2006. If, in subsequent applications for fees, Mercier wishes to be compensated at a higher rate for her work as an attorney, she should separately describe that work and provide justification for that work rather than relying on less costly attorneys from her law firm, or SEC attorneys when appropriate, to perform the legal work.

2.     Reasonable Number of Hours.

Mercier seeks compensation for 246.3 hours worked between February 15, 2006, and May 31, 2006. *See* Doc. Nos. 351-6 & 351-7.[8] She describes the work performed in the time sheets submitted with the motion. Based on my review of the time sheets, with a few exceptions, I find that the time Mercier worked on the described tasks was reasonable, in the absence of objection.

---

[7] It would behoove the SEC in future applications for appointment of a receiver to seek a business professional experienced in the business of the company to be placed in receivership rather than seeking appointment of an attorney as the receiver. The experienced business professional would be able to retain counsel as needed to assist with legal work.

[8] Pages 8 through 13 of the time sheet at doc. no. 351-6 are the same as pages 15 through 20 of that time sheet. I have considered only pages 8 through 13 of this time sheet.

I find the following work not to be work reasonably performed by a receiver:

| DATE | DESCRIPTION | HOURS |
|------|-------------|-------|
| 3/8/2006 | pack files, computer and documents at Pelican Bay | 3.0[9] |

Additionally, the Receiver reduced the time for which she seeks compensation by 24.6 hours to address the issues raised in my earlier Report and Recommendation. *See* Doc. No. 351-23 at 3. Accordingly, I find that Mercier reasonably worked a total of 218.70 hours for this time period.

       3.   <u>Lodestar</u>.

The number of hours worked by Mercier (218.70) multiplied by her reasonable hourly rate as a Receiver ($200.00) results in a lodestar fee of $43,740.00.

    **C.**   **Fees of Counsel to the Receiver.**

       1.   <u>Reasonable Hourly Rates of Partner-Level Attorneys</u>.

The Receiver employed partners at her law firm as her legal counsel in the case at a proposed blended rate. The partners who performed work on or before May 31, 2006, are as follows: Christopher C. Brockman; Samuel Zusmann; Robert G. McCauley; Charles L. Stutts; C. Edward Kuntz; Mitchell Eliot Herr; Kenneth R. Richie; Brian McDowell; Samuel P. Queirolo; Rory C. Ryan; Susan E. Edlein; Kathryn B. Williams.

Because a blended rate does not account for the skill and experience of the particular professional in light of the tasks performed, the better approach is to assess reasonable hourly rates for each individual.

---

[9] Although Mercier performed other appropriate tasks on that date, the physical task of packing is not one appropriately performed by the Receiver or another legal professional, absent a showing that a professional packing and moving company was not available or could not have performed these manual tasks more economically. Accordingly, I recommend that the Court deduct 3.0 hours for time spent packing materials.

Christopher C. Brockman, partner, graduated from law school in 1985, and thus had 21 years of experience at the time he performed the work under consideration in this fee application. H&K biographies at 2. Brockman practices in the area of real estate law, including commercial leasing matters and the development and registration of condominium and time-share projects. *Id.* This Court has previously awarded an attorney with over thirty years of experience an hourly rate of $370.00. *See Kolcynski v. United Space Alliance, LLC*, No. 6:04-cv-716-Orl-18KRS, 2006 WL 3614919, at *4 (M.D. Fla. Dec. 11, 2006). This Court also has previously held that an award of attorney's fees of $325.00 per hour to be reasonable for an attorney with 16 years of experience with significant relevant skills and experience. *SEC v. W.L. Ware Enters. & Invs., Inc.*, Case No. 6:06-cv-137-Orl-18UAM (Doc. No. 123 at 4). As Brockman's experience falls in between the attorneys in the above two referenced cases, I find the reasonable hourly rate for Brockman's work is $375.00 per hour.

Samuel Zusmann, partner, graduated from law school in 1954. H&K biographies at 19. He practices in the areas of bankruptcy and workout law. Zusmann ordinarily bills at $500.00 per hour. H&K invoice, Doc. No. 351-12 at 19; Doc. No. 351-2 at 15. I find the rate of $450.00 per hour to be reasonable in the central Florida market for the work Zusmann performed in 2006.

Robert G. McCauley, partner, was admitted to the Georgia Bar on April 12, 1971.[10] McCauley's practice focuses on commercial real estate. H&K biographies at 12. Before entering private practice, McCauley served seven years as a senior vice president and general counsel for a developer of retail, commercial and residential projects. *Id.* I find $440.00 to be a reasonable hourly rate for McCauley's work in 2006.

---

[10] McCauley's biography does not state when he graduated from law school or when he was admitted to the bar. The Court, therefore, relied on information from the Georgia bar.

Charles L. Stutts, partner, graduated from law school in 1978.  H&K biographies at 17.  He practices in the areas of securities and banking law.  He was formerly general counsel to the Florida Comptroller's Office and the Department of Banking and Finance.  He has previously served as an equity receiver in other cases.  *Id*.  Stutts ordinarily bills at the rate of $435.00 per hour, but for this matter he seeks a blended hourly billable rate of $350.00.  H&K invoice, Doc. No. 351-13 at 36; Doc. No. 351-2 at 15.  I find $435.00 per hour to be reasonable for Stutts's work in 2006.

C. Edward Kuntz, partner, graduated from law school in 1978.  H&K biographies at 11. Kuntz's practice focuses on commercial real estate, real estate loan workouts, and creditors' rights. *Id.*  I find $435.00 to be a reasonable hourly rate for Kuntz's work in 2006.

Mitchell Eliot Herr, partner, graduated from law school in 1981.  H&K biographies at 8.  Herr has over 25 years of securities litigation experience.  *Id.*  He previously has been appointed an equity receiver in cases.  *Id*.  Herr ordinarily bills at the rate of $525.00 per hour.  Doc. No. 351-2 at 15.  I find the reasonable hourly rate for Herr in the central Florida market in 2006 to be $400.00 per hour.

Kenneth R. Richie, partner, graduated from law school in 1986.  H&K biographies at 15.  He practices in the areas of commercial litigation with an emphasis on construction law, creditors' rights and collections. *Id*.  I find the reasonable hourly rate for Richie for work performed in 2006 to be $390.00 per hour.

Brian McDowell, partner, graduated from law school in 1988.  H&K biographies at 13.  He practices in the areas of commercial litigation, creditors' rights and bankruptcy.  *Id*.  McDowell usually bills at the rate of $445.00 per hour.  H&K invoice, Doc. No. 351-12 at 19; Doc. No. 351-2 at 15.  I find the reasonable hourly rate for McDowell for work performed in 2006 to be $350.00 per hour.

Samuel P. Queirolo, partner, graduated from law school in 1990.  H&K biographies at 14.  He is a board certified real estate attorney and practices in the areas of real estate transactions, residential and commercial development, commercial leasing, construction lien law, synthetic lease financing and title insurance.  *Id.*  I find the reasonable hourly rate for Queirolo to be $310.00 per hour.

Rory C. Ryan, partner, graduated from law school in 1990.  H&K biographies at 16.  He practices in the area of environmental litigation.  *Id.* I find the reasonable hourly rate for Ryan to be $310.00 per hour.

Susan E. Edlein, partner, graduated from law school in 1995.  H&K biographies at 7.  Edlein's practice focuses on general commercial litigation and tort litigation.  She is co-chair of the firm's Real Estate Litigation Team.  *Id.*  I find the reasonable hourly rate for Edlein to be $260.00 per hour.

Kathryn B. Williams, partner, graduated from law school in 1996.  H&K biographies at 18. She practices in the areas of commercial leasing, development and registration of condominium and timeshare projects, real estate transactions, development finance and mortgage banking.  *Id.*  I find the reasonable hourly rate for Williams to be $250.00 per hour.

### 2.    Reasonable Hourly Rates of Other Attorneys.

The Receiver requests that the Court compensate attorneys who are not partners in H&K at their respective reasonable hourly rates.  The Receiver's proffered expert on attorneys' fees, Andrew M. Brumby, opines generally that associate billing rates of $175.00 to $335.00 per hour are "customary in the community for similar services."  Doc. 349-2 at 15.  Given that Brumby did not conduct an individual analysis of the associates' experience, skills or knowledge, I find his conclusory statement not helpful to determining a reasonable hourly rate for specific attorneys who performed

work during the period under consideration.  Accordingly, I will review the information presented about the background and experience of these attorneys to assess their reasonable hourly rates.

Wiley Boston, associate, graduated from law school in 1995.  H&K biographies at 21.  He practices in the area of commercial real estate law, with an emphasis on leasing of industrial, office and retail properties, representing developers of commercial projects, and real estate finance. *Id.*  He seeks an hourly rate of $260.00.  H&K time sheet, Doc. No. 351-12 at 19.  This exceeds the upper limit of the hourly rate H&K represented that the senior associate to be used to staff the case would charge.  *See* Doc. No. 6-2 at 3.  Accordingly, based on the SEC's representation to the Court in accordance with Attorney Herr's letter to the SEC, I find the reasonable hourly rate for Boston to be $245.00 per hour.

Stacy Watson May, senior counsel, was admitted to the Florida Bar on April 21, 1997.[11]  She practices environmental law.  H&K biographies at 27.  She seeks an hourly rate of $240.00.  H&K time sheet, Doc. No. 351-14 at 28.   The proposed hourly rate is reasonable in the absence of objection.

Douglas Kelly, associate, graduated from law school in 1999.  H&K biographies at 25.  He practices in the areas of bankruptcy, creditors' rights and commercial litigation.  He teaches bankruptcy and creditors' rights as an adjunct professor of law at Florida A&M University College of Law.  *Id.*  He seeks an hourly rate of $245.00.  H&K time sheet, Doc. No. 351-12 at 19.  Kelly has fewer years of experience that Boston and May, and the motion provides no reasonable basis for awarding him an hourly rate equal to or above that found to be reasonable for Boston and May.  Therefore, I find the reasonable hourly rate for Kelly to be $230.00 per hour.

--------

[11]  May's biography does not state when she graduated from law school or when she was admitted to the bar.  The Court, therefore, relied on information from the Florida bar.

Demrie Wilkinson, associate, graduated from law school in 2001.  She practices in the area of real estate law, including acquisitions, dispositions and development of shopping centers, apartment complexes and multi-family housing developments, raw land acquisitions and infrastructure development.  H&K biographies at 24.  She seeks an hourly rate of $250.00.  H&K time sheet, Doc. No. 351-12 at 19.  As a fifth year associate at the time the work was performed, I find the reasonable hourly rate for Wilkinson to be $195.00 per hour.  *See Brother v. Int'l Beach Club Condo, Ass'n, Inc.*, No. 6:03-cv-444-ORL-28DAB, 2005 WL 1027240, at *6 (M.D. Fla. April 28, 2005) (a reasonable rate for an associate with 1 to 4 years of experience for worked performed in 2003 and 2004 is between $125.00 and $165.00).

Michael A. Sjuggerud, associate, graduated from law school in 2001.  He practices in the areas of bankruptcy, creditors' rights, debt restructuring and commercial litigation.  H&K biographies at 30. Prior to law school, he worked as a management consultant with a Big Four accounting firm, as a credit analyst at a bank and as a financial analyst for an international airline.  *Id*.  He seeks an hourly rate of $225.00.  H&K time sheet, Doc. No. 351-12 at 19.  Based on his previous experience, I find that Sjuggerud's reasonable hourly rate should be higher than that attributable to Wilkinson, provided that the work he performed is in his area of expertise.  Therefore, I find the reasonable hourly rate for Sjuggerud to be $200.00 per hour.

Andrew P. Lannon, associate, graduated from law school in 2003.  H&K biographies at 26. He practices in the area of general commercial litigation and appeals.  Prior to joining H&K, Lannon worked as a staff attorney at the Florida Supreme Court for two years.  He seeks an hourly rate of $210.00.  H&K time sheet, Doc. No. 351-12 at 19.   I find the reasonable hourly rate for Lannon to be $175.00 per hour based on his years of experience as a lawyer.

Edward M. Fitzgerald, associate, was admitted to the Florida Bar on April 21, 2005.[12]   He

practices in the areas of bankruptcy, creditors' rights, and commercial litigation.  H&K biographies

at 22.  He seeks an hourly billable rate of $190.00.  H&K time sheet, Doc. No. 351-15 at 24.  As a

second year associate at the time the work was performed, I find the reasonable hourly rate for

Fitzgerald to be $135.00 per hour.  *See Brother,* No. 6:03-cv-444-ORL-28DAB, 2005 WL 1027240,

at *6.

> 3.    <u>Reasonable Hourly Rates of Paralegals and Special Assistant</u>.

H&K sees to recover fees for several of the firm's paralegals and one special assistant at rates

ranging from $95.00 to $165.00 per hour.  The individuals are as follows: Melissa P. Allman, Linda

H. Autry, Christine Cronin, Delia M. Hayes, Margaret A. Hawkins,  Audrey Rowe, and Cathy E.

Sexton.  No biographical information has been provided for any of these persons.   Tasks performed

by the paralegals include, among other things, obtaining copies of documents, serving process, taking

inventories, reviewing incoming facsimiles and voicemails to Kirkland's businesses, making

telephone calls and conducting research.

The only evidence submitted regarding appropriate billing rates is Mercier's Declaration and

Brumby's declaration, both of  which summarily state that customary billing rates for paralegals in

this community range from $115.00 to $180.00.  Doc. No. 349-2 at 16; Doc. No. 351-2 at 18.  The

courts, however, have found that a reasonable rate for a paralegal in the central Florida market is

between $75.00 and $95.00.  *Brother*, 2005 WL 1027240, at *6; *Marengo v. 99 Cent Supercenter,*

---

[12]  Fitzgerald's biography does not state when he graduated from law school or when he
was admitted to the bar.  The Court, therefore, relied on information from the Florida bar.

*LLC*, Case No. 6:05-cv-1792-Orl-18DAB, 2007 WL 2893388, *2 (M.D. Fla. September 05, 2006) ($95.00 per hour for paralegal time approved).

Additionally, in this case H&K hired contract paralegals at the rate of $50.00 per hour.  Doc. No. 351-24.  No showing has been made why the contract paralegals were not competent to perform the work assigned to H&K's paralegal employees.  As the Receiver has not presented evidence concerning the paralegals' experience or qualifications and given the availability of contract paralegals at a lower rate, I find that a reasonable billing rate for H&K's paralegals is $50.00 per hour for the work performed through May 31, 2006.

    4. <u>Reasonable Number of Hours</u>.

The next issue is whether the hours worked are reasonable.  The Receiver submitted time sheets describing the work performed by each of the individuals for whom fees are sought. Doc. Nos. 351-12 – 351-15.

Initially, the Court ordered that the Receiver not to include in any future fee applications the fees and costs incurred in preparing the original fee application because that application was inadequate on its face.  Doc. No. 226.  Although the Receiver averred that she had applied a 100% write-off for all time associated with preparing the original fee application, doc. no. 351-2 at 16, the following time entries are not set forth in the exhibit describing the time that was written off, doc. no. 351-23 at 4-5.

| DATE | ATTORNEY | DESCRIPTION | HOURS |
|------|----------|-------------|-------|
| 4/6/06 | May | Review Receivership Order, Interim Order of Receiver, Emergency Motion to Appoint Receiver and other relevant pleadings for purposes of drafting Motion for Award of Fees; begin drafting Motion for Award of Fees | 4.5 |
| 4/13/06 | Stutts | E-mail message with draft fee application; review same | 1.0 |
| 5/12/06 | May | Review final bill from Holland & Knight and J. Mercier time through march, 2006; make revisions to Motion for Fees and prepare exhibits to Motion | 2.2 |

Accordingly, 6.7 hours should be deducted from May's time, and 1.0 hours should be deducted from Stutts's time.[13]

> **a.      Attorneys.**

During the limited time period considered by the Court, nineteen attorneys from H&K performed work in this matter. Partners recorded a total of 604 hours, and other attorneys recorded a total of 305.2 hours. It does not appear that the attorneys' work was pushed down to the lowest competent level, despite Herr's assurance to the SEC that H&K would do so.

The time sheets reveal work performed by Attorney Herr, an H&K partner, to solicit the appointment of his partner as Receiver, and to provide guidance to the Receiver and Brian McDowell, an H&K partner who was lead counsel for the Receiver, as follows:

---

[13] It would be helpful in renewed fee applications if the Receiver and H&K would reflect time for which reimbursement is not sought as "NO CHARGE" in the time sheets, and set forth the total time for which reimbursement is sought in a table such as the lodestar table used herein. This would enable the Court to more easily determine the hours for which fees are sought rather than having to compare time sheets to separate exhibits showing time written off.

| DATE | DESCRIPTION | HOURS |
|------|-------------|-------|
| 2/15/06 | Begin coordination with the SEC (.5); extensive telephone conference with B. McDowell and J. Mercier re initial and intermediate action steps (1.0); review SEC pleadings (.5) | 2.0 |
| 2/16/06 | Draft suggested topics for employee interviews conducted during take over of premises(.6); confer with J. Mercier and B. McDowell re immediate action steps (.3) | .9 |
| 2/17/06 | Telephone conferences with B. McDowell and J. Mercier re various issues (.5); email to Levenson re SEC assistance re foreign assets (.1) | .6 |
| 2/27/06 | Telephone conference with J. Mercier re status and Receiver's role and proposed sale of property (.2); review pleading re sale of property and comment on same (.3); brief research and confer with other receivers (.5) | 1.0 |
| 3/13/06 | Telephone conference with J. Mercier re receiver's stance re underlying litigation | .4 |
| 3/15/06 | Telephone conference with J. Mercier re potential auction and review of receivership order re same | .3 |
| 4/20/06 | Review status update from B. McDowell | .3 |
| 5/4/06 | Status conference with B. McDowell | .3 |

Charles Stutts, an H&K partner who had previously worked as a receiver, also provided guidance regarding the Receiver's role, and Stutts and Herr consulted with Robert Levenson, counsel for the SEC, and the Receiver on strategy issues, as follows:

| DATE | ATTORNEY | DESCRIPTION | HOURS |
|------|----------|-------------|-------|
| 3/22/06 | Herr | Telephone conference with R. Levenson | .3 |
| 3/24/06 | Stutts | Telephone conferences (x3) with Mitch Herr regarding SEC claims against Kirkland; discuss receivership proceeding and upcoming matters | 1.0 |
| 3/24/06 | Herr | Extensive meeting with R. Levenson re strategy issues; telephone conference with C. Stutts and J. Mercier re same | 2.0 |

| 3/29/06 | Herr | Confer with R. Levenson re handling of case; confer with C. Stutts, B. McDowell and J. Mercier re same and team meeting | .4 |
| 3/31/06 | Herr | Meeting with B. McDowell and C. Stutts re pending issues | 1.8 |
| 5/25/06 | Herr | Meet with R. Levenson re various issues; telephone conference with R. Levenson and J. Mercier re same | 1.5 |

While I appreciate that Herr's and Stutts's guidance was helpful to the new Receiver and her lead attorney, and apparently to counsel for the SEC, the education of individuals who Herr represented were competent to perform the work of Receiver and lead counsel regarding the tasks they would be required to perform is not properly billed to the receivership estate.  Therefore, I recommend that 11.8 hours be deducted from Herr's time and 1.0 hours be deducted from Stutts's time.

Samuel Zusmann, an H&K attorney with more than 50 years of experience in bankruptcy and work out law, also provided assistance to McDowell and other senior attorneys regarding how to perform their work as counsel for the Receiver, and he worked on issues more appropriately "pushed down" to more junior attorneys, as described in the following time entries:

| DATE | DESCRIPTION | HOURS |
| --- | --- | --- |
| 2/21/06 | Review, revise and proof Notice of Appearance; read proposed Preliminary injunction and dictate to B. McDowell with comments, McDowell re same; read SEC Motion to Amend/Expand TRO; telephone conference with B. McDowell re same; telephone call from Katie at Wachovia Bank re 2/17 telecopy receipt issue and have re-sent; conference with D. Kelly re Pooling Agreements, ongoing operations, construction, space-record preservation. | 2.2 |

| DATE | DESCRIPTION | HOURS |
|------|-------------|-------|
| 2/22/06 | Conference with A. Lannon re Smith Barney accountant safe deposit box; conference with J. Mercier/D. Kelly re Summerhill Ventures issues; telephone conference with J. Rollins and S. Edlein re serving Summerhill with TRO and Receiver Order and information needed; exchange e-mails with S. Edlein re Summerhill; read a California Desist and Refrain Order; review A. Lannon's notes re first day interview; review decisions re repatriation of offshore funds and homesteads acquired with funds obtained illegally; telephone conference with B. McDowell re his being a State Court witness for State re Kirkland; read subpoena; read proposed closing documents re Singh and conference with D. Kelly re same. | 4.9 |
| 2/24/06 | Review/modify Receiver's initial report; conference with B. McDowell re possible issues for Preliminary Injunction hearing; review and response to S. Edlein emails re her 2/23 visit to Summerhill; attend PI hearing[14] conference with Receiver, B. McDowell and R. Levenson re procedural issues; conference with Receiver, B. McDowell, D. Kelly to determine pending matters, prioritize them and assign them, including discussion of legal issues as to (1) sales to Singh, modification of proposed documents and steps to comply with relevant statutes (2) Receiver's right to pooling agreement funds (3) recovery of and preservation of property in 3rd party hands, including jointly owned property. | 5.7 |
| 3/01/06 | Conference with Receiver re need to record Preliminary Injunctions where real property located (.1); conference with A. Lannon re his latest research re sales and need to revise sale motion re Singh (.2); conference with B. McDowell re "to do" list (1.3); obtain additional information re Singh sales and begin revisions to Emergency Motion to Sell; review Litigation Inventory (2.0) | 3.6 |
| 3/7/06 | Conference with Receiver, B. McDowell, D. Kelly and paralegals to review pending matters and establish courses of action (2.1); telephone call from Kirkland to B. McDowell re wanting $20,000 a month to assist Receiver and re willingness to assist if paid (.1); read transcript of Donna Herrmann deposition (.3); conference with B. McDowell re factual issues re motion to sell to Singh (.1) | 2.6 |

---

[14]  The Receiver and Attorneys McDowell and Ritchie also attended the preliminary injunction hearing.

| DATE | DESCRIPTION | HOURS |
|------|-------------|-------|
| 3/10/06 | Conference with B. McDowell re obtaining information from Kirkland (.1); conference with B. McDowell re Summerhill issues and listen to part of Receiver/Johnson/Strongwater/McDowell call and give notes to B. McDowell re possible responses to questions asked by Strongwater (.9); review draft of Motion to Extend Receivership, outline factual/legal issues re Motion and draft a revised Motion (3.2) | 4.2 |
| 3/13/06 | Complete 1st draft of revisions to Motion to Extend Receivership (.3); conference with B. McDowell re resolving insurance issues (.1); review/update "to do" list and telephone call from J. Anthony re Summerhill (.5); conference with B. McDowell re insurance/management issues at Sunset and Summerhill (.7) | 1.6 |
| 3/14/06 | Conference with B. McDowell re "to do" items (.2); telephone conference with B. McDowell to J. Anthony, attorney for lender, re issues as to Summerhill (.5) | .7 |
| 3/15/06 | Conference with Receiver re procedure for return of vehicle leased by a Defendant and driven by Kirkland (.1); read Sunset cash flow projections received from B. McDowell and dictate comments (.4); same re Summerhill (.3); review Inventory for files relating to issues in Motion to Extend Receivership (1.0); telephone call from Jake Maurer, Atlanta attorney, re action he filed for Tropical Village/Kirkland (.1); review Order Appointing Receiver and e-mail to B. McDowell re issue as to Receiver's authority to sell personal property on 3/3 (.3); study pleadings received from Maurer and dictate response to his request for authorization to dismiss (.5) | 2.7 |
| 4/04/06 | Review/revise 2nd draft of Order To Extend Receivership (.8), obtain pleading forms for Receiver (.1); conference with B. McDowell re litigation issues as to pending a future litigation (.4); e-mail to J. Mauer, attorney, re pending litigation (.1) | 1.4 |
| 5/15/06 | Conference with B. McDowell re seeking extension of time to respond to Defendant's Motion re Alpharetta Home (.1) work on Response re same, including reading of cited case (2.0) | 2.1 |

Accordingly, I recommend that 15 hours be deducted from Zusmann's time, which is slightly less than one-half of the time described in the foregoing table, to account for work to educate the Receiver's lead attorney on matters with which H&K represented he was familiar and for work that reasonably should have been done by a more junior attorney.

The Court records and the time sheets also reflect duplication of effort regarding attendance at hearings before the Court.  The Receiver and Attorneys Zusmann, McDowell and Ritchie attended the hearing regarding the SEC's application for a preliminary injunction, which lasted only 20 minutes.  *See* Doc. No. 28; Doc. No.  351-6 (Receiver – 2/24/06, 8.8 hours); Doc. No. 351-12 (2/24/06 – Zusmann, 5.7 hours; McDowell – 2/24/06, 9 hours; Richie – 2/24/06, 3.9 hours[15]).  The Receiver, Attorneys Stutts, McDowell and Lannon, and paralegal Allman  attended a motion hearing on March 29, 2006, which lasted 3.75 hours  *See* Doc. Nos. 60, 65; Doc. No. 351-6 (Receiver – 3/29/06, 3.5 hours); Doc. No. 351-13 (McDowell – 3/29/06, 9.5 hours; Stutts – 3/29/06, 5.8 hours; Lannon – 3/29/06, 4.7 hours; Allman – 3/19/06, 8.2 hours). The Receiver and Attorneys McDowell and Fitzgerald attended a motion hearing conducted on May 22, 2006, which lasted 2.75 hours.  *See* Doc. No. 108; Doc. No. 351-7 (Receiver – 5/22/06, 9.5 hours); Doc. No. 351-15 (McDowell – 5/22/06, 5.5 hours; Fitzgerald – 5/22/06, 6.0 hours).   The Receiver has not established that the presence of lawyers and a paralegal were necessary for these hearings in addition to the presence of her lead counsel, Attorney McDowell.[16]  I have already recommended reducing Attorney Zusmann's time to account for his attendance at the February 24, 2006, hearing, among other things.  I further recommend that the Court reduce the time of the following professionals to deduct their unnecessary attendance at various hearings:

---

[15]  In most of the time entries regarding attendance at hearings, the Receiver and her attorneys time included other tasks in addition to attending the hearing, but the time spent on each task is not delineated in the time sheet.

[16]  Indeed, it is not always clear why the Receiver's presence was required at the hearings, particularly when the issues presented were addressed by her lawyers or counsel for the SEC.

| PROFESSIONAL | HEARING DATE | HOURS NOT ALLOWED |
|---|---|---|
| Richie | 2/24/06 | .5 |
| Stutts | 3/29/06 | 3.75 |
| Lannon | 3/29/06 | 3.75 |
| Allman | 3/29/06 | 3.75 |
| Fitzgerald | 5/22/06 | 2.75 |

Attorneys sometimes performed work that would more appropriately have been done by paralegals, specifically as follows:

| DATE | ATTORNEY | DESCRIPTION | HOURS |
|---|---|---|---|
| 5/24/06 | Lannon | copy, prepare, label and attach exhibits A through J to motion and give to Receiver for her review | .8 |

I recommend that fees for this work be awarded at $50.00 per hour, the reasonable hourly rate for a paralegal.

Finally, the Receiver agreed not to seek reimbursement for 9.4 hours worked by Lannon, 3.7 hours worked by McDowell, 8.1 hours worked by Stutts, 8.9 hours worked by May, 4.4 hours worked by Fitzgerald and .4 hours worked by Herr.  Doc. No. 351-23 at 4.  Accordingly, these hours should also be deducted from the reasonable number of hours worked by each of these attorneys.

### b.      Paralegals.

As stated above, compensation for paralegal time is limited to work that traditionally would be done by an attorney.  *Scelta*, 203 F. Supp. 2d at 1338.  While much of the work performed by the paralegals is reasonable, in the absence of objection, the time sheets reflect that the paralegals performed noncompensable clerical and administrative tasks, such as packing,

organizing work rooms, retrieving voice mail messages, returning telephone calls, updating

telephone logs, and coordinating with word processing staff and vendors.[17]   Because this

noncompensable work is generally included within block time entries including compensable

work, and the time devoted to each task is not specified, I recommend that the Court deduct 5%

from the paralegals's hours to account for these noncompensable tasks. *See ACLU v. Barnes*, 168

F.3d 423, 429 (11th Cir. 1999)(criticizing records that "often lump together all the tasks performed

by an attorney on a given day without breaking out the time spent on each task."); *Loranger v.*

*Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)(approving an across-the-board reduction of

voluminous attorneys' fees).

---

[17]   *See, e.g.,* Allman, 2/23/06 – "retrieve phone calls from receiver's voicemail and return same"; Allman, 2/24/06 – "obtain voicemails from receiver's line and return phone calls"; Allman, 3/1/06 – "retrieve phone calls from receiver's line and return phone calls; instructions to word processing regarding matrix for pending litigations"; Allman, 3/2/06 – "pack up P. Kirkland's office"; Allman, 3/3/06 – "Retrieve voicemail messages from receiver's line and return calls"; Cronin, 3/3/06 – "Coordinate with work processing re: dictation of inventory tape"; Allman, 3/6/06 – "check Receiver's phone line and return phone calls"; Allman, 3/8/06 – "Retrieve voicemails from Receiver's line; return phone calls"; Allman, 5/30/06 – "Several telephone calls to court reporter regarding transcripts of last hearing and obtaining copy of same; forward transcript to attorney for review"; Contract Paralegal, 3/24/06 – "travel to Port Richey to close down the Sunset Bay sales and management office; pack up the office"; Contract Paralegal, 4/3/06 – "order hearing transcript and make arrangements for pick up of same"; Contract Paralegal, 4/6/06 – "prepare and meet with Judge's clerk re: exhibit tags from Hearing exhibits"; Contract Paralegal, 4/28/06 – "review newly received mail and update the mail log and expense log"; Contract Paralegal, 5/16/06 – "review and organize newly received mail; update the mail and expense log."

5.    <u>Lodestar</u>.

For the foregoing reasons, I respectfully recommend that the lodestar be calculated as follows:

| PROFESSIONAL | HOURLY RATE | COMPENSABLE HOURS | TOTAL |
|---|---|---|---|
| Samuel J. Zusmann | $450.00 | 104.6[18] | $47,070.00 |
| Robert G. McCauley | $440.00 | 1.1 | $484.00 |
| Charles L. Stutts | $435.00 | 88.95[19] | $38,693.25 |
| C. Edward Kuntz | $435.00 | .2 | $87.00 |
| Mitchell E. Herr | $400.00 | 2.1[20] | $840.00 |
| Kenneth R. Richie | $390.00 | 26.3[21] | $10,257.00 |
| Christopher Brockman | $375.00 | 1.2 | $450.00 |
| Brian McDowell | $350.00 | 292.6[22] | $102,410.00 |
| Samuel P. Queirolo | $310.00 | .3 | $93.00 |
| Rory C. Ryan | $310.00 | 11.8 | $3,658.00 |
| Kathryn B. Williams | $250.00 | 1.6 | $400.00 |
| Susan E. Edlein | $260.00 | 29.1 | $7,566.00 |
| Wiley S. Boston, II | $245.00 | 37.3 | $9,138.50 |
| Stacy Watson May | $240.00 | 2.0[23] | $480.00 |
| Douglas Kelly | $230.00 | 88.2 | $20,286.00 |

[18] This reflects the deduction of 15.0 hours of work as discussed above.

[19] This reflects the deduction of13.85 hours of work as discussed above.

[20] This reflects the deduction of 12.2 hours of work as discussed above.

[21]  This reflects the deduction of .5 hours of work as discussed above.

[22]  This reflects the deduction of 3.7 hours of work as discussed above.

[23] This reflects the deduction of 15.6 hours of work as discussed above.

| PROFESSIONAL | HOURLY RATE | COMPENSABLE HOURS | TOTAL |
|---|---|---|---|
| Demrie L. Wilkinson | $195.00 | 1.3 | $253.50 |
| Michael A. Sjuggerud | $200.00 | 5.5 | $1,100.00 |
| Andrew P. Lannon | $175.00 | 135.85[24] | $23,773.75 |
| Andrew P. Lannon | $50.00 | .8 | $40.00 |
| Edward M. Fitzgerald | $135.00 | 12.95[25] | $1,748.25 |
| **TOTAL** | | | **$268,828.25** |

| PARALEGAL | HOURLY RATE | COMPENSABLE HOURS | TOTAL |
|---|---|---|---|
| Melissa P. Allman | $50.00 | 297.45[26] | $ 14,872.50 |
| Linda H. Autry | $50.00 | 16.2 | $810.00 |
| Christine Cronin | $50.00 | 61.9 | $ 3,095.00 |
| Delia Hayes | $50.00 | 36.6 | $1,830.00 |
| Audrey Rowe | $50.00 | 1.4 | $70.00 |
| Cathy E. Sexton | $50.00 | 1.7 | $85.00 |
| Margaret A. Hawkins (Spec. Asst.) | $50.00 | .4 | $20.00 |
| Contract Paralegals | $50.00 | 467.3 | $23,365.00 |
| Subtotal | | | $44,147.50 |
| Less 5% reduction | | | ($2,207.37) |
| **TOTAL** | | | **$41,940.13** |

---

[24]  This reflects the deduction of 13.15 hours of work and payment of .8 hours of work at a paralegal's hourly rate as discussed above.

[25]  This reflects the deduction of 7.15 hours of work as discussed above.

[26]  This reflects the deduction of 3.75 hours of work as discussed above.

Adding together the attorneys' fees and the paralegal fees as set forth above results in a grand total of $310,768.38 for the first four months of work on the case.[27]

**D.     Adjustments to the Lodestar.**

Finally, the Court must determine whether to adjust the lodestar if the fees sought would not be commensurate with the results obtained  for the defrauded investors on whose behalf the receivership estate was formed.  As the Eleventh Circuit has noted, "[w]hether a receiver merits a fee is based on the circumstances surrounding the receivership and results are always relevant." *SEC v. Elliott*, 953 F.2d 1560, 1577  (11th Cir. 1992)(internal quotations and citations omitted).

Extensive work was required in a short time span at the commencement of the receivership to locate and marshal assets.  Therefore, the Court could reasonably expect that the majority of the fees and costs incurred would be early in the life of the receivership estate.  In this case, the Receiver was successful in locating and marshaling substantial assets for the receivership estate. While the management of those assets will be an issue with respect to subsequent fee applications, I find that no downward adjustment to the lodestar is appropriate with respect to the work performed through May 31, 2006.

---

[27] Compare to the award for four months work in *SEC v. KS Advisors* in which the court approved fees <u>and</u> costs totaling only $251,812.85.  Brumby Decl. ¶ 37(i).

**E.      Out-of-Pocket Expenses.**

The Court permitted the Receiver to incur and pay reasonable expenses, subject to approval.  Doc. No. 10 at 4.  Because out-of-pocket expenses should represent expenditures actually incurred by the Receiver and her counsel, it is reasonable that they should be reimbursed for legitimate, reasonable expenditures.[28]

H&K's motion contains very little information supporting its request for expenses, stating that "it is customary . . . to separately bill clients for such expenses [filing fees, photocopies, couriers, long-distance telephone charges and document binding], rather than to absorb them in overhead."  Doc. No. 353 at 10. I note, however, that a law firm's customary charges may not be the same as its actual out-of-pocket expenses.  *See, e.g., Lang*, 1997 WL 809200, at *8-14 (finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit).   H&K has not provided the Court with a certification that the expenses were those actually incurred, that the charges for photocopies, document binding and the like were reasonable as compared with use of commercial vendor to perform the services[29], or that the costs were necessarily incurred.

Reimbursement is also sought for work by investigators and related expenses.  No information is provided regarding the individual investigator's skill or experience or the reasonable market rate in central Florida for a similarly experienced investigator. The invoice from the investigative service does not reflect the mileage rate charged or miles traveled.

---

[28]  Expenses for secretarial overtime, mileage, and meal are not compensable.  *See Peoples Credit First, LLC*, 2005 WL 3981599, at *5 n.12.

[29]  A law firm's customary charges may not be the same as out-of-pocket expenses incurred.  *See, e.g., Lang*, 1997 WL 809200, at *8-14 (finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit).

Accordingly, by separate order I have required H&K to provide supplemental evidence regarding these issues. After receipt of the supplemental evidence, I will issue a Report and Recommendation regarding the portion of the motions seeking an award costs for investigators' services and other out-of-pocket expenses.

## IV.   RECOMMENDATION.

For the reasons set forth in the foregoing report, I respectfully recommend that the Renewed Initial Application for Approval of Receiver's Fees and Costs (Doc. No. 348) be **GRANTED** in part and **DENIED** in part, and that the Renewed Initial Application for Approval of Fees and Costs of Receiver's Legal Counsel (Doc. No. 353) be **GRANTED** in part in **DENIED** in part. I further recommend that the Court permit the Receiver to disburse funds to pay for the following:

1.   For the Receiver's Fees, $43,740.00; and,

2.   For Holland and Knight's fees (including contract paralegal fees), $310,768.38.

I further recommend that the Court require the Receiver and H&K to file a motion for award of fees and costs related to the Pelican Bay Project separately from any further motions for an award of fees and costs with respect to work unrelated to the Pelican Bay Project. I further recommend that the Court require the Receiver and H&K to submit a memorandum of law, and

evidence as necessary, with respect to the conflict of interest between H&K and BPNA in support of motions for an award of fees and costs with respect to work related to the Pelican Bay Project.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 30, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy