**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

                        **Plaintiff,**

-vs-                                                   **Case No. 6:06-cv-183-Orl-28KRS**

PATRICK KIRKLAND, TROPICAL
VILLAGE, INC., CLARITY
DEVELOPMENT CORPORATION, and
SENIOR ADULT LIVING
CORPORATION,

                        **Defendants,**

SUNSET BAY CLUB, INC.,
SUMMERHILL VENTURES, INC.,
PELICAN BAY CLUB, INC., and
ISLEWORTH ADULT COMMUNITY,
INC.,

                        **Relief Defendants.**

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **RENEWED INITIAL APPLICATION FOR APPROVAL OF RECEIVER'S FEES AND COSTS (Doc. No. 348)** |
| **FILED:** | **September 28, 2007** |

| MOTION: | RENEWED INITIAL APPLICATION FOR APPROVAL OF FEES AND COSTS OF RECEIVER'S LEGAL COUNSEL (Doc. No. 353) |
|---|---|
| FILED: | September 28, 2007 |

Receiver Judith M. Mercier moves this Court for the entry of an order authorizing payment of her reasonable fees and expenses and the fees and expenses of her attorneys at Holland & Knight LLP (H&K) for the period of February 15, 2006 through July 31, 2007.[1] The following Report and Recommendation is limited to the request for reimbursement of costs incurred from February 15, 2006, to May 31, 2006.[2]

## I.   PROCEDURAL HISTORY.

On February 16, 2006, the SEC filed a complaint seeking injunctive relief, disgorgement, and penalties for alleged violations of the securities laws against Patrick Kirkland, and various entities controlled by Kirkland.  Doc. No. 1.  On the same day, the SEC filed an emergency motion requesting the appointment of a receiver for the defendants and the relief defendants who would have

> full and exclusive power, duty and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of Tropical, Clarity, Senior Adult, Sunset Bay Club, Summerhill Ventures, Pelican Bay Club, and Isleworth Adult Community; marshal and safeguard all of the assets of Tropical,

---

[1] The Court previously addressed by separate order the attorneys' fees for the Receiver's counsel in Scotland and authorized the Receiver to disburse a total of £4,217.44 (approximately $8,491.61). Doc. No. 421.  A separate Report and Recommendation regarding attorneys' fees is currently pending.  *See* Doc. No. 563.

[2] In prior orders, I have expressed concerns regarding a conflict of interest between H&K, the Receiver as a partner with H&K, and Banco Popular North America. *See* Doc. Nos. 409, 412. My analysis indicates that a conflict of interest arose between the Receiver, her counsel and BPNA at least as of June 26, 2006.  Accordingly, I recommend that the Court not award most costs to H&K or the Receiver for the time period after May 31, 2006, until they have had an opportunity to address fully the conflict and fiduciary duty issues.

> Clarity, Senior Adult and the Relief Defendants; and take whatever actions are necessary for the protection of the investors.

Doc. No. 6 at 1-2.  The SEC recommended the appointment of Mercier as Receiver and H&K as counsel for the Receiver.  Doc. No. 6 at 2.

On February 16, 2006, the Court granted the SEC's motion and appointed Mercier as Receiver. Doc. Nos. 10.  The order of appointment provides that the Receiver was authorized to "employ legal counsel, actuaries, accountants, clerks, consultants, and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses," with the Court's approval. Doc. No. 10 at 4.  The Receiver also was authorized to incur expenses "as may be reasonable, necessary or advisable" in the discharge of her duties.  *Id*. at 5.

At the time the present motions were filed, the receivership estate held $3,274,500.00 in cash and other unliquidated assets of approximately $3,000,000.00 in value.  Doc. No. 353 at 7.  The Receiver has subsequently been granted leave to abandon several assets, and has entered into a settlement agreement requiring payment of funds from the receivership estate. *See* n. 4 *infra*.  As of July 17, 2008, the receivership estate held $2,695,834.79 in cash and other unliquidated assets.  Doc. No. 578.

In the present motions, the Receiver again moves for authorization to pay her fees and expenses and the fees and expenses of H&K. In support of the motion, the Receiver filed the following documents:

- Declaration of Judith M. Mercier, doc no. 351-2, with the following attachments:[3]

  - Time sheets of Mercier for February 2006 to July 2007, doc. nos. 351-6 through 351-11;

  - Time sheets of H&K for February 2006 to July 2007, doc. nos. 351-12 through 351-22;

  - Summary of write offs for the receivership, doc. no. 351-23;

  - Invoices from Oakland Data Services, Inc. for paralegal services, doc. no. 351-24 through 351-26;

  - Invoices from Corporate Integrity Services LLC for investigative services, doc. no. 351-27.

- Declaration of Andrew M. Brumby, doc. no. 349.

The SEC did not file a response to the motions, but it informed the Receiver that it has no objection. Doc. No. 348 at 1, 16; Doc. No. 353 at 1. Although Kirkland objected to the motions when contacted by the Receiver, he has not filed responses to the motions. Doc. No. 348 at 16; Doc. No. 353 at 1. Intervener Banco Popular North America ("BPNA") filed its combined response to the motions and the motion to compensate the accountants. Doc. No. 379. BPNA's objections have been rendered moot due to a settlement reached between the Receiver and BPNA. *See* Doc. Nos. 467 at 6; Doc. No. 495.[4]

---

[3] I have identified only those portions of her declaration that relate to the specific aspects of the motions addressed in this Report and Recommendation.

[4] Under the settlement, the receivership agreed to pay $72,097.00 to the City of Palm Bay, to pay $230,000.00 to BPNA, and to abandon the Pelican Bay Project in exchange for a release of the $10,650,000.00 loan owed by relief defendant Pelican Bay Club, Inc. to BNPA and

Pursuant to the Court's order to submit supplemental briefing and evidence, the Receiver and H&K have jointly filed a Supplemental Memorandum in Accordance with Supplemental Briefing Order. Doc. Nos. 501, 531. Attached to this supplemental memorandum were the following:

- Resume of H. Allan Lane, doc. no. 531-2;

- Resume of Patric M. Zwolenski, doc. no. 531-3;

- Affidavit signed by L. Kinder Cannon III ("Cannon Aff."), doc. no. 531-4;

- Affidavit signed by Michael R. Marget ("Marget Aff."), doc. no. 531-5;

- Information regarding rates charged by commercial photocopier services, doc. no. 531-6;

- Itemized cost reports, doc. no. 531-7 through 531-10;

- Itemization for miscellaneous online research, doc. no. 531-11 through 531-12.

## II.  ANALYSIS.

The Receiver seeks reimbursement for costs totaling $774.72 for the period of February 2006 through May 31, 2006. Doc. Nos. 351-6 at 6, 13; 351-7 at 5, 10. For the same period, H&K seeks reimbursement for costs totaling $49,810.66 inclusive of the costs for contract paralegals and investigators. Doc. Nos. 351-12 at 20; 351-13 at 39; 351-14 at 31; 351-15 at 26. The Court additionally will consider the costs related to the contract paralegals through May 31, 2006, consistently with the time limitation used in the previous Report and Recommendation related to the Receiver and H&K's applications for fees.

---

release of the Receiver and the receivership estate, among other things. Doc. No. 380 at 3; Doc. No. 467 at 9-10.

1.      Contract Paralegals.

H&K seeks to recover the costs of hiring contract paralegals from Oakland Data Services, Inc. Doc. No. 351-24. The hourly rate charged for the paralegals was $50.00 per hour. I find that this was a reasonable hourly rate. *See Brother v. Int'l Beach Club Condo, Ass'n, Inc.*, No. 6:03-cv-444-ORL-28DAB, 2005 WL 1027240, at *7 ($70.00 per hour for paralegal time approved); *Marengo v. 99 Cent Supercenter, LLC*, Case No. 6:05-cv-1792-Orl-18DAB, 2007 WL 2893388, *2 (M.D. Fla. September 05, 2006) ($95.00 per hour for paralegal time approved).

Work that is appropriately compensated at a paralegal rate might include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents is not compensable. *See, e.g., Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney. Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses.") (internal quotations omitted)*; Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000).

In this case, the timesheets reflect that the paralegals performed noncompensable clerical and administrative tasks, such as packing, retrieving voice mail messages, returning telephone calls, and updating telephone logs.[5] Because this noncompensable work is generally included within block time

---

[5] *See, e.g.,* Contract Paralegal, 3/24/06 – "travel to New Port Richey to close down the Sunset Bay sales and management office; pack up the office"; Contract Paralegal, 4/3/06 – "order hearing transcript and make arrangements for pick up of same"; Contract Paralegal, 4/6/06 –

entries including compensable work, and the time devoted to each task is not specified, I recommend that the Court deduct 5% from the paralegals' hours to account for these noncompensable tasks. *See ACLU v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999)(criticizing records that "often lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task"); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)(approving an across-the-board reduction of voluminous attorneys' fees).

The total amount requested for contract paralegal fees for the period of March 2, 2006 through May 31, 2006, is $23,365.00. Doc. No. 351-24. Reducing this amount by 5% equals a reasonable paralegal fee of $22,196.75, which I recommend be paid.

2.   <u>Investigative Services</u>.

H&K seeks to recover the costs of hiring investigators from Corporate Integrity Services, Inc. ("CIS"), which total $4,330.00 for 28.6 hours of work. Doc. Nos. 351-13 at 38; 351-14 at 30; 351-27.[6] Investigative services were rendered by two individuals, H. Allan Lane and Patric Zwolenski. Doc. No. 351-27.

Prior to working for CIS, Lane worked 22 years as an FBI special and 8 years as a special agent for the U.S. Air Force Office of Special Investigations. Doc. No. 531-2. Zwolenski had 24 years prior experience as a special agent with the IRS Criminal Investigation Division. Doc. No. 531-3. Zwolenski also is a CPA and Certified Fraud Examiner. *Id*.

---

"prepare and meet with Judge's clerk re: exhibit tags from Hearing exhibits"; Contract Paralegal, 4/28/06 – "review newly received mail and update the mail log and expense log"; Contract Paralegal, 5/16/06 – "review and organize newly received mail; update the mail and expense log."

[6] Prior to January 1, 2005, CIS was wholly owned by H&K. Cannon Aff. ¶ 2. At the time the investigative services were rendered, H&K had approximately a 20% ownership interest in CIS. Cannon Aff. ¶ 3.

Zwolenski's time was charged at $155.00 per hour. Doc. No. 351-27. Lane's time was charged at $150.00 and $160.00 per hour. *Id*. H&K failed to submit any evidence regarding reasonable market rates for private investigative services or the rates usually charged by these investigators, although it was given the opportunity to supplement this evidence. Based on the training and experience of Lane and Zwolenski, I find that $150.00 per hour is a reasonable hourly rate for each of them, absent objection, for investigative work that required individuals with their expertise.

Some of the work the investigators performed was administrative in nature and did not require any special skills or knowledge.[7] On the same theory that administrative work performed by paralegals is not compensable, the receivership estate should not be charged for administrative work performed by the investigators. Therefore, I recommend that the Court deduct from the investigative services fees for 3.8 hours. *See* fn. 7 *supra*. Total reasonable investigative fees for 24.8 hours at the rate of $150.00 per hour equals $3,720.00.

In addition to their fees, CIS billed for mileage, meals, road tolls, and database charges. Doc. No. 351-27 at 3. H&K's Chief Financial Officer averred that H&K reimbursed for mileage at the IRS mileage rate. Because the investigators' invoices reflect that the travel was necessary to survey the

---

[7] *See* telephone calls to arrange for locksmith services (.7); arrange for dedicated line for investigator call-ins (.3); arrange for towing and storage of Rolls Royce automobile (.5); 2/17/2006, obtain signed copy of receivership order and furnish to Tampa investigator (.2); 2/23/2006, review invoice for guard services, and verify hours billed (.3); 2/28/2006, review guard service invoice; telephone call with guard service office manager to discuss issue involving accuracy of invoice (.3); 3/8/2006, review invoices and log sheets furnished by guard service (.2); telephone call with representatives for guard service concerning anomaly in log sheets (.3); 3/9/2006, review memorandum from guard service explaining discrepancy in log sheets (.1); review log sheets, re-calculate hours of service, verify invoice total (.4); prepare e-mail to H&K attorney and legal staff explaining anomaly in guard service log sheets and verifying invoice total (.2); furnish guard service invoice to H&K legal staff for payment (.1); 3/10/2006, review invoice from storage lot for accuracy, and furnish to H&K legal staff for payment (.2).

Sunset Bay property and conduct interviews, I find that the mileage and road toll costs are reimburseable. Because Zwolinski spent 7.1 hours in connection with that trip, I find that the meal charge ($5.87) is also reasonable. Finally, the charge for database research regarding assets of Sunset Bay also were necessarily incurred and are reasonable in the absence of objection. Therefore, I recommend that the Court allow reimbursement of the investigators' costs in the amount of $118.05.

In sum, I recommend that the Court authorize the Receiver to pay to H&K the amount of $3,838.05 for CIS's fees and expenses.

      3.      <u>Photocopying, Facsimile and Binding Services</u>.

H&K's motion contained very little information supporting its request for expenses, stating that "it is customary . . . to separately bill clients for such expenses [filing fees, photocopies, couriers, long-distance telephone charges and document binding], rather than to absorb them in overhead." Doc. No. 353 at 10. I note, however, that a law firm's customary charges may not be the same as its actual out-of-pocket expenses. *See Lang v. Reedy Creek Improvement Dist.*, No. 94-cv-693-Orl-19, 1997 WL 809200 (M.D. Fla. Dec. 23, 1997)(finding in a civil rights case that the prevailing party was entitled to its expenses, sans profit). I, therefore, directed H&K and the Receiver to provide evidence regarding their actual costs for photocopies, document binding and the like and to provide evidence of commercial rates for such services. Doc. No. 501.

A.  Reasonable Rates.

In response, H&K's Chief Financial Officer averred that its actual costs "taking into consideration materials costs, clerical time, equipment amortization, telephone fees and other related expenses," were $0.20 per page for photocopies, $0.10 per page for facsimile or telecopy transmissions, and $0.30 per tab for tabbing and velobinding of documents. Marget Aff. ¶ 3. Generally, it is recognized that private law firms build into the attorneys' hourly billing rate an amount that is sufficient to cover overhead and clerical expenses. *See, e.g., Matter of Trinity Indus., Inc.*, 876 F.2d 1485, 1495 (11th Cir. 1989). Thus, in determining H&K's actual copying cost, it is inappropriate to incorporate clerical costs, amortization of equipment, and telephone fees.

Accordingly, to determine a reasonable amount for these expenses, I have considered the commercial rates for such services as submitted by the Receiver. That information reflects the following:[8]

| Provider | Documents without staples or clips that can be automatically fed into document handler | Light litigation (large rubberbanded or clipped sections) | Medium litigation (staples and clips every 10-20 pages, index tabs, folders, etc.) | Heavy Litigation (staples or clips every 2-5 pages, various paper sizes, requiring hand-placement) | Glass work (hand placement required, e.g., checks, receipts, etc.) | Binding |
|---|---|---|---|---|---|---|
| IKON | - | - | $0.14 | $0.16 | $0.22 | - |

---

[8] The description of the various categories of documents contained in the chart was taken from Digital Legal, LLC's pricing guideline. Doc. No. 531-6. I assume for purposes of this Report and Recommendation that these descriptions reflect an industry standard.

-10-

| Provider | Documents without staples or clips that can be automatically fed into document handler | Light litigation (large rubberbanded or clipped sections) | Medium litigation (staples and clips every 10-20 pages, index tabs, folders, etc.) | Heavy Litigation (staples or clips every 2-5 pages, various paper sizes, requiring hand-placement) | Glass work (hand placement required, e.g., checks, receipts, etc.) | Binding |
|---|---|---|---|---|---|---|
| Digital Legal LLC | $0.07 | $0.10 | $0.12 | $0.15 | $0.18-$0.22 | Acco fastener with no covers or backs, $0.75; spiral binding or Acco fasteners with backings and covers, $2.50-$4.50; letter size tabs $0.25 |
| The Presentation Group | $0.07 | $0.10 | $0.16 | $0.18 | $0.25 | Acco binding, $1.00; Spiral binding, $2.50 - $3.50; Tabs, $0.40 |

In this case, neither the Receiver nor H&K have compared the type of copying performed in-house against the industry standards used by commercial copy services. In another SEC receivership action pending in this District, another large local Orlando firm billed its copy costs at $0.10 per page during the relevant time. *See SEC v. W.L. Ware Enter. & Inv., Inc.*, Case No. 6:04-cv-112-Orl-18-JGG, Doc. No. 83 at 3 (March 2, 2006). Based on the evidence submitted and the rates charged in the *Ware* case, I find that a reasonable copying charge for 2006 is $0.10 per page. There has been no showing of a need for color photocopies, so they will be reimbursed at regular black and white copy rates. I further find that the facsimile and telecopy charge of $0.10 per page is reasonable. Marget Aff. ¶ 4. Charges of $0.30 per tab for binding are reasonable. *Id.* ¶ 3.

B.  Reimbursement Amount.

1.  Receiver.

For the period of February 2006 through May 31, 2006, the Receiver claims a total of $573.00 in photocopy costs. Doc. No. 351-6 at 13, Doc. No. 351-7 at 5, 10. At the Receiver's charge of $0.20 per page, this equals 2,865 pages. At $0.10 per page, recoverable copy costs equals $286.50.

For the same time period, the Receiver also claims $16.00 in telecopy costs. Doc. Nos. 351-6 at 13; 351-7 at 10. At the Receiver's charge of $1.00 per page, this equals 16 pages. At $0.10 per page, recoverable telecopy costs equals $1.60.

The Receiver also claims $12.70 for tabs and velobinding. Doc. No. 351-7 at 5. I find this amount to be reasonable.

In sum, I recommend that the Court award the Receiver $300.80 in photocopy costs.

2.  H&K.

For the period of February 2006 through May 31, 2006, H&K claims a total of $4,440.00 in regular photocopy costs, and $87.05 for color photocopy costs. Doc. Nos. 351-12 at 20, 351-13 at 38, 351-14 at 31, 351-15 at 26. At H&K's charge of $0.20 per page for regular copies, this equals 22,200 pages. At $0.10 per page, recoverable copy costs equals $2,220.00.

Marget's Affidavit failed to disclose what H&K's actual costs for color photocopies were, and I could not readily discern from the itemized summary what was the per page charge for color photocopies. As they are separately itemized on the invoice and because color copies ordinarily are charged at higher rates than black and white copies, I have estimated the per page charge based on the lowest commercial rate submitted, which was $0.95 per page. Doc. No. 531-6 at 4. Based on this

assumption, there were 91 pages of color copies. At $0.10 per page, recoverable costs for color photo copies equals $9.10. Total recoverable copy costs equals $2,229.10.

For the same time period, H&K also claims $869.00 in telecopy costs. Doc. Nos. 351-12 at 20; 351-13 at 39; 351-14 at 31. At H&K's charge of $1.00 per page, this equals 774 pages. At $0.10 per page, recoverable telecopy costs equals $77.40.

H&K also claims $92.10 for tabs and velobinding. Doc. Nos. 351-14 at 31; 351-15 at 26. I find this amount to be reasonable.

In sum, I recommend that the Court award H&K $2,398.60 in photocopy costs.

4.      Courier Services.

I directed the Receiver and H&K to address the necessity of courier fees, overnight delivery service and expedited processing orders. Doc. No. 501 at 2. The Receiver and H&K responded generally that they used such services where the timeliness of delivery of documents was important. Doc. No. 531 at 3. Examples given were the mailing of paychecks to employees, sending documents to the forensic accountants, and sending the Court's order to another district court for filing. *Id*.

A.      Receiver.

The Receiver claims courier fees of $12.76. Doc. No. 351-6 at 13. I find this amount to be reasonable.

B.      H&K.

From February 2006 through May 2006, H&K incurred a total of $505.32 in courier fees for 40 separate mailings. Doc. Nos. 351-13 at 37-38; 351-14 at 29-30; 351-15 at 25. Compared to the $6.47 incurred for postage during this time, doc. no. 351-14 at 31, it is apparent that the use of courier services was the norm rather than the exception. Some of these courier charges appear to be for the

convenience of counsel or the SEC's attorney.[9] Several of the charges were for deliveries to this Court.[10] Given the electronic filing system, it is unclear why there was a need for courier deliveries to the Court. I find that H&K has failed to establish the necessity for the charges set forth in footnotes 11 and 12, and that those charges should be deducted. Therefore, I find that H&K incurred reasonable courier fees of $393.88.

    5.    <u>Other Costs</u>.

The Receiver and H&K request payment for other miscellaneous costs, including long-distance telephone charges, teleconferencing charges, filing fees, witness fees, computerized research, title search fees, etc.

The computerized legal research totaled more than $12,361.95.[11] H&K's Chief Financial Officer did not address whether these were actual costs incurred, or whether H&K has a flat fee contract with the online research providers that is less than the amount reflected on the invoice. Accordingly, I recommend that the Court deny the computerized legal research expense without prejudice to the Receiver and H&K resubmitting it, if appropriate, supported by evidence of the actual expense incurred.

---

[9] *See* 3/8/06 courier to Herr, $6.60; 3/8/06 courier to Herr, $6.60; 3/10/06 courier to Levenson, $6.93; 4/6/06, courier to Levenson, $13.16; 5/18/06 courier to Mercier, $8.85.

[10] *See* 4/14/06, $19.80; 4/30/06, $34.65; 5/12/06, $14.85.

[11] *See* Doc. No. 351-12 at 20, $199.00 (Lexis); Doc. No. 351-13 at 38, $3,351.54 (Lexis), $8.64 (miscellaneous online research); Doc. No. 351-13 at 39, $1,223.66 (Westlaw); Doc. No. 351-14 at 31, $3,801.98 (Lexis), $175.64 (miscellaneous online research), $3,531.99 (Westlaw); Doc. No. 351-15 at 26, $69.50 (miscellaneous online research).

With the exception of the following costs claimed by H&K, I find the other costs claimed by the Receiver and H&K to be reasonable:

3/14/06 Patrice T. Shields, $275.00 (withdrawn, Doc. No. 531 at 4);

4/17/06 Stutts mileage to Orlando and parking, $112.25 (denied because no showing that Orlando counsel could not have handled the matter);

Doc. No. 351-14 at 31, secretary overtime, $473.40 (denied because overhead expenses should be absorbed in the attorneys' hourly billing rate);

5/15/06 Delia Hayes, $538.43 (withdrawn, Doc. No. 531 at 4).

In sum, I find that H&K incurred reasonable miscellaneous expenses in the amount of $5,728.39.

## III.   RECOMMENDATION.

For the reasons set forth in the foregoing report, I respectfully recommend that the Renewed Initial Application for Approval of Receiver's Fees and Costs (Doc. No. 348) be **GRANTED** in part and **DENIED** in part, and that the Renewed Initial Application for Approval of Fees and Costs of Receiver's Legal Counsel (Doc. No. 353) be **GRANTED** in part in **DENIED** in part.  I further recommend that the Court permit the Receiver to disburse funds to pay for the following:

1. For the Receiver's Costs, $313.56; and,

2. For Holland and Knight's Costs (including contract paralegal fees and investigators), $34,555.67.

I further recommend that the Court direct the Receiver and H&K to file a new motion for reimbursement of fees and costs incurred after May 31, 2006, and for actual computerized legal

research costs incurred since the inception of the receivership, without incorporating by reference any of the evidence submitted in support of the present motions.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 21, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy