# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

                                        **Plaintiff,**

**-vs-**                                        **Case No.  6:06-cv-183-Orl-28KRS**

**PATRICK KIRKLAND, et al.,**

                                        **Defendants,**

**SUNSET BAY CLUB, INC., et al.,**

                                        **Relief Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **SECOND APPLICATION FOR APPROVAL OF RECEIVER'S FEES AND COSTS (Doc. No. 625)** |

| | |
|---|---|
| **MOTION:** | **SECOND APPLICATION FOR APPROVAL OF FEES AND COSTS OF RECEIVER'S LEGAL COUNSEL (Doc. No. 626)** |

## I.      INTRODUCTION.

        Receiver Judith M. Mercier moves this Court for the entry of an order authorizing

payment of her fees and expenses in the amount of $224,625.55, Doc. No. 625, and the fees and

expenses of her attorneys at Holland & Knight LLP (H&K) in the amount of $801,660.93, Doc.

626, for the period of June 1, 2006 through June 30, 2009.[1] In support of the motions, the Receiver filed her own declaration with the following attachments:

1.      The Receiver's Resume, Doc. No. 627-2;

2.      H&K attorney resumes, Doc. No. 627-3;

3.      Analysis of Certain Property in Receivership Estate, Doc. No. 627-4;

4       Invoice 2358377, the Receiver's time sheets for legal work June 2006 through March 2009,  Doc. No. 627-5;

5.      Invoice 2381851, the Receiver's time sheets and costs for administrative work June 2006 through June 2009,  Doc. Nos. 627-6, 627-7;

6.      Invoice 2406627, the Receiver's time sheets for administrative work April 2009  through June 2009, Doc. No. 627-8 at 11-24;

7.      Invoice 2381809, the Receiver's costs June 2006 through March 2009, Doc. Nos. 627-8 at 1-10, 627-9, 627-10 at 1-27;

8.      Invoice 2409651, the Receiver's costs April 2009 through June 2009, Doc. Nos. 627-8 at 25-29, 627-10 at 28-42;

9.      Invoice 2410181, H&K time sheets (Doc. Nos. 627-11, 627-12, 627-13, 627-14, 627-15 at 1-41) and costs (Doc. Nos. 627-15 at 41-53, 627-18, 627-19) June 2006 through March 2009;

10.     Invoice 2410206, H&K time sheets (Doc. No. 627-17 at 1-19) and costs (Doc. No. 627-17 at 19-21) April 2009 through June 2009;

11.     Invoice 2410136, H&K time sheets (Doc. No. 627-16 at 1-29) and costs (Doc. Nos. 627-16 at 29, 627-20) June 2006 through March 2009 on Laurel Wood matter;

12.     Invoice 2409724, H&K time sheets (Doc. No. 627-17 at 22-30) and costs (Doc. No. 627-17 at 30-31, 627-20 at 15-29) April 2009 through June 2009 on Laurel Wood matter;

---

[1]      The Court has already approved $44,053.56 in fees and costs to the Receiver and $345,324.05 in fees and costs to H&K for their work through May 2006.  Doc. Nos. 585, 594.

13.     Invoice #2358412, H&K time sheets (Doc. No. 627-17 at 32-43) and costs (Doc. No. 627-17 at 44) for appellate work June 2006 through March 2009;

14.     Schedule of hours and fees, Doc. No. 627-21;

15.     Schedule of costs, Doc. No. 627-22;

16.     Contract paralegal invoices, Doc. No. 627-23;

17.     Itemization for computerized research, Doc. No. 627-24;

18.     Receivership bank balances, cash receipts, and disbursements, Doc. No. 627-25;

19.     Declaration of Glenn Ross, Doc. No. 627-26; and

20.     Declaration of Mia C. Stutzman, Doc. No. 627-27.

The Receiver also filed a declaration of Andrew Brumby, Esq., in support of the motions. Doc. No. 629. Brumby has experience counseling secured and unsecured creditors, creditors committees, receivers and trustees in state and federal insolvency proceedings. He has served as a court appointed examiner in Chapter 11 bankruptcy cases. He also has experience representing clients in a variety of real estate matters, including workouts and restructuring transactions as well as commercial foreclosure issues and related limited liability suits. Doc. No. 629 ¶¶ 3,4. Although Brumby does not have experience as a receiver for the SEC or as counsel for a SEC receiver, I find his experience to be sufficiently related for him to opine on the reasonableness of the fees sought by H&K and the Receiver.

Brumby's declaration shows that he reviewed only the materials suggested by the Receiver, which show that she marshaled over $11 million in assets and currently held approximately $3 million in cash. Brumby states that he reviewed the docket in this matter, but that is not adequate to enable him to express a meaningful opinion regarding the performance of the Receiver and her counsel. A

thorough review of numerous filings is required to evaluate the performance of the Receiver and her counsel and the benefits to the receivership of the work for which they seek to be compensated from the approximately $3 million cash that the receivership holds.  Brumby did not perform a cost-benefit analysis, which requires examination of the results achieved by the Receiver and her counsel.  He did not address the Receiver's deficient filings or other mis-steps which required the receivership to pay out monies to cover her mistakes.  He also did not address the Receiver's actions which resulted in large losses to the receivership.  Accordingly, I have accorded little weight to Brumby's declaration.

The SEC did not file a response to the motions, but it evidently informed the Receiver that it has no objection to them.[2]  Doc. Nos. 625 at 12, 626 at 13.  The Receiver asserts that the SEC's position regarding the reasonableness of the fees should be given great weight, citing various cases from courts outside the Eleventh Circuit.  Doc. No. 625 at 14.  These cases also affirm the law in this circuit that an award of attorney's fees is within the Court's sound discretion. *See, e.g., SEC v. First Securities Co.*, 528 F.2d 449, 451 (7th Cir. 1976).  Therefore, the Court will consider the SEC's lack of objection as simply one factor in the analysis.

Kirkland objected to the motions when contacted by the Receiver, but he did not timely file a response to the motion.  He later filed a motion to discharge the Receiver, which was stricken by the Court.  Doc. Nos. 644, 645.

## II.    APPLICABLE LAW.

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be

---

[2]    The Receiver decreased the time Richard Mockler III spent preparing the Receiver's and H&K's fee requests by 50% at the request of the SEC.  *See* Doc. No. 627-21 at 3.

> made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. . . . The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890). A receiver owes a duty to exercise reasonable care to protect and preserve the assets of the receivership. In carrying out this duty, the receiver "must exercise ordinary care and prudence, that is, the same care and diligence that an ordinary prudent person would exercise in handling his or her own estate, or under like circumstances." 65 Am. Jur. 2d *Receiver* § 146 (2007).

In determining a reasonable fee for a receiver and her attorneys, "[a] basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 485 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975) (hereinafter "*Moody*"). "Although time is a material factor, the difficulty of the job, the expertise necessary to accomplish it, and the results achieved are more significant here." *Id.* at 486 (citations omitted).

## III.   ANALYSIS.

### A.      *Results Achieved.*

The Receiver asserts that she and H&K added substantial value to the receivership by marshaling more than $11.3 million in assets, Doc. Nos. 625 at 4, 626 at 5, 627-2 ¶ 8, 627-4, which included $7.7 million in assets the Receiver marshaled by expanding the receivership. *Id*. She does not explain what happened to the $11.3 million in assets, however. As of July 7, 2009, the receivership held $3,021,215.52 in cash, which is merely 27% of the value that the Receiver assigned

to the assets that she marshaled.  Doc. No. 627-25 at 1.  Thereafter, the Receiver recovered an additional $56,115.01 from the sale of two Sunset Bay triplexes.  Doc. No. 627-1 ¶¶ 10, 55; Doc. No. 649 at 2.  The Receiver and her counsel now seek to reduce the balance in the receivership estate by $1,026,286.48, more than 33%, to pay their in fees and expenses.  Thus, of the $11.3 million in marshaled in assets, the receivership would hold $2,049,044.03, less than 18% of the total assets that the Receiver reportedly brought into the receivership, if the full fees and expenses requested are approved.

The Receiver did not disclose in her motions the efforts she and her counsel took which resulted in actual losses to the receivership.  For example, with respect to a property referred to as the Pelican Bay Project, the Receiver initially elected to hold the property even though it was encumbered by a $10.65 million mortgage and senior security interest held by Banco Popular North America (BPNA) that was scheduled to mature on January 7, 2007.  *See* Doc. No. 409 at 2.  The Receiver paid $175,820.56 in expenses of Pelican Bay during the time it was held by the receivership. Doc. No. 495 at 27.  After it was disclosed that there was a conflict of interest between H&K, in which the Receiver is a partner, and BPNA, the Receiver hired special counsel to handle the matter, at a cost to the receivership of $ 70,029.00.  Doc. Nos. 386, 603.[3]  Ultimately, with the assistance of the Court, the dispute regarding the Pelican Bay Project was resolved in a settlement in which the Receiver abandoned the Pelican Bay Project and paid $72,097.00 to the City of Palm Bay and

---

[3]  BPNA and the receivership were adverse to each other at the point that the Receiver began negotiations with BPNA regarding the loan from BPNA that was scheduled to mature on January 7, 2007.  A conflict arose because attorneys at H&K, including Attorney McDowell, lead counsel for the Receiver, also handled matters for BPNA.  BPNA ultimately threatened to sue Defendant Pelican Bay Club, Inc. and the Receiver.  *See, e.g.,* Doc. No. 409.

$230,000.00 to BPNA, and BPNA agreed not to seek further payments from the receivership of amounts due under the loan and released the Receiver and the receivership from any further claims. Doc. No. 495 at 3-4, 7-8.  Thus, by failing to make a more timely decision to abandon the Pelican Bay Project, and as a result of the conflict of interest issues that arose among the Receiver, H&K and BPNA, the receivership suffered a loss of $547,946.56.[4]  Doc. No. 627-25 at 9-10.

Losses also occurred as a result of the Receiver's actions regarding an asset known as the Summerhill Property.  This property was encumbered by a $4.4 million loan, payment of which was due on March 5, 2006.  After the lending bank filed a motion seeking permission to institute foreclosure proceedings against the property, the Receiver entered into an agreement under which the receivership paid $87,609.70 in interest due on the loan and $100,000.00 to the bank's attorneys, and then allowed the bank to submit the balance owed on the loan as a credit bid when an auction was held to sell the property.  While the receivership held the property, the Receiver spent $13,400.60 on insurance for the property and $4,757.80 for servicing an elevator.  The Receiver employed an auctioneer to sell the property, at a cost to the receivership of $ 57,560.00.  Doc. No. 632.[5]  The only bidder at the auction was Austell Road Holdings, Inc. ("Austell Road"), the assignee of the lending bank, who successfully purchased the Summerhill Property for a credit bid.  Thereafter, the Receiver recommended, and the Court approved, transfer of the property to Austell Road "free and clear of

---

[4]    This amount is calculated as follows: $70,029.00 to conflict counsel + $72,097.00 to City of Palm Bay + $230,000.00 to BPNA + $175,820.56 in expenses of Pelican Bay.  In the present motions, the Receiver represents that neither she nor H&K seek an award of fees for their work on Pelican Bay.  Doc. No. 627-2 ¶ 44.

[5]    The Receiver did not include a provision in the auctioneer's contract about how he would be paid in the event of a credit bid.  Accordingly, the Court required the Receiver to state in future fee petitions why her fee should not be reduced by the amount paid to the auctioneer.  Doc. No. 632.  This issue will be addressed in the lodestar analysis *infra*.

liens." Austell Road subsequently filed a motion to require the receivership to pay its share of the *ad valorem* taxes on the property, pursuant to the "free and clear of liens" provision. The Court granted that motion after an evidentiary hearing, and required the receivership to pay Austell Road $41,257.61. Doc. No. 595 at 2. Therefore, by making the decision to hold and sell the Summerhill Property, rather than abandon it, the receivership suffered a loss of $304,585.71.[6]

The Receiver asked the Court to add to the receivership an asset known as the Pembrooke Townhouses. Doc. No. 78. After the motion was granted, the Receiver determined that the property had "significant negative equity." Doc. No. 627-1 at 5. The receivership spent $25,817.41 in net expenses to carry this property until the Receiver elected to abandon it. Doc. No. 627-25 at 5-6, 8, 11.

The receivership also paid $1,183.75 in costs to file a separate action against Laurel Wood. Case No. 6:07-cv-1729-Orl-28GJK, Doc. No. 1 ($350.00 filing fee); Doc. No. 69 ($833.75 one-half the costs of calling a venire). As of the writing of this Report and Recommendation, the Receiver has not recovered any monies as a result of this litigation. Doc. No. 649 at 4.

Two additional properties which were previously listed as assets of the receivership, the September Blue investments bank account in Antigua and the Ohio Savings Bank checks, will not yield any additional funds for the receivership. Doc. No. 649 at 2-4.

---

[6]     This amount is calculated as follows: $87,609.70 interest + $100,000.00 bank attorneys' fees + $13,400.60 insurance + $4,757.80 elevator expense + $41,257.61 *ad valorem* taxes + $57,560.00 auctioneer fees and expenses.

Thus, during the time for which the Receiver and H&K seek fees in the present motions, their work has resulted in a diminution in the value of the receivership of at least $879,533.43[7] without considering the present motions for fees and expenses.  The results achieved, therefore, reflect that neither the Receiver nor some of the H&K lawyers who advised her had sufficient expertise to address successfully the many difficult issues they confronted.

B.      *Time Expended.*

"No receivership is intended to generously reward court-appointed officers."  *Moody*, 374 F. Supp. at 483.  Both a receiver and her counsel must exercise proper billing judgment in seeking fees from the receivership, and should limit their work to that which is reasonable and necessary.  *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4.  This is particularly true when, as in the present case, the receivership will not recover sufficient assets to pay full restitution to the victims of the fraud alleged in the complaint.  *See id.* at *5.  In this case, Mercier states that the claims to receivership assets exceed $37.9 million.  Doc. No. 630 ¶ 4.

In determining the reasonableness of professional hours expended, the Court should consider the reasonable hourly rate for the work, the results obtained, and the reasonable number of hours expended.  *Hensley v. Eckerhart*, 461 U.S. 424, 433.  This Court has repeatedly reminded the Receiver of her responsibility to ensure that her work and the work of her attorneys and other professionals she employed on behalf of the receivership be limited to that necessary to identify and

---

[7]      This amount is calculated as follows: $547,946.56 Pelican Bay losses + $304,585.71 Summerhill losses + $25,817.41 Pembrooke expenses + $1,183.75 Laurel Wood case expenses.

marshal assets and that the work be performed as economically as possible to protect the assets of the receivership.  Doc. No. 194 at 5 n.4, 197 at 2, Doc. No. 211 at 6-7.

For the four months of work performed by the Receiver and her counsel between February 2006 and May 2006, they have already been paid a total of $389,377.61 in fees and costs.  This amount exceeds several of the examples cited by the Receiver.  Doc. No. 625 at 20-23 (citing *SEC v. KS Advisors,* No. 2:04-CV-105-FtM-29DNF (M.D. Fla. Feb. 6, 2006) (court awarded $251,812.85 to receiver and counsel for four-month period); *SEC v. Crowley*, No. 04-80354-CIV-MIDDLEBROOKS/JOHNSON (S.D. Fla. Oct. 4, 2004) (court awarded $185,000 to receiver and her professionals for two-and-one-half-month period); *SEC v. Web Hosting Headquarters Partnership*, No. 00-4975-CIV-HIGHSMITH/GARBER (S.D. Fla. June 14, 2001) (court awarded $333,096.46 to receiver and her professionals for four-month period); *SEC v. Viatical Capital, Inc*, No. 8:03-CV-1895-T-23TGW (M.D. Fla. Apr. 14, 2004) (court awarded $343,979.50 for three-month period)).  Thus, by any measure, this Court's compensation of the Receiver and her counsel has already been more generous than the compensation awarded by other courts.

      1.    <u>Reasonable Hourly Rates</u>.

      **a.**    **The Receiver**.

The Receiver seeks reimbursement for her administrative duties as the Receiver at a rate of $200.00 per hour for 640.25 hours of work.  Doc. Nos. 625 at 23-24, 627-1 at 14. The Court has previously found $200.00 per hour for her administrative work in this case to be reasonable.  Doc. No. 563.

The Receiver seeks reimbursement for her legal work at a rate of $300.00 per hour for 207.10 hours of work.  Doc. No. 625 at 3**.**  Before law school, Mercier worked as a certified public

accountant.  Since graduating from law school in 1994, she has practiced in the area of commercial

litigation, is the team leader of H&K's ERISA litigation team, and contributed to the 2006

supplement to the *Employee Benefits Law Treatise* (2d Ed.).  Doc. No. 351-2 at 2.  She previously

served as lead counsel to a receiver in a case in this Court, *SEC v. KS Advisors, Inc.*, Case No. 2:04-

cv-00105-JES-DNF.  Doc. No. 6-1 at 1.[8]  The Court has previously found in this case that a

reasonable hourly rate for an attorney who graduated in 1995 was $260.00 per hour.  Doc. No. 563

at 18 (hourly rate for partner Susan Edlein).  Because Mercier has one more year of experience than

this attorney, I recommend that the Court find that $275.00 is a reasonable hourly rate for Mercier's

legal work.  This is also consistent with hourly rates awarded in this Court for legal work by a

receiver.  *See SEC v. Digges*, 6:06-cv-137-Orl-31DAB (M.D. Fla. 2007)(Doc. No. 159 at 7)(finding

$325.00 an hour a reasonable hourly rate for a lawyer with twenty-five years of experience and

previous work as a receiver).

### b.    Counsel for the Receiver.

The Court previously found hourly rates for several of the attorneys at H&K to be reasonable.

Doc. Nos. 563, 585.  In sum, fees for partner-level attorneys were set in the following ranges:

| | |
|---|---|
| 30 or more years of experience | $400.00 – $450.00 |
| 20 or more years of experience | $310.00 – $375.00 |
| 10 or more years of experience | $250.00 – $260.00 |

The fees for associate-level attorneys were set in the following ranges:

---

[8]    The presiding judge in the *KS Advisors* case accepted the magistrate judge's recommendation that $300.00 an hour was a reasonable rate for Mercier's work.  This decision is not binding in the present case.  For the reasons discussed above, I find this hourly rate too high for Mercier's legal work in this case.

| | |
|---|---|
| 8 or more years of experience | $195.00 – $245.00 |
| 4 to 7 years of experience | $135.00 – $175.00 |

In the absence of argument or evidence supporting a rate change, the hourly rates previously found to be reasonable for various attorneys remain in effect.

H&K thereafter called upon additional attorneys to assist the Receiver for whom reasonable hourly rates have not been determined previously. I will examine their qualifications and recommend reasonable rates for their compensation below.[9]

*i.       Partner-Level Attorneys.*

James Rollins, partner, was admitted to the Georgia Bar on June 11, 1973. He practices in the  area of creditors' rights. Doc. No. 627-3 at 21. His experience includes loan restructurings, workouts and recovery. *Id.* His level of experience is near that of Attorney McCauley, who has a reasonable hourly rate of $440.00. The Receiver requests a rate of $495.00 per hour for Rollins, but based on his experience, I find $440.00 per hour to be a reasonable rate for Rollins' work.

Raymond Carpenter, partner, was admitted to the Georgia Bar on June 25, 1975. He practices in the areas of state and local taxation and tax exempt organizations. Doc. No. 627-3 at 5. He also negotiates with government authorities to secure exemptions for purchases of manufacturing machinery and equipment, and to qualify for tax incentives and tax credits. *Id.* He has slightly more experience that Attorneys Stutts and Kuntz, whose reasonable hourly rate was set at $435.00, and less

---

[9]       Many of the biographies did not include when the attorney graduated from law school or was admitted to the Bar, so the undersigned has relied on this information from the Florida Bar and the Georgia Bar.

experience than Attorneys McCauley and Brockman.  The Receiver requests a rate of $510.00 per hour for Carpenter, but I find $435.00 per hour to be a reasonable rate for Carpenter's work.

A. Guy Neff, partner, was admitted to the Florida Bar on October 23, 1975.  He practices in the areas of commercial real estate development, banking, development and financing of health care facilities, and hotel and resort development.  Doc. No. 627-3 at 19.  He is the practice group leader of H&K's central Florida real estate practices group and co-chair of the firm's health care real estate team.  *Id*.  He has less experience than Attorneys Stutts and Kuntz, both at $435.00 per hour, but more experience than Attorney Herr, whose reasonable hourly rate was set at $400.00 per hour.  The Receiver avers that Neff ordinarily charges $470.00 per hour.  I find $425.00 per hour to be a reasonable rate for Neff's work.

Laurie Webb Daniel, partner, was admitted to the Georgia Bar on November 12, 1982.  She is chair of H&K's appellate division and also practices litigation, including complex and high stakes litigation.  Doc. No. 627-3 at 7.  Her experience is on par with that of Attorney Herr.  The Receiver requests a rate of $450.00 per hour for Daniel, but I find $400.00 per hour to be a reasonable rate for Daniel's work.

Mark Buhler, partner, was admitted to the Florida Bar on October 28, 1982.  He specializes in maritime transactional matters but also practices in the areas of general corporate and commercial transactions and asset-based lending transactions.  Doc. No. 627-3 at 3.  He is board certified in Admiralty and Maritime law.  *Id*.  H&K requests $335.00 per hour for Buhler's work, which I find to be a reasonable.

David A. Jones, partner, was admitted to the Florida Bar on October 18, 1985.  He practices in the area of complex commercial litigation.  Doc. No. 627-3 at 13.  His practice includes

commercial foreclosures and workouts, defense of lender liability actions, and commercial and asset-based loan defaults and workouts. *Id.* His experience is on par with that of Attorney Richie, whose reasonable hour rate was set at $390.00 per hour. The Receiver requests a rate of $400.00 per hour for Jones, but based on his experience, I find $390.00 to be a reasonable rate for Jones' work.

Louise McAlpin, partner, was admitted to the Florida Bar on September 23, 1993. She practices litigation with an emphasis on federal securities fraud litigation, director and officer liability, class actions, derivative actions, and complex litigation. Doc. No. 627-3 at 15. Her experience includes accounting fraud, disclosure violations, insider trading, improper revenue recognition and claims under various states' securities laws. *Id.* McAlpin's experience is less than that of Attorney McDowell, the Receiver's lead counsel whose reasonable hourly rate has been set at $350.00, but more than Attorney Edlein, whose reasonable hourly rate has been set at $260.00 per hour. The Receiver avers that McAlpin normally charges $460.00 per hour, but based on her experience, I find $280.00 per hour to be a reasonable rate for McAlpin's work.

Kathryn Oberto, partner, was admitted to the Florida Bar on October 2, 1996. She practices in the areas of commercial leasing, the development and registration of condominiums and timeshares, real estate transactions, development, finance, and mortgage banking. Doc. No. 627-3 at 20. She co-chairs H&K's National Commercial Leasing Team. *Id.* Her experience is on par with that of Attorneys Edlein and Williams, whose reasonable hourly rates have been set at $260.00 and $250.00, respectively. The Receiver requests a rate of $250.00 per hour, which I find to be a reasonable rate.

Stephen Warren, partner, was admitted to the New York bar in 2001 and to the Florida Bar on September 20, 2004. He practices litigation with an emphasis on class actions and federal

-14-

securities fraud litigation.  Doc. No. 627-3 at 24-25.  The Receiver avers that Warren normally charges  $350.00 per hour, but based on his experience, I find $200.00 per hour to be a reasonable rate for Warren's work.

*ii.      Other Attorneys.*

Heather M. Gorman, associate, graduated from law school in 2001.  Doc. No. 627-3 at 34. She practices in the area of commercial real estate with a particular concentration in the areas of wireless communication site acquisition and leasing, as well as title issue resolution.  *Id*.   The Receiver seeks an hourly rate of $175.00, which is a reasonable rate for Gorman's work.

Richard Mockler III, associate, was admitted to the Florida Bar on May 25, 2002.  He practices in the area of litigation with an emphasis on class action and securities shareholder litigation.  Doc. No. 627-3 at 38.  Mockler's experience is between that of Attorney Lannon, whose reasonable hourly rate was set at $175.00, and Attorney Sjuggerud, whose reasonable hourly rate was set at $200.00.  The Receiver seeks an hourly rate of $335.00 for his work, but based on his experience, I find a reasonable hourly rate for Mockler to be $185.00.

Carrie Eisnaugle, associate, was admitted to the Florida Bar on September 18, 2003.  She practices in the area of corporate and securities law.  Doc. No. 627-3 at 30.  Her practice includes mergers and acquisitions, securities offerings, corporate governance matters and securities regulation compliance.  *Id*.  Her experience is on par with that of Attorney Lannon.  She seeks an hourly rate of $295.00, but based on her experience, I find a reasonable hourly rate for Eisnaugle to be $175.00.

Leslie Candes, associate, was admitted to the Florida Bar on May 4, 2004.  She practices in the areas of transactional law, commercial law, real estate development and real estate finance.  Doc. No. 627-3 at 29.  Her experience is between that of Attorney Lannon and Attorney Fitzgerald, whose

reasonable hourly rate was set at $135.00 per hour.  The Receiver requests a rate of $235.00 per hour, but based on Candes's experience, I find a reasonable hourly rate for Candes to be $155.00.

Anita L. Schick, associate, was admitted to the Georgia Bar on March 25, 2005.  She practices general commercial litigation including corporate governance, breach of contract, product liability, insurance coverage and administrative representation.  Doc. No. 627-3 at 39.  Her experience is on par with that of Attorney Fitzgerald.  The Receiver seeks an hourly rate of $270.00 per hour for Schick's work.  Based on Schick's experience, I find a reasonable hourly rate for Schick to be $135.00.

Lynsey Templeton, associate, was admitted to the Florida Bar on September 21, 2006.  She practices in the areas of general corporate law, mergers and acquisitions, and commercial transactions.  Doc. No. 627-3 at 40.  Her practice includes providing counsel regarding corporate structure, corporate governance and corporate reorganizations.  *Id*.  She seeks an hourly rate of $250.00.  Based on Templeton's experience, I find a reasonable hourly rate for Templeton to be $125.00.

S. Allister Fisher, associate, was admitted to the Florida Bar in 2004.  He practices in the area of commercial real estate development, acquisition and disposition, leasing and finance.  Doc. No. 627-3 at 31.  His experience is commensurate with that of Attorney Candes, who the Court found had a reasonable rate of $155.00 per hour.  The Receiver seeks an hourly rate of $245.00 for Fisher's work, but, I find an hourly rate of $155.00 per hour to be reasonable.

Mara Aranson Geronemus, associate, was admitted to the Florida Bar on February 2, 2006.  She practices in the areas of federal securities fraud litigation and class actions.  Doc. No. 627-3 at 33.  She also handles SEC enforcement matters and internal corporate investigations.  *Id*.  The

-16-

Receiver seeks an hourly rate of $285.00 for Geronemus's work.  I find the reasonable hourly rate for Geronemus to be $125.00 per hour.

Alvin Benton, Jr., associate, was admitted to the Florida Bar on September 26, 2007.  He practices in the areas of bankruptcy, creditor's rights, and commercial litigation.  Doc. No. 627-3 at 27.  He focuses on representing financial institutions and other creditors, including commercial banks, corporations and receivers.  *Id*.  He seeks an hourly rate of $175.00.  Based on Benton's experience, I find the reasonable hourly rate for Benton to be $115.00 per hour.

Amy Rigdon  performed some work as a law clerk, and then became an associate after she was admitted to the Florida Bar in 2008.  She practices in the area of corporate and securities law, including mergers and acquisitions, general corporate law, securities offerings and securities regulation compliance.  Doc. No. 627-3 at 45.  The Receiver seeks $145.00 per hour for Rigdon's work.  Based on Rigdon's experience, a reasonable hourly rate for her work is $100.00 per hour.

### iii.    *Paralegals and Support Personnel.*

Based on the lack of biographical information regarding paralegals and support personnel and the Receiver's ability to hire contract paralegals for $50.00 per hour, the Court previously determined that the proper reimbursement rate for paralegals and support personnel was $50.00.  In the present application, the Receiver included biographical information regarding the qualifications of paralegals and other support staff who performed work for the receivership, including paralegals Melissa Allman, Christine Cronin, Nancy Glenn, Raquel Gross, Delia Hayes, Allison B. Hoagland, Judy Kaplan, LeAnn Kluting, Christine Pratley, Holly M. Regan, Audrey Rowe, Sandra B. Williams, and Sandra Zander.  *See* Doc. No. 627-3 at 41-44.  She seeks hourly rates between $125.00 and $210.00 per hour for the work of these paralegals.

The Receiver has not explained why contract paralegals were not able to perform the work done by H&K's paralegals, for whom she seeks outstandingly higher hourly rates.  Moreover, judges in the Middle District of Florida have generally found that a reasonable rate for a paralegal in the central Florida market is between $75.00 and $95.00.  *Brother*, 2005 WL 1027240, at *6; *Marengo v. 99 Cent Supercenter, LLC*, Case No. 6:05-cv-1792-Orl-18DAB, 2007 WL 2893388, *2 (M.D. Fla. September 05, 2006) ($95.00 per hour for paralegal time approved).  Absent evidence of the need for a paralegal more experienced than could be hired on contract, I find that $50.00 per hour remains the reasonable hourly rate for paralegal work.

The Receiver also asks that the Court establish an hourly rate for Lacey Laudicina and Jennie Lagmay, who worked as docket clerks, and for Margaret Hawkins, H&K's law firm librarian.  Work as a docket clerk is clerical in nature and not compensable. *See, e.g., Reyes v. Falling Star Enterps., Inc.*, No. 6:04-cv-1648-Orl-KRS, 2006 WL 2927553, at * 5 & n.2 (M.D. Fla., Oct. 12, 2006)(finding that electronic filing of documents is clerical work).  A librarian is part of the law firm overhead and, therefore, her work is not separately compensable in a fee petition.  *See, e.g., Lang v. Reedy Creek Improvement Dist.*, No. 94-693CIVORL3ABF(17), 95-956CIVORL3ABF(17), 1997 WL 809200, at * 9 & n.11 (M.D. Fla., Dec. 23, 1997).  Therefore, I find that no hourly rate is reasonable for Laudicina, Lagmay and Hawkins.

2.   <u>Reasonable Number of Hours</u>.

As discussed above, the Receiver seeks reimbursement for 640.25 hours of administrative work, and 207.1 hours of legal work.  Her work is described in invoices 2358377, 2381851 and 2406627.

H&K enlisted the assistance of no less than thirty attorneys in performing work for the Receiver during the time period underlying the present motions. The chart below shows the total hours claimed multiplied by the reasonable hourly rate established above. In the chart, the Roman numerals represent the 5 invoices filed by H&K as follows: I - invoice number 2410181; II - invoice number 2410206; III - invoice number 2410136; IV - invoice number 2409724; and V - invoice number 2358412. "Total Hrs" represents the total hours claimed for that timekeeper. "Rate" represents the reasonable hourly rate as determined above. "Total" denotes the resulting amount for that timekeeper.

| Timekeeper | I | II | III | IV | V | Total Hrs | Rate | Total |
|---|---|---|---|---|---|---|---|---|
| Mercier (administrative work) | | | | | | 640.25 | $200.00 | $128,050.00 |
| Mercier (legal work) | | | | | | 207.1 | $275.00 | $56,952.50 |
| TOTAL Receiver | | | | | | | | $185,002.50 |
| **H&K Partners** | | | | | | | | |
| Brockman | .6 | | | | | .6 | $375.00 | $    225.00 |
| Buhler | .4 | | | | | .4 | $335.00 | $    134.00 |
| Carpenter | .8 | | | | | .8 | $435.00 | $    348.00 |
| Daniel | | | | | 78.3 | 78.3 | $400.00 | $ 31,320.00 |
| Edlein | 23.4 | | | | | 23.4 | $260.00 | $  6,084.00 |
| Herr | 156.9 | 8.5 | | | | 165.4 | $400.00 | $ 66,160.00 |
| Jones | 1.4 | | | | | 1.4 | $390.00 | $    546.00 |
| McAlpin | 17.9 | | | | | 17.9 | $280.00 | $  5,102.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| McCauley | 24.4 | | | | | 24.4 | $440.00 | $ 10,736.00 |
| McDowell | 183.9 | 3.2 | 43.8 | 50.5 | | 281.4 | $350.00 | $ 98,490.00 |
| Neff | 3.5 | | | | | 3.5 | $425.00 | $ 1,487.50 |
| Oberto | 4.2 | | | | | 4.2 | $250.00 | $ 1,050.00 |
| Rollins | .5 | | | | | .5 | $440.00 | $ 220.00 |
| Stutts | 165.2 | | | | | 165.2 | $435.00 | $ 71,862.00 |
| Warren | 70.4 | 5.8 | | | | 76.2 | $200.00 | $ 15,240.00 |
| Zusman | 60.7 | 3.6 | 7.7 | 14.6 | .1 | 86.7 | $450.00 | $ 39,015.00 |
| **Associates** | | | | | | | | |
| Benton | 194.4 | 7.9 | 123.7 | 23.5 | | 349.5 | $115.00 | $ 40,192.50 |
| Boston | 5.6 | | | | | 5.6 | $245.00 | $ 1,372.00 |
| Candes | 145.8 | 19.6 | | | | 165.4 | $155.00 | $ 25,637.00 |
| Eisnaugle | 28.7 | | | | | 28.7 | $175.00 | $ 5,022.50 |
| Fisher | 1.8 | | | | | 1.8 | $155.00 | $ 279.00 |
| Fitzgerald | 213.0 | | 187.9 | 42.5 | | 443.4 | $135.00 | $ 59,859.00 |
| Geronemus | 22.0 | | | | | 22.0 | $125.00 | $ 2,750.00 |
| Gorman | 26.2 | | | | | 26.2 | $175.00 | $ 4,585.00 |
| Graham | 22.5 | | | | | 22.5 | $195.00 | $ 4,387.50 |
| Lannon | 72.6 | | | | | 72.6 | $175.00 | $ 12,705.00 |
| Mockler III[10] | 76.05 | | | | | 76.05 | $185.00 | $ 14,069.25 |
| Rigdon | 57.9 | | | | | 57.9 | $100.00 | $ 5,790.00 |
| Schick | | | | | 34.2 | 34.2 | $135.00 | $ 4,617.00 |

---

[10]  The Receiver indicated that the SEC requested a 50% deduction of Mockler, III's time recorded.  Mocker recorded 152.1 hours, and the amount reflected is 50% of those hours.  Doc. No. 627-21 at 3.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Templeton | 80.2 | 26.0 | | 106.2 | $125.00 | $ | 13,275.00 |
| **Paralegals** | | | | | | | |
| Allman | 298.2 | | | 298.2 | $50.00 | $ | 14,910.00 |
| Cronin | .4 | | .6 | 1.0 | $50.00 | $ | 50.00 |
| Glenn | 1.6 | | | 1.6 | $50.00 | $ | 80.00 |
| Gross | 78.3 | | | 78.3 | $50.00 | $ | 3,915.00 |
| Hayes | 10.4 | | | 10.4 | $50.00 | $ | 520.00 |
| Hoagland | 40.4 | | | 40.4 | $50.00 | $ | 2,020.00 |
| Kaplan | 1.2 | | | 1.2 | $50.00 | $ | 60.00 |
| Kluting | 3.2 | | | 3.2 | $50.00 | $ | 160.00 |
| Pratley | .7 | | | .7 | $50.00 | $ | 35.00 |
| Reagan | .8 | | | .8 | $50.00 | $ | 40.00 |
| Rowe | 2.0 | | | 2.0 | $50.00 | $ | 100.00 |
| Williams | 1.8 | | | 1.8 | $50.00 | $ | 90.00 |
| Zander | 14.2 | | | 14.2 | $50.00 | $ | 710.00 |
| **Staff** | | | | | | | |
| Lagmay | 51.2 | | | 51.2 | $0.00 | $ | 0.00 |
| Laudicina | 3.3 | | | 3.3 | $0.00 | $ | 0.00 |
| Hawkins | .7 | | | .7 | $0.00 | $ | 0.00 |
| **TOTAL H&K** | | | | | | **$ 565,250.25** | |

Because of the voluminous number of invoices, which are not broken down by the subject matter of the work performed, it is not reasonable for the Court to review each time entry to determine whether the time expended was reasonable for the work performed in all 800 pages of time

-21-

records submitted by the Receiver. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (per curiam) (where claimant filed over 400 pages in support of attorney's fee claim, "an hour-by-hour review is simply impractical and a waste of judicial resources"). I will, therefore, analyze the reasonableness of the hours work by the Receiver and her counsel first by property to determine whether the Receiver and her counsel exercised appropriate billing judgment as to the estimated total time expended as compared with the results achieved. *See*, *e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4. To the extent that I identify time that clearly was not reasonable, I will address it specifically.

### a.  Analysis by Property or Project.

I will begin the analysis with properties listed on the Receiver's "Analysis of Certain Property In the Receivership Estate." Doc. No. 627-4.

#### i.  *Texas Property / Isleworth Adult Community Land.*

On February 22, 2007, the Receiver requested that the Court approve the sale of property located in Texas. Doc. No. 236. As a result of the sale of the property, the receivership received $2,288,662.21 after payment of expenses, including appraisal and advertising fees. Doc. Nos. 627-4, 627-25.

The Court denied the Receiver's first motion for approval of the sale of the property because the Receiver failed to meet the statutory requirements for a private sale, and failed to provide any authority permitting the Court to waive those statutory requirements. Doc. No. 238. The receivership should not be charged for errors of the Receiver or her counsel. Therefore, the following time spent on that deficient motion should not be compensated:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 2/21/07 | Fitzgerald | Revise and edit motion to authorize sale of Texas property | 3.5 hours |
| 2/22/07 | McDowell | Review of status of sale of Texas property; prepare Motion for Authority of Sale; review of approval of Texas property | 1.5 hours |
| 2/22/07 | Allman | Update website; assemble exhibits for Motion to Authorize Sale of Texas Property at Reduced Price | 3.9 hours |
| 2/22/07 | Fitzgerald | Finalize motion for sale of Texas property for filing | 3.5 hours |
| 2/23/07 | Fitzgerald | Telephone conference with clerk regarding expedited consideration; receipt and review order on motion to sell Texas property; conference with counsel for Receiver on how to proceed to sell Texas property; legal research regarding 28 U.S.C. 2001 | 1.5 hours |

In accordance with the chart above, 8.5 hours should be deducted from Fitzgerald's time, 1.5 hours should be deducted from McDowell's time and 3.9 hours should be deducted from Allman's time.

According to her time sheets, Mercier performed a minimum[11] of 7.8 hours of legal work regarding this property and 18.7 hours of administrative work, for a total of $5,885.00 in fees.  H&K

---

[11]     The hours spent on each property were calculated by reviewing the time sheets and using only those entries designated as related to the particular matter specifically or easily identified as belonging to one property or project.  This calculation necessarily under-includes time worked but not specifically designated for this property.  If a time entry included more than one item without specifying which task it was for, the total time was divided by the number of tasks.

performed at least 55.8 hours[12] of legal work and incurred $9,358.00 in fees for its work on this property.

ii.      *Turtle Cove Land / Polk County Property*.

The Receiver auctioned three to four acres of unimproved land owned by Relief Defendant Sunset Bay Club, Inc. in Polk County, Florida. *See* Doc. Nos. 175 ¶¶ 6-7, 223, 235, 241. Originally, the Receiver indicated that a fair market value of the property was $308,800.00, and the Court set that amount as a minimum bid. Doc. Nos. 201, 205. At the auction of the property, however, the highest bid was $260,000.00 plus a buyer's premium/auction commission of $26,000.00 for a total sales price of $286,000.00. After closing costs and sales commissions, the receivership received $245,596.49 from the sale. Doc. Nos. 627-1 ¶ 22, 627-4, 627-25 at 5.[13] According to her time sheets, Mercier performed 9.9 hours of administrative work, for a total of $1,980.00 in fees. H&K performed 57.5 hours of legal work and incurred $11,485.50 in fees for their work on this property.[14]

---

[12]      This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Charles Stutts 1.1 hours, Brian McDowell 12.3 hours, Edward Fitzgerald 26.3 hours, Kathryn Oberto .2 hours, Leslie Candes .9 hours, Alvin Benton 1.3 hours, Melissa Allman 13.7 hours.

[13]      The Receiver requested that the Court approve this sale, and she represented that the receivership would net $255,340.65 as a result of this sale. Doc. No. 223 ¶ 17. In the present motion, the Receiver does not account in her motion for the approximately $10,000.00 discrepancy in net proceeds.

[14]      This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Edward Fitzgerald 28.2 hours, Brian McDowell 10.8 hours, Charles Stutts .8 hour, Mitchell Herr 6.2 hours, Kathryn Oberto 1.9 hours, Leslie Candes 1.1 hours, Melissa Allman 8.5 hours.

### iii.     North Georgia Properties.

Mercier requested that the Court approve the sale of the receivership's 50% interest in North Georgia Properties LLC.  Doc. No. 311.  She represented that the net proceeds from the sale would be $56,059.00.  Doc. No. 330 at 4. When the sale did not promptly occur, Branch Banking and Trust Company (BB&T), which held a mortgage on the property, requested leave to foreclose on the property because the 2007 property taxes had not been paid and the Receiver had not made any effort to market the property.  Doc. No. 368. Ultimately, the Court approved the foreclosure sale, which resulted in a excess proceeds of $188,807.68.  The disposition of those excess proceeds were decided in an interpleader action filed by BB&T in Georgia.  Doc. Nos. 487, 503.  The Georgia court awarded the receivership $78,506.23.  Doc. Nos. 627-1 ¶ 24, 627-25 at 6.

According to her time sheets, the Receiver performed 14.3 hours of legal work regarding this property and 34.8 hours of administrative work, for a total of $10,892.50 in fees.  H&K performed 133.05 hours of legal work and incurred $44,656.00 in fees for their work on this property.[15]  The fees for the Receiver and her counsel total $55,548.50, resulting in a net benefit to the estate of approximately $22,957.73, if all fees are paid at a reasonable hourly rate.

### iv.     Sunset Bay Units 202, 902.

The receivership included two units of the Sunset Bay Club in New Port Richie, Florida.  The record reflects that the receivership collected $47,969.50 from rental of these properties and

---

[15]     This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Charles Stutts 49.4 hours, Susan Edlein 4.1 hours, Mitchell Herr 29.65 hours, Brian McDowell 16.4 hours, Stephen Warren .7 hours, Alvin Benton 20.4 hours, Samuel Zusman 3.0 hours, James Rollins .5 hours, Melissa Allman 6.4 hours, Delia Hayes 2.5 hours.

$12,357.96 in rent profit distribution as to the two units titled to Kirkland.  To recover this $12,357.96, the receivership expended $21,477.28 in operating expenses.  Doc. No. 627-25 at 5, 11; *see also* Doc. No. 577 at 2. The Receiver ultimately sold the units, and the receivership received $56,115.01 from the sale.  Doc. No. 649 at 2.

According to her time sheets, the Receiver performed 2.6 hours of legal work regarding this property and 23.9 hours of administrative work, for a total of $5,495.00 in fees.  H&K performed 106.8 hours of legal work and incurred $14,190.50 in fees for their work on this property.[16]   Thus, the fees for Receiver and her counsel for this property total $19,685.50.   The net benefit to the estate was $34,637.73 ($56,115.01 received from the sale - $21,477.28 operating expenses) before payment of the fees and expenses of the Receiver and her counsel.

> *v.*     *Kirkland's Isleworth Home.*

Kirkland owned a home in the Isleworth subdivision in Orlando, Florida.  The Court expanded the receivership to include this property.  Kirkland was uncooperative with the efforts to sell the home.  Doc. Nos. 135, 139, 153 at 2, 289, 292. The house was ultimately sold for $5,050,000.00, and the receivership received $1,124,964.52 from the sale.  Doc. Nos. 625 at 5-6, 626 at 6-7, 627-1 ¶ 18, 627-25 at 6.  In addition, the Receiver paid $515,992.05 in mortgage payments for the home, $3,000.00 for appraisals of the home, $459.00 for legal advertising of the home, and $2,866.05 on maintenance of the home, for a total of $522,317.10 in expenses.  Doc. No. 627-25 at

---

[16]   This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Wiley Boston 6.3 hours, Charles Stutts 3.4 hours, Robert McCauley 2.1 hours, Brian McDowell 2.6 hours, Samuel Zusman .9 hours, Andrew Lannon .2 hours, Kathryn Oberto .6 hours, Leslie Candes 43.8 hours, Alvin Benton 17.0 hours.

7-9. Therefore, the net value to the receivership of this property, before payment of the Receiver and H&K's fees and expenses, was $602,647.42.

According to her time sheets, the Receiver performed 84.7 hours of legal work regarding this property and 77.3 hours of administrative work, for a total of $38,752.50 in fees.  H&K performed 367.60 hours of legal work and incurred $63,501.25 in fees for their work on this property.[17]  Thus, the fees for Receiver and her counsel for this property totaled $102,253.75.

*vi.*     *Coachman's House - Scotland.*

The Court entered an order on April 13, 2006, expanding the receivership to include real property in Dollarbeg, Scotland, consisting of a house and adjacent grounds (the "Coachman's House").  The Court authorized the Receiver to sell the property.  Doc. No. 78.  Before the sale could occur, the Receiver learned from counsel in Scotland that Kirkland would have to execute a durable power of attorney allowing her to sell the property.  Doc. No. 115.  The Receiver moved to have the Court order Kirkland to sign this document.  Doc. Nos. 152, 179.  On February 28, 2007, the Court granted the request in part, but found that the proposed durable power of attorney submitted was not proper because it was revocable at any time by Kirkland, there was no indication that the form of the document conformed with the requirements of Scottish law, and because it allowed the sale of the property during the pendency of an appeal.  Doc. Nos. 221, 240.  On April 25, 2007, the Receiver

---

[17]     This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Andrew Lannon 14.7 hours; Charles Stutts 12.05 hours, Brian McDowell 37.7 hours, Samuel Zusman 27.45 hours, Edward Fitzgerald 18.5 hours, Leslie Candes 67.3 hours, Kathryn Oberto .6 hours, Amy Rigdon 51.3 hours, Mitchell Herr 8.8 hours, Mara Aranson Geronemas 19.0 hours, Richard Mockler III .9 hours, Alvin Benton 13.3 hours, Robert McCauley 1.3 hours, Guy Neff 3.5 hours, Melissa Allman 32.9 hours, Jennie Lagmay 45.8 hours, Sandra Zander .6 hours, Raquel Gross 12.1 hours.

submitted a revised power of attorney.  Doc. No. 270.  Kirkland objected that the power of attorney

required him to indemnify the Receiver.  The Court sustained the objection because the Receiver

failed to provide any authority supporting that provision.  Doc. Nos. 277, 346.

As discussed above, the receivership should not be charged with fees for deficient work by

the Receiver and her counsel.  Therefore, the following work is not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 6/1/06 | Lannon | Finish drafting Receiver's Motion for Approval to sell the Isleworth home at a listing price of $6.3 Million, **to have Kirkland execute a power of Attorney with respect to the Coachman's house**, and to have Kirkland turn over custody of the 2005 Harley Davidson Motorcycle to the Receiver | .9 hours (2.8 hours total) |
| 6/6/06 | Zusman | Read Receiver's Motion for Power of Attorney re Coachman's House and for possession of motorcycle | .1 hours |
| 6/6/06 | Lannon | Research all federal case law on instances where a court has ordered that a defendant execute a power of attorney in favor of a Receiver | 3.5 hours |
| 6/21/06 | Mercier (admin) | Telephone conference with Scottish counsel re status of motion to compel Kirkland to execute power of attorney and options if order not granted | .6 hours |
| 10/11/06 | Mercier (legal) | Further preparation of other motions to be filed regarding auction sale, Scotland property and September Blue account | .3 hours (1.0 hour total) |
| 10/17/06 | Mercier (admin) | Review status of various motions to be filed re Scotland property, September Blue account and Pembrooke property | .25 hours (.8 hours total) |
| 10/27/06 | Mercier (legal) | Further preparation of renewed motion re request for Kirkland to sign power of attorney re Scottish castle | 1.5 hours |

| 10/30/06 | Zusman | Read Mercier motion regarding obtaining power of attorney for property in Scotland and conference with B. McDowell regarding Fed.R.Civ.P 10 | .3 hours |
| 4/25/07 | Mercier (admin) | Preparation of notice of filing revised power of attorney | .1 hours |

In accordance with the chart above, 4.4 hours should be deducted from Lannon's time, .4 hours should be deducted from Zusman's time, .95 hours should be deducted from the Receiver's administrative time, and 1.8 hours should be deducted from the Receiver's legal time.

Ultimately, the Court compelled Kirkland to sign a power of attorney. Thereafter, the Coachman's House was sold for $546,293.56[18] "after sales commissions and other expenses." Doc. No. 625 at 6-7; Doc. No. 626 at 8; Doc. No. 627-1 ¶ 19; Doc. No. 627-25 at 6. While the house was held by the receivership, the Receiver paid $271,805.06 in mortgage payments, Doc. No. 627-25 at 6-9, $7,018.44 in taxes, and $8,085.37 for landscape maintenance and gate repair. Doc. No. 627-25 at 9-10. The Receiver hired counsel in Scotland to assist with the issues regarding the sale of the property, and the Court authorized payments to them in the amount of $39,582.12 Doc. No. 421; Doc. No. 627-5 at 9, as well as an additional $1,329.60 to an expert on reasonable fees for legal work in Scotland. Doc. No. 641. Therefore, the receivership netted $218,473.00, before payment of the Receiver and H&K's fees.[19]

---

[18]     The "Analysis of Certain Property in the Receivership Estate" indicates a "net value" of $587,534.40, which contradicts this amount. Doc. No. 627-4.

[19]     This amount is calculated as follows: $546,293.56 net sales price - $271,805.06 mortgage payments - $7,018.44 taxes - $8,085.37 maintenance - $39,582.12 Scottish counsel fees - $1,329.00 Scottish expert fees.

According to her time sheets, the Receiver performed 24.9 hours of legal work regarding this property and 44.9 hours of administrative work, for a total of $15,827.50 in fees. H&K performed 27.5 hours of legal work and incurred $4,532.50 in fees for their work on this property.[20]

### vii.    *Candacraig Home in Alpharetta, Georgia.*

The Receiver requested permission of the Court to include in the receivership the CandaCraig home in Alpharetta, Georgia, which was occupied by Laurel Wood, Kirkland's former wife. Doc. No. 42. The Court ordered that Kirkland's interest in the Alpharetta home would be included in the receivership, but required that the Receiver renew her motion regarding Wood's interest in the home because Wood had not been served with the motion and did not have an opportunity to respond. Doc. Nos. 108, 109, 163 ¶ 13. The Receiver filed her renewed motion to expand the receivership to include Wood's interest in the Alpharetta home on September 7, 2006. Doc. No. 163, but it was denied because the Receiver failed to show that the Court could exercise jurisdiction over Wood or her interest in the Alpharetta home. Doc. No. 196.

The receivership should not be charged with time preparing these deficient motions. Therefore, the following work is not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|--------------|-------|
| 6/12/06 | Fitzgerald | Conference with C. Stutts regarding status of Alpharetta home; review hearing transcript from May 22, 2006; edit motion to include Laurel Wood's share of Alpharetta home in estate | 2.5 hours |

---

[20]    This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Edward Fitzgerald 1.2 hours, Charles Stutts .3 hours, Andrew Lannon .8 hours, Samuel Zusman 4.2 hours, Mitchell Herr .3 hours, Brian McDowell 4.7 hours, Alvin Benton 6.0 hours.

| 6/27/06 | Fitzgerald | **Review supplemental memorandum regarding Alpharetta home directed to Laurel Wood**; review letter regarding condition of Coachman house | .2 hours (.4 hours total) |
| 9/5/06 | Stutts | E-mail messages regarding service of process upon Laurel Wood; e-mail message from Receiver regarding Renewed Motion; review same and reply to Receiver | .6 hours |

In accordance with the chart above, 2.7 hours should be deducted from Fitzgerald's time and .6 hours should be deducted from Stutts' time.

On January 9, 2007, the Receiver filed an emergency motion to approve the sale of the Alpharetta home because the IRS had filed a tax lien against the property. Doc. No. 212 ¶ 11. The Court authorized the sale of the property but ordered the Receiver to hold Kirkland's portion of the proceeds in escrow until further Court order. Doc. No. 216. Ultimately, the Receiver and the IRS entered into a settlement of the tax lien, as a result of which the receivership received $283,655.77. Doc. No. 627-25 at 6.

According to her time sheets, and after deducting the time related to the dispute with Laurel Wood noted above, the Receiver performed 11.9 hours of legal work regarding this property and 9.2 hours of administrative work, for a total of $5,112.50 in fees. H&K performed 240.50 hours of legal work and incurred $52,217.00 in fees for their work on this property.[21]

---

[21]     This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Edward Fitzgerald 67.5 hours, Samuel Zusman 8.5 hours, Andrew Lannon 6.4 hours, Charles Stutts 24.4 hours, Brian McDowell 55.7 hours, Susan Edlein 3.8 hours, Heather Gorman 10.3 hours, Leslie Candes .8 hours, Alvin Benton 22.4 hours, Mitchell Herr 1.5 hours, Melissa Allman 36.2 hours, Lee Ann Kluting 3.0 hours. This time includes billings dealing with Laurel Wood in invoices 2410181 and 2410206 since the Receiver represents that time spent pursuing the separate action against Wood was recorded separately in invoices 24101369 and 2409724.

*viii.*    *Motorcycle.*

The Receiver sold a 2005 Harley Davidson motorcycle for $16,500.00. Doc. Nos. 593, 604. The Receiver spent $2,662.50 on storage for the motorcycle. Doc. No. 627-25 at 12. Therefore, the net value to the receivership before payment of fees and costs was $13,837.50.

According to her time sheets, the Receiver performed .4 hours of legal work regarding this asset and 5.1 hours of administrative work, for a total of $1,130.00 in fees. H&K, through five attorneys in addition to the Receiver, performed 37.0 hours of legal work and seek $4,541.00 in fees for their work regarding the motorcycle.[22]   Thus, the fees for the Receiver and her counsel for the motorcycle total $5,671.00, which is approximately 41% of the value of the motorcycle to the receivership.   Again, the use of Receiver's legal time and the time of five additional attorneys is unreasonable in light of the task at hand, selling a motorcycle.

* * * *

The following properties or projects are not included in the Receiver's "Analysis of Certain Property In the Receivership Estate." Doc. No. 627-4.

*i*    *Pembrooke Townhouses.*

As discussed in part III. A. above, the receivership spent $25,817.41 in net expenses to carry this property until the Receiver elected to abandon it. Doc. No. 627-25 at 5-6, 8, 11.

According to her time sheets, the Receiver performed 2.6 hours of legal work regarding this property and 15.1 hours of administrative work, for a total of $3,735.00 in fees.   H&K performed

---

[22]     This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Andrew Lannon .8 hours, Brian McDowell .3 hours, Alvin Benton 23.3 hours, Samuel Zusman 1.6 hours, Leslie Candes 3.3 hours, Raquel Gross 7.7 hours.

11.3 hours of legal work and incurred $1,914.50 in fees for their work on this property.[23] Thus, the

fees for Receiver and her counsel for this property total $5,649.50, which, if paid, increase the net

loss to the receivership to $31,466.91.

ii.      *Summerhill Units.*

As discussed in part III.A. above, by making the decision to sell the Summerhill Property

rather than abandon it, the receivership suffered a loss of $304,585.71,[24] before payment of the

Receiver and H&K's fees and costs.

According to her time sheets, the Receiver performed 16.4 hours of administrative work, for

a total of $3,280.00 in fees.  H&K performed 53.45 hours of legal work and incurred $17,670.75 in

fees for their work on this property.[25]

The Receiver did not have an evidentiary basis to support her opposition to Austell Road's

motion for payment of the *pro rata* share of the *ad valorem* taxes, based on the testimony of the

lawyer who drafted the order that he intended the language "free and clear of liens" to obligate the

---

[23]      This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Samuel Zusman .1 hour, Susan Edlein 5.1 hours, Charles Stutts .1 hour, Andrew Lannon 1.6 hours, Melissa Allman 4.4 hours.

[24]      This amount is calculated as follows: $87,609.70 interest on the loan + $100,000.00 attorney's fees to bank lawyers + $57,560.00 auctioneer fees and costs + $41,257.61 *ad valorem* taxes + $13,400.60 insurance + $4,757.80 to "ThyssenKrup Elevator," *see* Doc. No. 627-25 at 8, 12.

[25]      This amount includes the following hours by timekeepers multiplied by their reasonable hourly rate, found above: Charles Stutts 22.95 hours, Brian McDowell 2.4 hours, Susan Edlein .5 hours, Samuel Zusman .6 hours, Robert McCauley 7.2 hours, Alvin Benton 2.1 hours, Mitchell Herr 4.3 hours, Raymond Carpenter .8 hours, David Jones 1.0 hour, Melissa Allman 4.9 hours, Allison Hoagland 6.6 hours.

estate to pay liens on the property before the transfer.  Therefore, the Receiver's opposition to

Austell Road's motion was not reasonable, and the following work is, therefore, not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|---|---|---|---|
| 5/26/08 | Benton | Continue researching case law and drafting memorandum regarding overview of receivership rights, responsibilities and payment of taxes | 2.1 hours |
| 6/5/08 | Carpenter | Telephone conference with Jones regarding application of O.G.C.A. section 48-2-56 to facts of pending litigation.  Discuss alternatives and practical applications | .8 hours |
| 9/9/08 | Mercier (admin) | Review R&R re Austell Road Holding motion to disburse funds | .1 hours |
| 9/9/08 | Stutts | Review R&R of Magistrate Spaulding regarding Austell Road motion for payment of taxes; telephone conference with M. Herr regarding same; consider matters for potential objection | 1.0 hours |
| 9/9/08 | Herr | Discuss fee and Austell rulings with C. Stutts | .3 hours |
| 9/10/08 | Mercier (admin) | conference with counsel re R&R on Austell's motion and strategy and options re same | .3 hours |
| 9/10/08 | Stutts | Email messages from D. Jones regarding potential response to R&R; email from Receiver regarding her decision not to object | .3 hours |
| 9/10/08 | Jones | Receive and review 9/9/08 Report and Recommendation on Austell's Motion to Enforce Order and Require Disbursement of Receivership Funds, and prepare e-mail to Judy Mercier re: same (.7); conference with Judy Mercier re: same (.3) | 1.0 hours |
| 9/29/08 | Stutts | Review Court's Order on Austell Road Holdings matter | .3 hours |

In accordance with the chart above, 1.6 hours should be deducted from Stutts' time, 2.1 hours should

be deducted from Benton's time, .4 hours should be deducted from the Receiver's administrative

time, 1.0 hour should be deducted from Jones' time, .3 hours should be deducted from Herr's time and .8 hours should be deducted from Carpenter's time.

With respect to fees related to the motions for approval of payment of the auctioneer's fees and expenses, Doc. Nos. 596 and 597, the original motion filed on October 1, 2008, consisted of only four pages with no supporting memorandum of law. The motion was denied for failure to comply with Local Rule 3.01(g). Because the Receiver's motion was insufficient, the following work was not reasonable:

| Date | Timekeeper | Billing Entry | Hours |
|---|---|---|---|
| 6/27/08 | Contract paralegal | Pull information pertaining to the terms of the Auction and the Auctioneer's Agreement for the Summerhill property | .9 hours |
| 9/22/08 | Mercier (admin) | Conference with Ewald Auctioneers re motion for approval to pay auctioneer (.1); review documents to sent to counsel in connection with preparation of motion(.2) | .3 hours |
| 9/22/08 | Herr | Review R&R and Court order re fees and confer with Receiver re handling of future fee petitions, **discuss with Receiver fee petition for auctioneer Ewald; outline fee petition for Ewald to A. Hoagland** | 1.9 hours (2.8 hours total) |
| 9/22/08 | Hoagland | Research facts and draft motion for receiver to pay auctioneer re: sale of Summerhill property | 2.9 hours |
| 9/22/08 | Zusman | Admin: conference with Receiver regarding procedure to paying [sic] auctioneer regarding Summerhill; exchange e-mails with M. Herr regarding same | .3 hours |
| 9/23/08 | Herr | Review and revise draft motion to pay auctioneer Ewald's fees and expenses; review and revise draft Ewald declaration | 1.5 hours |
| 9/23/08 | Hoagland | Make revisions to draft motion to pay auctioneer re sale of Summerhill property | 1.8 hours |

| 9/29/08 | Hoagland | Revise motion to pay auctioneer re: sale of Summerhill property | .8 hours |
|---------|----------|------------------------------------------------------------------|----------|
| 9/30/08 | Hoagland | Review and revise motion for leave to pay auctioneer for sale of Summerhill property | .4 hours |
| 10/1/08 | Herr | Review and finalize motion for approval of auctioneer Ewald's fees and expenses | .6 hours |
| 10/1/08 | Hoagland | Revise motion seeking payment for auctioneer re: sale of Summerhill property | .8 hours |

In accordance with the chart above, .9 hours should be deducted from the contract paralegal's time, .3 hours should be deducted from the Receiver's administrative time, 4.0 hours should be deducted from Herr's time, 6.7 hours should be deducted from Hoagland's time and .3 hours should be deducted from Zusman's time. Thus, the fees for Receiver and her counsel for this property after the reductions recommended above total $16,900.25.

<em>iii.    Action against Laurel Wood.</em>

As discussed in part III. A. above, the receivership also paid $1,183.75 in costs to file a separate action against Laurel Wood. As of the writing of this Report and Recommendation, the Receiver has not recovered any monies as a result of this litigation. Doc. No. 649 at 4.

According to her time sheets, the Receiver performed 18 hours of legal work on this claim and 63.4 hours of administrative work, for a total of $17,630.00 in fees. According to invoice 2410136, H&K performed 360.7 hours of legal work and incurred $58,417.00 in fees for their work on the action against Laurel Wood. According to invoice 2409724, H&K performed 131.10 hours of legal work and incurred $32,685.00 in fees for their work on this action. Therefore, the Receiver and her counsel seek a total of $108,737.00 in fees for this work. If no money is collected, this

separate litigation resulted in a loss to the receivership of $109,915.75, if the fees sought by the

Receiver and her counsel are paid in full at the reasonable hourly rate found by the Court.

<em>iv.      Pelican Bay.</em>

As discussed in part III. A. above, by failing to make a more timely decision to abandon the

Pelican Bay Project, and as a result of the conflict of interest issues that arose among the Receiver,

H&K and BPNA, the receivership suffered a loss of $547,946.56.

The Receiver and H&K represent that they are not seeking fees for work related to Pelican

Bay in the present motions.  Doc. Nos. 625 at 2, 626 at 2-3, 627-1 ¶ 44.  The invoices contain the

following entries for work related to Pelican Bay, however, for which fees should be denied:

| Date | Timekeeper | Billing Entry | Hours |
|---|---|---|---|
| 2/27/07 | Mercier (admin) | Review information re offer on Pelican Bay | .2 hours |
| 9/14/07 | Allman | Review files for information regarding sale of [T]exas and pelican bay for use by attorneys | .4 hours |
| 10/24/07 | Herr | Consideration of potential conflict issues with J. Mercier and C. Stutts; consideration of R. 11 sanctions against Watermark | .6 hours |
| 2/08/08 | Mercier (admin) | Telephone conference with counsel for SEC re response to order to show cause re removal of Receiver | .1 hours |
| 2/09/09 | Templeton | **Continue preparing spreadsheet with information from Lisa Bakker's invoices; revise Lisa Bakker's invoices to take out time related to Pelican Bay, show cause order,** and time related to fee applications | 4.0 hours (5.1 hours total) |
| 2/10/09 | Templeton | **Confer with L. Bakker re: invoices; revise Lisa Bakker's invoices to take out time related to Pelican Bay, show cause order,** and time related to fee applications; input information re: same into spreadsheet | 1.3 hours (2.6 hours total) |

-37-

| 3/17/09 | Templeton | **Review bills to determine percentage of Pelican Bay fees to the total fees; adjust costs for costs related to show cause order;** confer with J. Mercier; confer with T. Berger | 2.4 hours (4.8 hours total) |
| 3/30/09 | Candes | Review correspondence from Carolyn Hall regarding Pelican Bay escrow deposit; correspondence with Receiver regarding contacting attorney for Banco Popular regarding Pelican Bay escrow deposit; correspondence with Lisa Bakker regarding amounts due to association | .3 hours |

In accordance with the chart above, .3 hours should be deducted from the Receiver's administrative time, .6 hours should be deducted from Herr's time, 7.7 hours should be deducted from Templeton's time, .3 hours should be deducted from Candes's time and .4 hours should be deducted from Allman's time.

**b.      Issues Independent of Project or Property.**

*i.        Receiver's and H&K's Fee Petitions.*

On September 29, 2006, the Receiver filed her first application for interim recovery of her own fees and costs as well as those of H&K. Doc. No. 169. The Court denied the application after noting a number of deficiencies in the motion, including that the Receiver requested almost $600,000.00 in fees and costs even though she acknowledged that this amount exceeded the receivership's assets. Doc. No. 211, 226. The Court ordered that future requests for fees and costs not include any time spent on the first application because the request was facially deficient. Doc. No. 226.

In the present motion, the following work of a contract paralegal is included in invoice number 2410181, as follows:   September 13, 2006 for 6.0 hours[26], September 14, 2006 for 4.0 hours,  September 19, 2006 for 2.0 hours,  September 20, 2006 for 2.0 hours,  September 21, 2006 for .3 hours,  September 26, 2006 for 2.0 hours,  September 27, 2006 for 2.0 hours,  September 28, 2006 for 1.0 hour, October 3, 2006 for 2.0 hours,  October 4, 2006 for 1.0 hour, and October 5, 2006 for 2.0 hours.  Doc. Nos. 627-18 at 32, 627-19 at 2-4, 5-6.   By the date of the work and the description of the tasks performed, it is evident that this work related to preparation of the original fee motion. Per the Court's order, this work is not compensable, and 24.3 hours should deducted from the contract paralegal time.

On September 28, 2007, the Receiver filed renewed motions for fees and costs for herself and her counsel. Doc. Nos. 348, 353.  On December 18, 2007, the Receiver requested immediate, provisional and partial distribution of these fees. Doc. No. 391.  That request was denied because the delay in compensation was due to the Receiver's deficient first request for fees and costs. Doc. No. 393. Because the motion was not supported by the facts of record, the time worked to prepare it is unreasonable.  The time entries related to this motion are as follows:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 12/13/07 | Herr | Extensive telephone conversation with Receiver and B. McDowell re strategy, including request for immediate distribution and status conference on other issues | .8 hours |

---

[26]     These hours are conservative estimates of the time expended since the timekeeper did not separate her time by task performed.

| 12/13/07 | Fitzgerald | Conference with receiver and counsel regarding ability of receiver to go forward absent a fee payment; prepare draft motion for interim fee payment | 4.7 hours |
| 12/14/07 | Fitzgerald | Legal research regarding fee application | 3.0 hours |
| 12/17/07 | Fitzgerald | Supplemental legal research regarding interim payment of fees; revise motion for interim disbursement | 3.5 hours |
| 12/18/07 | Herr | Review and revise motion for immediate partial distribution | .5 hours |

In accordance with the chart above, 11.2 hours should be deducted from Fitzgerald's time and 1.3 hours should be deducted from Herr's time.

*ii.    Appellate work.*

Kirkland filed multiple appeals through the course of this case. Doc. Nos. 127, 362, 477, 575. The Eleventh Circuit dismissed all of Kirkland's appeals. Doc. Nos. 285, 358, 554, 573, 598. The Receiver states that she consulted with H&K regarding the appeals and filed appellate briefs on issues involving the receivership. Doc. No. 627-1 ¶ 25. She represents that she coordinated with the SEC to ensure that the Receiver and her counsel were only addressing matters related to the receivership. *Id.* She did not, however, provide the Court with the appellate briefs she filed, which would be helpful in determining the extent to which the Receiver's work advanced the cause and addressed matters uniquely within her knowledge.

Because the role of a Receiver is to marshal assets to obtain monies for the victims of the underlying fraud, it is appropriate to allow the SEC to handle legal matters unless assistance is

specifically requested as to matters uniquely within the Receiver and her counsel's knowledge.[27]

*SEC v. Digges*, No. 6:06cv137-Orl-31KRS, 2007 WL 4896263, at *11 (M.D. Fla. Nov. 16, 2007), *approved in relevant part*, 2008 WL 113845 (M.D. Fla. Jan. 8, 2008).

It appears that the first issue on appeal was the "jurisdiction of the district court to supervise and approve administration of receivership notwithstanding [pendency] of appeal of preliminary injunction." Doc. No. 627-17 at 35.  This legal issue is one that could have been addressed by the SEC without briefing by the Receiver.  Another issue was the "discretion of the district court to allow sale of assets before judgment when necessary to preserve overall value of estate." *Id.* at 41. The Receiver may have been able to provide to the SEC factual support of the need to sell assets to preserve the value of the receivership, but the legal question presented is one that could have been addressed by the SEC without additional briefing by the Receiver.

For these reasons, I recommend that the Court find that the appellate work performed by the Receiver and her counsel unnecessarily duplicated the work that should have been done by the SEC. Therefore, I recommend that the Court award no fees for this work.  This would result in a reduction of  10.3 hours of the Receiver's legal time, 8.9 hours of the Receiver's administrative time, 78.3 hours of Daniel's time, 34.2 hours of Schick's time, and .1 hours of Zusman's time as reflected in invoices 2358377,  2381851 and 2358412.

---

[27]      Receiver's counsel apparently recognized that the Receiver might be seen as inserting herself into legal disputes that did not require her input.  *See* Doc. No. 627-1 at 42 (counsel researched the standing of the Receiver in preparation for an oral argument).

iii.     *Non-Compensable Work.*

In H&K's billing records, there were several instances where attorneys performed clerical or administrative tasks.  Work that is purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents is not compensable. *See, e.g., Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney. Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses.") (internal quotations omitted)*; Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. at 288 n.10 ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Therefore, the following work is not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 9/18/06 | Edlein | Attend to numerous issues regarding scheduling of Laurel Wood deposition | .5 hours |
| 4/11/07 | Oberto | Prepare wire transfer to lender as to deposit | .3 hours |
| 4/17/07 | Brockman | Wire transfer (Senior Adult Living) | .2 hours |
| 11/21/07 | Benton | Reviewing boxed documents and **organizing files (bates labels)** determining fraudulent transfers of Laurel Wood (Laurel Wood matter) | 1.0 hour (2.5 hours total) |
| 12/17/07 | Benton | **Copying records of Laurel Wood transfers from Kirkland account handbook**; reviewing files for preparation of amending Complaint against Laurel Wood (Laurel Wood matter) | .3 hours (.6 hours total) |
| 5/14/08 | Neff | Sending wire transfers (correcting account numbers) | .5 hours |
| 2/26/09 | Brockman | Wire transfer of escrowed funds | .2 hours |

In accordance with the chart above, .5 hours should be deducted from Edlein's time, .3 hours should be deducted from Oberto's time, .4 hours should be deducted from Brockman's time, 1.3 hours should be deducted from Benton's time and .5 should be deducted from Neff's time.

The time sheets reveal work performed by Attorneys Herr and Stutts, H&K partners, to provide guidance to the Receiver and Brian McDowell, an H&K partner who was lead counsel for the Receiver.  Herr was formerly an attorney with the SEC, and Stutts previously worked as a receiver in various matters.  Doc. Nos. 550 at 9-10, 627-3 at 10.  The Receiver and McDowell, as well as counsel for SEC, sought guidance from Herr and Stutts regarding strategy issues, and Herr and Stutts acted as liaisons between the SEC and the Receiver. Although their guidance likely was helpful to Mercier and her attorney, the education of individuals who Herr represented to the SEC were competent to perform the work of the receivership is not properly charged to the receivership. Doc. Nos. 6 at 2-3, 6-1 at 1-3.  This work, set forth below, is therefore not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 6/5/06 | Herr | Extensive telephone conferences with J. Mercier and B. McDowell | .7 hours |
| 6/6/06 | Stutts | **Telephone conference with Receiver and SEC regarding scheduling of depositions and additional discovery; discuss work plan; telephone conference with Brian McDowell regarding GT audit;** telephone conference with Tom Brennan regarding sale to Austell Road Holding; e-mail messages to and from Jay Strongwater regarding same; review Receiver's motion to compel Kirkland's cooperation; e-mail regarding same; prepare motion and order approving sale of Summerhill property to Austell | 1.0 hours (2.5 hours total) |

| 6/15/06 | Stutts | **Lengthy telephone conference with Brian McDowell to develop strategy on multiple legal and receivership issues;** telephone conference with James Connelly regarding Summerhill; finalize motion and order; file same; work on motion regarding CandaCraig home | 1.0 hours (2.5 hours total) |
|---------|--------|---------|---------|
| 6/22/06 | Stutts | Telephone conference with Receiver regarding outstanding issues; e-mail and call to Bob Levenson and SEC regarding Certificate of Interested Person and research memoranda; telephone conference with Receiver and Brian to coordinate action on multiple issues; e-mail and letter to Kirkland counsel regarding Isleworth House | 1.3 hours |
| 7/21/06 | Stutts | Finalize edits to Receiver's report; forward to Receiver; work on telephone lines on Summerhill property; telephone conference with Receiver regarding Notice of Hearing by Magistrate; telephone conference with Receiver regarding effect of Kirkland's appeal | 1.0 hours (1.9 total hours) |
| 7/24/06 | Herr | Review of recent filings and telephone conference with J. Mercier re upcoming hearing | .7 hours |
| 9/15/06 | Stutts | Telephone conference with Receiver regarding video conferencing for Laurel Wood deposition | .3 hours |
| 10/17/06 | Stutts | Review Motion for Contempt filed by Laurel Wood; e-mail to Receiver regarding same; review and reply to e-mail message from Receiver regarding suit by Ardaman & Associates | 1.3 hours |
| 4/17/07 | Stutts | Telephone conference with Bob Levinson [sic] at SEC regarding hearing on Kirkland's emergency motion tomorrow; telephone conference with Brian McDowell regarding same | .5 hours |
| 6/26/07 | Stutts | Telephone conference with Receiver regarding Securities Purchase Agreement and proposed Motion for Approval; telephone conference with Bob Levinson [sic] of SEC regarding upcoming hearing on sale of Isleworth home | .5 hours |

| | | | |
|---|---|---|---|
| 6/28/07 | Stutts | **Telephone conference with Receiver regarding sale of Isleworth home; coordinate telephone conference with SEC regarding same;** telephone conference with J. Martino regarding Securities Purchase Agreement; FedEx signed original to D. Miles | .4 hours (.8 hours total) |
| 7/9/07 | Stutts | Telephone conference with Receiver to discuss argument and authorities in support of her motion to sell Isleworth home; address Kirkland's opposition; telephone conference with Bob Levinson [sic] of SEC regarding same; forward research findings to Levinson | 1.3 hours |
| 8/7/07 | Herr | Review motion to abandon N. Georgia properties and Kirkland's opposition thereto; discuss same with C. Stutts and consider potential reply | 1.3 hours |
| 10/26/07 | Herr | Consult with Receiver re personal jurisdiction over Kirkland's ex wife in FL and related issues | .7 hours |
| 10/29/07 | Herr | Review and comment on draft complaint against L. Woods | .8 hours |
| 12/11/07 | Herr | Confer with Receiver and B. McDowell re various issues, including claims process and need to confer with SEC | .4 hours |
| 12/12/07 | Herr | Confer with SEC counsel R. Levenson re strategy and report to team | .3 hours |
| 3/7/08 | Herr | Confer with J. Mercier re settlement conference | .4 hours |
| 8/1/08 | Herr | Raise FDIC issue with Receiver | .3 hours |
| 5/28/09 | Herr | Confer with R. Levenson re SEC position on fee petition; confer with other Receivers re SEC position re fees for preparing fee petitions | .6 hours |
| 5/29/09 | Herr | Confer with J. Mercier re SEC support for fee petition | .3 hours |
| 6/1/09 | Herr | Meet with R. Levenson re SEC support for fee petition; discuss same with J. Mercier | 1.3 hours |

In accordance with the chart above, 8.6 hours should be deducted from Stutts' time and 7.8 hours should be deducted from Herr's time.

The time sheets also reflect that Samuel Zusman, an H&K attorney with more than fifty years of experience in bankruptcy and work-out law, monitored the case and provided assistance to the Receiver, McDowell and other attorneys regarding how to perform their work.  Although his guidance may have been helpful to the Receiver and her attorneys, the education of individuals who were represented as competent to perform the work of a receiver and receiver's counsel are not properly charged to the receivership. Additionally, Zusman worked on some issues more appropriately allocated to more junior attorneys.  This time is as follows:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 6/1/06 | Zusman | Conference with Receiver re credit bid procedure as to Bank loan and re title issues(.3); assemble information re payments to L.Wood Kirkland for preparation of action against her and draft memo to E. Fitzgerald re same (2.3) | 2.6 hours |
| 6/2/06 | Zusman | Proof and finalize memo to E. Fitzgerald re payments to Laurel Wood Kirkland | .5 hours |
| 6/13/06 | Zusman | Read SEC motion re modification of mediation order | .1 hours |
| 6/15/06 | Zusman | Read Receiver's Motion To Sell Summerhill To Austell Rd Holding; conference with B. McDowell and Receiver re terms of sale | .3 hours |
| 6/20/06 | Zusman | Read Kirkland's sworn Accounting, Response To Motion To Expand Receivership Re Units and Checks, and Response To Motion To Compel Execution Of Power Of Attorney, and conference with B. McDowell re issues raised (.7) | .7 hours |
| 6/27/06 | Zusman | Review Receiver's Disclosure Statement filed 6/26/06 | .1 hours |
| 6/28/06 | Zusman | Read Motion to Withdraw of Kirkland's attorney | .1 hours |

| 7/21/06 | Zusman | Read Kirkland's Response re Receiver's Motion To Set Listing Price For Isleworth; conference with B. McDowell re action to be taken re Atlanta litigation (Tropical/Yarborough) | .5 hours |
|---|---|---|---|
| 7/24/06 | Zusman | Read Magistrate Order setting multiple hearings on 7/28; review matters set for hearing and conference with B. McDowell re same (.3); read letter from Atlanta Tropical attorney re withdrawing and conference with B. McDowell re same (.2) | .5 hours |
| 7/26/06 | Zusman | Read Court's order denying SEC continuance motion re 7/28 hearing; conference with B. McDowell re issues/pleadings to be filed re 7/28 hearing | .3 hours |
| 7/31/06 | Zusman | Review Court Orders re listing price of Orlando home, power of attorney re Scotland property, withdrawal of counsel, appeal in forma pauperis | .2 hours |
| 8/8/06 | Zusman | Read Magistrate's Report and Recommendation re Receiver's 5/31/06 Motion To Expand Receivership and conference with B. McDowell re issues raised and action to be taken by Receiver (.3); read 11th Circuits [sic] 8/03/06 issuance of Judicial Question and conference with B. McDowell re response by Receiver (.3) | .6 hours |
| 8/18/06 | Zusman | Review Kirkland's Objection to Magistrate's Report/Recommendation and note issues to discuss with B. McDowell | .3 hours |
| 8/25/06 | Zusman | Conference with M. Allman re issuance of discovery subpoena in Georgia | .1 hours |
| 9/8/06 | Zusman | Read Court's order re Magistrate Report/Recommendation (Doc. 145) re striking some of Kirkland's defenses; read client's renewed motion re Alpharetta property and conference with B. McDowell re homestead exemption amount; conference with B. McDowell re pending issues | .2 hours |
| 9/18/06 | Zusman | Conference with B. McDowell re areas of inquiry re Laurel Wood deposition | .2 hours |

| | | | |
|---|---|---|---|
| 6/25/07 | Zusman | Read A. Rigdon memo regarding homestead exemption issue and conference with B. McDowell regarding same | .4 hours |
| 7/9/07 | Zusman | Conference with A. Rigdon regarding contents of Exhibit and Hearing Notebooks for 7/13 hearing; conference with B. McDowell/A.Rigdon reviewing documents and formulating arguments for 7/13 hearing; review draft of motion for leave to respond to Kirkland's Objection To Sale Of Home and telephone conference with E. Fitzgerald regarding same | 2.1 hours |
| 7/16/07 | Zusman | Read Order regarding sale of Kirkland's residence; conference with Receiver/B. McDowell regarding alternative courses of action based on Order | .4 hours |
| 1/18/08 | Zusman | Regarding Laurel Wood: conference with B. McDowell and A. Benton regarding Amended Complaint; review Amended Complaint; conference with A. Benton regarding suggested revisions (Laurel Wood matter) | 1.5 hours |
| 3/31/08 | Zusman | Regarding sale of Kirkland home: review A. Benton research regarding eviction by Court | .3 hours |
| 4/18/08 | Zusman | Kirkland House: read article regarding distinction between "marketable title" and "insurable title." | .4 hours |
| 6/2/08 | Zusman | Coachman's House: read e-mail from Receiver and draft of motion to appoint appraisers for Coachman's House; note suggested changes and conference with Secretary regarding same; read revised motion and related documents and note additional changes | .5 hours |
| 6/17/08 | Zusman | Coachman's House: Review A. Benton's draft of timetable of Kirkland's actions regarding Receiver's efforts to sell; conference with A. Benton and conference with Receiver regarding same | .6 hours |

| 7/8/08 | Zusman | Coachman's House: study A. Benton memo regarding filing under seal/filing for in camera inspection; conference with B. McDowell regarding same and regarding amending Motion to Seal; read order granting Motion To Seal and conference with Receiver regarding financial analysis format | .4 hours |
| 8/4/08 | Zusman | Review "to do" list; exchange e-mails with Receiver regarding bank accounts | .1 hours |
| 8/13/08 | Zusman | Kirkland Residence: Review judgments regarding Kirkland and orders regarding bringing property into Receivership estate | .3 hours |
| 12/17/08 | Zusman | Laurel Wood: Scan Motion For Summary Judgment/Receiver's Affidavit; note issues and conference with B. McDowell regarding same (Laurel Wood matter) | .9 hours |
| 4/3/09 | Zusman | Review Receiver's Motion to Sell Sunset Bay units; note modifications needed and confer with Receiver and confer with A. Benton regarding same | .3 hours |

Accordingly, I recommend that 7.0 hours be deducted from Zusman's time, which is slightly less than one-half of the time described in the foregoing table, to account for work to educate Receiver and the Receiver's attorneys and for work that reasonably should have been completed by a more junior attorney.

*iv.   Duplicative Work.*

The Court records and the time sheets also reflect duplication of effort regarding the following:

1.      On July 28, 2006,  McDowell recorded 3.0 hours as "prepare for and attend hearings."  On the same day, Fitzgerald recorded 3.6 hours for "Supplemental legal research regarding repatriation order; attend hearing; conference regarding outcome of hearing."  As McDowell was lead counsel, 3.0 hours of Fitzgerald's time should be denied.

2.      On November 16, 2006, Stutts recorded .3 hours for "Review Order approving the reduction of the listing price on the Isleworth home." On the same day, Fitzgerald recorded .3 hours for "Receipt and Review Order on Isleworth home." Because of the duplication of effort, .3 hours of Fitzgerald's time should be denied.

3.      On November 20, 2006, Fitzgerald recorded 1.1 hours for "Receipt and review Magistrates Order on Lakeland property; receipt and review Magistrates Order on Alpharetta Home." The next day, Stutts recorded .3 hours for "Review R&R regarding Alpharetta home." Due to the duplication, one-half of Fitzgerald's time, a total of .55 hours, should be denied.

4.      On December 7, 2007, McDowell recorded .3 hours for "Review motion to dismiss." On the same day, Fitzgerald recorded 1.5 hours for "Receipt and review Motion to Dismiss in response to complaint; legal research regarding sufficiency of complaint." Because of the duplication of effort, .75 hours of Fitzgerald's time should be denied.

In addition, several charges were inappropriate for billing to the receivership, including fees for reviewing documents already in the file or providing instructions to staff. Accordingly, the time below is not compensable:

| Date | Timekeeper | Billing Entry | Hours |
|------|-----------|---------------|-------|
| 6/27/06 | Lannon | Review recent filings by Patrick Kirkland so as to get up to speed on his recent objections to our positions for future motions | .9 hours |
| 7/6/07 | Lannon | Relay status update on procuring counsel in Antigua to Receiver's secretary for the file | .1 hours |
| 9/7/06 | Fitzgerald | Meeting with Brian McDowell regarding status of case and assignments | .5 hours |
| 4/20/07 | Herr | Review of recent orders and R&Rs in matter | .3 hours |

| 10/17/07 | Benton | Reviewed complaint for injunctive relief (1.3); reviewed Order Appointing Receiver in SEC v. Patrick Kirkland case (1.6 hrs) | 2.9 hours |
| 11/2/07 | Benton | Read through Court Orders and previous Motions submitted on behalf of the Receivership (1.2); read through Order granting Motion for Summary Judgment (.5) | 1.7 hours |
| 6/20/08 | Rollins | Review and revise answer to interpleader complaint; **give instructions regarding filing and attention to electronic filing** | .25 hours (.5 hours total) |

In accordance with the chart above, .5 hours should be deducted from Fitzgerald's time, 1.0 hours should be deducted from Lannon's time, .3 hours should be deducted from Herr's time, 4.6 hours should be deducted from Benton's time and .25 hours should be deducted from Rollins' time.

The Receiver stated that travel was not included in the fee requests. On April 11, 2008, however, Leslie Candes recorded 2.4 hours for "Travel to and attend hearing regarding Kirkland's vacating of the property and sale of the Isleworth home." Candes's time should be reduced by 2.4 hours because there is no indication that her presence was required at the hearing.

  *C.*  *Revised Lodestar.*

    1. <u>Receiver.</u>

The revised lodestar for the Receiver, taking into account the time deductions discussed above is as follows:

| Type of Work | Invoice | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Legal | 2358377 | 195.0 | $275.00 | $ 53,625.00 |
| (June 2006 - March 2009) | | | | |
| Administrative | 2381851, | 629.4 | $200.00 | $125,880.00 |
| (June 2006 - June 2009) | 2406627 | | | |
| **TOTAL** | | | | **$179,505.00** |

2. <u>Counsel for Receiver.</u>

The revised lodestar for H&K, taking into account the time deductions discussed above is:

| TimeKeeper | Reasonable Hours | Reasonable Hourly Rate | Total |
|---|---|---|---|
| **Partners** | | | |
| Brockman | .2 | $375.00 | $     75.00 |
| Buhler | .4 | $335.00 | $    134.00 |
| Carpenter | 0.0 | $435.00 | $      0.00 |
| Daniel | 0.0 | $400.00 | $      0.00 |
| Edlein | 22.9 | $260.00 | $   5,954.00 |
| Herr | 151.1 | $400.00 | $ 60,440.00 |
| Jones | .4 | $390.00 | $    156.00 |
| McAlpin | 17.9 | $280.00 | $   5,102.00 |
| McCauley | 24.4 | $440.00 | $  10,736.00 |
| McDowell | 279.9 | $350.00 | $ 97,965.00 |
| Neff | 3.0 | $425.00 | $   1,275.00 |
| Oberto | 3.9 | $250.00 | $    975.00 |
| Rollins | .25 | $440.00 | $    110.00 |
| Stutts | 154.4 | $435.00 | $  67,164.00 |

-52-

| Warren | 76.2 | $200.00 | $ | 15,240.00 |
| Zusman | 78.9 | $450.00 | $ | 35,505.00 |

**Associates**

| Benton | 341.5 | $115.00 | $ | 39,272.50 |
| Boston | 5.6 | $245.00 | $ | 1,372.00 |
| Candes | 162.7 | $155.00 | $ | 25,218.50 |
| Eisnaugle | 28.7 | $175.00 | $ | 5,022.50 |
| Fisher | 1.8 | $155.00 | $ | 279.00 |
| Fitzgerald | 415.9 | $135.00 | $ | 56,146.50 |
| Geronemus | 22.0 | $125.00 | $ | 2,750.00 |
| Gorman | 26.2 | $175.00 | $ | 4,585.00 |
| Graham | 22.5 | $195.00 | $ | 4,387.50 |
| Lannon | 67.2 | $175.00 | $ | 11,760.00 |
| Mockler III | 76.05 | $185.00 | $ | 14,069.25 |
| Rigdon | 57.9 | $100.00 | $ | 5,790.00 |
| Schick | 0.0 | $135.00 | $ | 0.00 |
| Templeton | 98.5 | $125.00 | $ | 12,312.50 |

**Paralegals**

| Allman | 293.9 | $50.00 | $ | 14,695.00 |
| Cronin | 1.0 | $50.00 | $ | 50.00 |
| Glenn | 1.6 | $50.00 | $ | 80.00 |
| Gross | 78.3 | $50.00 | $ | 3,915.00 |
| Hayes | 10.4 | $50.00 | $ | 520.00 |
| Hoagland | 33.7 | $50.00 | $ | 1,685.00 |

| | | | | |
|---|---|---|---|---|
| Kaplan | 1.2 | $50.00 | $ | 60.00 |
| Kluting | 3.2 | $50.00 | $ | 160.00 |
| Pratley | .7 | $50.00 | $ | 35.00 |
| Reagan | .8 | $50.00 | $ | 40.00 |
| Rowe | 2.0 | $50.00 | $ | 100.00 |
| Williams | .8 | $50.00 | $ | 40.00 |
| Zander | 14.2 | $50.00 | $ | 710.00 |
| **Staff** | | | | |
| Lagmay | 51.2 | $0.00 | $ | 0.00 |
| Laudicina | 3.3 | $0.00 | $ | 0.00 |
| Hawkins | .7 | $0.00 | $ | 0.00 |
| **TOTAL** | | | **$ 505,886.25** | |

Accordingly, the combined revised lodestar fees of the Receiver and her counsel total $685,371.25.

D.    *Adjustments to the Lodestar.*

"When the hours and rate are reasonable, a downward adjustment to a lodestar is merited only if the prevailing party was partially successful in its efforts." *Resolution Trust Corp. v. Hallmark Builders, Inc.* 996 F.2d 1144, 1150 (11th Cir. 1993) (per curiam) (citing *Hensley*, 461 U.S. at 434-36). In the present case, the Receiver's efforts to obtain value for the receivership from marshaled assets was only partially successful. Therefore, the Court must determine whether to adjust the lodestar downward to the extent that the fees sought are not commensurate with the results achieved for the defrauded investors on whose behalf the receivership was formed. As the Eleventh Circuit has noted, "[w]hether a receiver merits a fee is based on the circumstances surrounding the receivership and results are always relevant." *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992)

(internal quotations and citations omitted). *See also SEC v. AmeriFirst Funding, Inc.*, Civil Action No. 3:07-cv-1188-D, 2008 WL 2185193, at * 3-6 (N.D. Tex. May 27, 2008)(court reduced receiver's fees due to limited success with respect to various unsuccessful efforts to marshal assets).

In this analysis, I consider the following three factors: the Receiver's management of the assets marshaled; the Receiver and her counsel's actions that resulted in actual losses to the receivership; and, the time the Receiver and her counsel worked on motions seeking to recover their own fees and costs.

### 1.     *Management of the Marshaled Assets.*

As discussed above, the Receiver and her counsel often spent more time in the work of professionals, and incurred more costs, than are reasonable considering the value added to receivership, if any, from the acquisition of particular assets.  For example, with regard to  North Georgia Properties, the Receiver brought in $78,506.23.  She and her counsel seek approximately 70% of that amount, $55,548.50, in revised lodestar fees.  Another, albeit smaller, example is the use of six attorneys (including the Receiver), to sell a motorcycle for $16,500.00, which, after expenses, resulted in a net benefit to the receivership of $13,837.50.  The Receiver and her counsel seek approximately 41% of that amount, $5,671.00, in adjusted lodestar fees.

More egregious examples of the failure to conduct a cost-benefit analysis before deciding to add to or retain property in the receivership are illustrated by the Pembrooke Townhouses, the separate litigation against Laurel Wood, and the Summerhill Property.  With respect to the Pembrooke Townhouses, the Receiver did not determine whether the property had any equity before seeking to add it to the receivership.  She paid approximately $26,000.00 in expenses before electing to abandon the property due to its significant negative equity.  The Receiver and her counsel seek

approximately $5,650.00 in revised lodestar fees for work on this property, which, if paid, would result in a total loss to the receivership of more than $31,000.00.

As for the separate lawsuit against Laurel Wood, the Receiver and her counsel were advised before filing that case that there were no funds from which to collect any judgment the Receiver might obtain.  Nevertheless, the Receiver and her counsel pursued the litigation, which, to date, has produced no recovery for the receivership.   The Receiver and her counsel seek approximately $109,000.00 in revised lodestar fees for the work on this adversary proceeding.

Finally, the Receiver and her counsel's actions with respect to the Summerhill property resulted in an actual loss to the receivership of $304,585.71, for which they seek fees of $19,832.75.

This poor management warrants a significant downward adjustment in the revised lodestar fees.  In determining how to adjust the lodestar, I turn to decisions addressing fees of bankruptcy trustees and their counsel, albeit under statutes and rules that do not control here, because the principles used to determine whether and to what extent fees should be awarded for work that did not benefit the bankruptcy estate, or were detrimental to it, are helpful in this analysis. The cases most analogous to the Receiver and her counsel's failure to conduct a sufficient cost-benefit analysis are *Bean v. Agard*, 251 B.R. 196 (E.D.N.Y. 2000), and *In re Scroggins*, 142 B.R. 940, 945 (Bankr. D. Or. 1992).

In *Bean*, a trustee in bankruptcy filed an adversary action to set aside the transfer of a residence by the debtor after the bankruptcy petition was filed.  The trustee admitted that the transfer of the property did not result in any damage to the bankruptcy estate.  The trustee argued, however, that the adversary action was warranted to punish the purchasers for violating bankruptcy laws.  *Id.* at 199-200.  The presiding district judge considering the appeal from the bankruptcy court's entry

of judgment in the adversary proceeding noted that "[i]n the absence of abusive or fraudulent conduct, the trustee's duty is simply 'to recover money to distribute to creditors.'" *Id.* at 203.  Thus, the court stated that "it would be an abuse of discretion to bring an action to set aside a post-petition transfer if it would not financially benefit the estate.  In order to make this assessment, a trustee must conduct a cost-benefit analysis. . . . In the same vein, the trustee must 'consider whether or not the probable cost of legal services or litigation would be disproportionately large in relation to the maximum probable (not possible) recovery.'" *Id.* at 204-205 (quoting *In re Scroggins*, 142 B.R. 940, 945 (Bankr. D. Or. 1992)).  The court wrote: "[I]t is painfully apparent to the Court that the only persons who would likely benefit by the avoidance action would be the trustee and his counsel should they seek fees for the litigation. The award of such fees would obviously diminish the value of the estate, a result which it is assumed the bankruptcy court will not countenance." *Id.*  Therefore, the district judge advised "the bankruptcy court against compensating the trustee and his counsel for their services in this litigation." *Id.* at 200.

Similarly, in *In re Scroggins* the bankruptcy trustee sought to avoid the transfer of an automobile by the debtors to their daughter.  The matter was presented on stipulated facts.  The trustee failed to include facts supporting an essential element of his claim – that the debtors were insolvent at the time of the transfer – in his stipulation.  Accordingly, the court found that the trustee failed to prove a *prima facie* case.  "Undaunted by the failure in the first adversary proceeding," the trustee filed a second adversary proceeding seeking to avoid the transfer of the same automobile. *Id*. at 944.  Debtors and their daughter filed counterclaims seeking to have the trustee removed and seeking sanctions against the trustee and his counsel for violating the bankruptcy rule equivalent of Fed. R. Civ. P. 11. *Id.*  At that point, the trustee retained special counsel "to extricate [the] trustee

and trustee's attorney from counterclaims." *Id.* The matter was ultimately settled by an agreement that the estate would receive one-half of the value of the automobile, approximately $1,300.00, would pay debtors $1,200.00 for a disputed tax refund, and the counterclaims would be dropped. *Id.* at 944-45. Special counsel received more than $5,000.00 for his work in the case. *Id.* at 945.

The bankruptcy court found that the litigation had not been pursued in a cost-effective manner. The court noted that "'when a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, investigation is unwarranted.'" *Id.* at 945 (quoting *In re Riverside-Linden Inv. Co.*, 925 F.2d 320, 322 (9th Cir. 1991)). The court further wrote: "In the end, the ultimate settlement of this matter was a complete disaster for the estate. While this court would agree that it is improper to judge the results with perfect 20/20 hindsight, it appears obvious that reasonable counsel should have know[n] that pursuing this litigation would not result in a substantial benefit to the estate in light of the probable cost of litigation and the need to defend against foreseeable counterclaims." *Id.* The court concluded that, under these circumstances, the trustee's attorney should be allowed no fees for prosecuting the second adversary proceeding, and should disgorge interim fee payments previously approved that related to that litigation. *Id.* at 942, 945-46. The court also found that "[s]ince it appears that special counsel's primary duties were to extricate the trustee and the trustee's attorney from personal liability," the court would have been justified by also deducting the amount paid to special counsel from the fee award to the trustee's attorney.[28] *Id.* at 947.

---

[28]     The court did not explain why the special counsel fees were not deducted from the fees of trustee's counsel.

Following these analyses, I find that while the Receiver in the present case marshaled significant assets, she did not always take effective and timely steps to determine whether each asset would bring value to the estate, or would only deplete the receivership's assets.  The Receiver also did not seem to make a systematic attempt to control the costs of counsel or other professionals working on the case, despite repeated warnings from the Court that this was the Receiver's responsibility.  *See* Doc. No. 194 at n.4; Doc. No. 197 at 2; Doc. No. 211 at 6-7.

Like the *Scroggins* court, this Court is not attempting to second-guess the decisions of the Receiver and her counsel with 20/20 hindsight.  However, when the failure to conduct the cost-benefit analysis resulted in an actual loss to the receivership, it is appropriate under the *Bean* and *Scroggins* analyses to award no fees for the work.  Accordingly, I recommend that the Court award no fees for the Receiver and H&K with respect to assets that have produced no benefit to the receivership – specifically, Pembrooke Townhouses, the separate litigation against Laurel Wood, and the Summerhill Property.  This results in a downward adjustment of $131,281.75.[29]

    2.    *Actual Losses to the Receivership*.

More egregiously, with respect to some properties, the actions of the Receiver and her counsel reduced the general assets of the receivership.  The most significant losses occurred as a result of the Receiver's decision to retain the Summerhill Property and the Pelican Bay Project in the receivership, despite millions of dollars of outstanding loans that would be due and owing shortly.

---

[29]    This amount is calculated as follows:  $5,649.50 fees related to Pembrooke Townhouses  + $108,732.00 fees for separate litigation against Laurel Wood + $16,900.25 related to the Summerhill property.

The Receiver cannot rely on Court approval of the her actions with respect to these properties to excuse her and her counsel's failure to conduct a cost-benefit analysis before deciding to try to develop and/or sell these properties rather than abandoning them due to the amount of money owed.  Having appointed the Receiver to act as a fiduciary with respect to the receivership, the Court had to rely upon the recommendations of the Receiver and her counsel with respect to how to deal with the various receivership assets.  Once the Court was aware of the risk to which the Receiver and her counsel had exposed the receivership as a result of the decisions concerning the Summerhill Property and Pelican Bay Project, it had limited options to extricate the receivership from these properties.

The decision to hold the Summerhill Property, despite an outstanding mortgage loan of $4.4 million, and the need to pay $187,609.70 to forestall foreclosure on the Summerhill Property, raises a reasonable concern about whether the Receiver and H&K conducted a cost-benefit analysis. The same deficiency applies with respect to the Receiver and her counsel's failure to address the possibility of a credit bid in the contract with the auctioneer.  Most clearly, the Receiver's failure to listen to her counsel regarding the meaning of the "free and clear of liens" language that he drafted, and then to litigate the issue despite her counsel (the drafter's) testimony that he intended the language to transfer the property clear of all liens, including all *ad valorem* taxes, establishes without doubt that no cost-benefit analysis was performed as to this asset.  The failure to conduct this analysis resulted in an actual loss to the receivership of $304,585.71, irrespective of fees and costs.  A downward adjustment of the lodestar in this amount is necessary to account for receivership monies that were taken from general receivership assets to fund the ill-advised actions of the Receiver and her counsel regarding the Summerhill Property.

The decision to attempt to finish construction of the Pelican Bay Project, despite an outstanding loan of more than $10 million, was even more disastrous.  The Receiver and H&K did not promptly identify and resolve the conflict that arose with respect to H&K's representation of the lender, BPNA, on other matters, when BPNA and the receivership became adverse.  The conflict was reasonably foreseeable to the Receiver and H&K after an attorney for BPNA joined H&K, considering the amount owed to BPNA.  After the conflict between H&K and BPNA was disclosed, a special counsel had to be retained in order to settle the dispute with BPNA, including obtaining a release of the Receiver and the receivership from threats of litigation by BPNA.  The Receiver paid $477,917.56[30] out of the general assets of the receivership for the expenses of the Pelican Bay Project and the settlement of that property.

As in *Scroggins*, the receivership suffered an additional $70,029.00 loss to pay special counsel.  Just as the receivership should not pay fees for work that provided no value to the receivership, the receivership also should not suffer a diminution of its general assets resulting from the need to hire special counsel to extricate the Receiver and H&K from problems arising in large part from the conflict with BPNA. While the Receiver and H&K do not seek fees for work on the Pelican Bay Project, this concession only lessens the losses the receivership suffered; it does not return any of the lost money to the receivership.

Accordingly, a downward adjustment of the lodestar in the amount of $547,946.56[31] is necessary to account for receivership monies that were taken from general receivership assets to pay

---

[30]     This amount is calculated as follows: $175,820.56 expenses + $72,097.00 to the City of Palm Bay + $230,000.00 settlement to BPNA.

[31]     This amount is calculated as follows: $477,917.56 expenses and settlement cost + $70,029.00 special counsel fees.

the expenses incurred as a result of the Receiver and her counsel's actions regarding the Pelican Bay Project.

>    3.    *Fees for Filing Motions for Fees.*

Astoundingly, H&K spent a minimum of 382.9 hours writing fee motions.[32]  This is more time than was spent on any other property or project throughout the entire period of the receivership. To put this amount of time in perspective, assuming a forty-hour work week, this represents 9.6 weeks of work solely devoted to H&K's request for fees.  The Receiver personally worked .2 hours of legal time and 76.2 hours of administrative time preparing her requests for fees.  Thus, the Receiver and her counsel request fees of $96,488.75, before the reductions recommended above, for preparing the fee petitions, most of which time was devoted to preparing the two filings presently before the Court.

It is difficult to understand why so much time was required to prepare the present motions. The memorandum of law in support of the Receiver's motion is substantially the same as the memorandum of law in a previous motion. *Compare* Doc. No. 348 *with* Doc. No. 625.  Similarly, the factual recitation is substantially the same in the Receiver's motion as in H&K's motion. *Compare* Doc. No. 625 *with* Doc. No. 626.   Finally, the present motions do not address the time worked by category or provide a lodestar chart of work performed.  Therefore, the Court was required to search through the voluminous invoices to determine whether the time worked was

---

[32]    These hours reflect work *after* excluding 50% of the hours worked by Richard Mockler, III, which H&K reduced at the request of the SEC.

reasonable and commensurate with the money or property that the work was likely to obtain for the receivership, and make its best effort to calculate the fees sought and recommended reductions.[33]

The invoices also reflect that attorney time was not used effectively and efficiently. For example, Attorney Templeton worked 7.2 hours to enter the hourly rates of professionals in the fee application. *See* Doc. No. 627-15 at 32 (03/04/09 and 03/05/09). Attorney Eisnaugle worked more than 20 hours preparing the notice of filing of the Receiver's declaration. *Id.* at 20-22.

Under these circumstances, and in light of the voluminous invoices through which the time spent preparing the present motions are interspersed, a percentage reduction in the revised lodestar fees would be warranted for the excessive time worked preparing fee motions. *See, e.g., Loranger*, 10 F.3d at 782-3 (court stated that spending over 100 hours preparing fee request was "patently excessive" and approved "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure"); *New York Life Ins. Co. v. Waxenberg*, No. 8:07-CV-401-T-27TGW, 2009 WL 5214986, at * 3 (M.D.Fla. Dec. 29, 2009) (reducing fees by an "across the board percentage"). Because the downward adjustments recommended above, however, result in no fee award to the Receiver and her counsel, I do not recommend a further downward adjustment for the excessive work preparing fee petitions.

* * * *

As discussed above, the work of the Receiver and her counsel has reduced the general assets of the receivership by $879,533.49 before payment of the present motions for attorney's fees and

---

[33]     Despite these best efforts, there may be calculation errors. Objections on this basis should be considered in the context of the failure of the Receiver, who is an accountant, to present the fee and expense information to the Court in an easily useable format.

costs. Yet, the Receiver and H&K seek $902,517.25 in fees, of which the revised lodestar fee is $685,371.25. Based on all of the considerations discussed in the foregoing report, I recommend that the Court adjust downward the revised lodestar fees of the Receiver and H&K and award no fees for their work.

This outcome is appropriate because a Receiver is a fiduciary. Due to the failure of the Receiver and her counsel to conduct a proper cost-benefit analysis, they spent money of the receivership that otherwise would be available to compensate the victims of the underlying fraud. *See Scroggins*, 142 B.R. at 946-47. This result is also appropriate to deter other lawyers from accepting appointment as a receiver as a vehicle to obtain fees for themselves and their law firms without due regard for the primary purpose of a receivership – marshaling assets to compensate victims of the underlying misconduct. As the Court has observed in this and other cases, it would behoove the SEC to nominate receivers with experience in the business of the entities and individuals in receivership who have sufficient knowledge to make the cost-benefit analysis required. *See, e.g.,* Doc. No. 563 at 14 n.7; *see also SEC v. Sebastian Int'l Enters, Inc.*, Case No. 6:99-cv-1053-Orl-28KRS.

Finally, this recommendation is not draconian. The Court has already paid the Receiver and H&K $389,377.61 in fees and expenses. I recommend an additional award of costs herein. The Receiver and H&K will be able to submit a final fee request for compensation of their work in the claims process and wrapping up the receivership.

E.      *Out-of-Pocket Expenses.*

    1.      <u>Receiver.</u>

The Receiver seeks the following costs in each invoice detailed below:

| Invoice | Costs claimed |
|---|---|
| 2381851 (June 2006 - March 2009) | $      12.48 |
| 2381809 (June 2006 - March 2009) | $ 25,684.16[34] |
| Adjustment to contract paralegal bill | $      (60.00)[35] |
| Misc. Online Research | $        .57 |
| 2409651 (April 2009 - June 2009) | $   8,808.34 |
| **TOTAL** | **$  34,445.55** |

The invoice dated January 5, 2009 for the contract paralegal indicates that only $940.00 should be compensated because .4 hours were written off for work on the Pelican Bay matter, but the invoice reflects the original amount, $960.00.  *Compare* Doc. No. 627-8 at 9 (entry dated 3/17/09) with Doc. No. 627-10 at 24 (cost back up for the contract paralegal).  Thus $20.00 should be deducted from the Receiver's costs.  Similarly, the cost back up for the contract paralegal invoice dated January 20, 2009 indicates that the Receiver should bill $445.00 due to write-offs, but she billed $505.00 instead.  *Compare* Doc. No. 627-9 (entry dated 3/17/2009) with Doc. No. 627-10.  It appears, however, that this is the $60.00 adjustment reflected above.

The remainder of the Receiver's costs will be considered below.

---

[34]      This total reflects the Receiver's adjustment to eliminate costs for Pelican Bay.  Doc. No. 627-22.

[35]      This adjustment is noted in the Schedule of Costs.  Doc. No. 627-22 at 1.

2.      Counsel for Receiver.

H&K requests the following costs:

| Invoice | Costs claimed |
| --- | --- |
| 2410181 (June 2006 - March 2009) | $ 61,188.78[36] |
| 2410206 (April 2009 - June 2009) | $   1,930.99 |
| 24010136 (Laurel Wood) | $   4,221.56 |
| (June 2006 - March 2009) | |
| 2409724 (Laurel Wood) | $   4,886.10 |
| (April 2009 - June 2009) | |
| 2358412 (Appeal) | $      468.73[37] |
| (June 2006 - March 2009) | |
| Contract Paralegal Invoice not invoiced | $   4,285.00 |
| (Doc. No. 627-20 at 24) | |
| Legal Research Lexis[38] | $   7,352.52 |
| (February 2006 - May 2006) | |
| Legal Research West | $   4,755.65 |
| (February 2006 - May 2006) | |

---

[36]      This number reflects the adjustment for costs eliminated which were associated with Pelican Bay.  Doc. No. 627-22 at 1.

[37]      This number reflects an adjustment to charge $0.10 for copies.  Doc. No. 627-22 at 1.

[38]      The costs were denied for the time period of February 2006 through May 2006 initially because the Receiver and H&K failed to provide essential information regarding H&K's costs for legal research.  Doc. No. 582 at 14.

| | | |
|---|---|---|
| Misc. Online Research | $ | 254.35 |
| (February 2006 - May 2006) | | |
| **TOTAL** | **$ 89,343.68** | |

In invoice number 2410181, on June 14, 2006, H&K claims $89.76 in costs for mileage and parking for Stutts to travel to Orlando to meet with the Receiver.  H&K has not made a showing that this meeting was required to be in person.  Accordingly, this cost should not be allowed.

In addition, that invoice contains a cost for "Legal Services, Inc." for $50.00 without any further explanation.  Because H&K provided insufficient information for the Court to determine the reasonableness of that expense, the $50.00 should be denied.

That invoice also reflects charges of $15.00 and $170.50 on 4/25/08 and 4/28/08 for Clerk of the Court recording, indexing and certified copy fees, but H&K only attaches two receipts totaling $80.00, both dated 4/24/08, to support these costs.  Doc. No. 627-18 at 12-13.  Thus, $90.50 ($170.50 -$80.00) should be deducted from H&K's costs.

H&K  also provided no explanation or backup information for a payment of $22.26 to OfficeMax for "A Boise Company Office supplies" and that claim should be denied.  Doc. No. 627-15 at 45.

   3.  <u>Common Categories of Costs.</u>

    **a.**  **Courier Costs**.

The Receiver includes several charges for either United Parcel Service delivery, Federal Express delivery, or courier service, without a showing that such expedited treatment was necessary.  Especially in light of the electronic filing system in the Court, costs to courier documents sent to the Court generally should not be awarded.  Many of the courier expenses appear to be to packages sent

to counsel or professionals assisting the Receiver, suggesting that the charges were for the convenience of counsel and the professionals rather than a necessary expense.  Accordingly, the following charges should not be allowed:

| | | |
|---|---|---|
| 11/13/07 | Speedy Courier-Federal Courthouse | $14.85 |
| 11/14/07 | UPS-c/o Darlene Thomas | $ 8.83 |
| 1/30/08 | UPS-PPC Room 2420 | $ 7.36 |
| 1/30/08 | UPS-Marc Christopher | $ 6.78 |
| 5/8/08 | Speedy Courier-Federal | $19.80 |
| 5/8/08 | Speedy Courier-Federal | $29.70 |
| 5/9/08 | UPS-Grant Thornton LLP | $ 7.70 |
| 5/9/08 | UPS-Kapila & Company | $ 7.70 |
| 5/15/08 | UPS-Tax Division, Washington DC | $ 9.69 |
| 6/26/08 | UPS-Casselberry, Florida | $ 7.48 |
| 6/26/08 | UPS-Windermere, FL | $ 7.47 |
| 6/30/08 | Speedy Courier-Federal | $ 7.00 |
| 7/11/08 | Speedy Courier-Federal | $ 9.90 |
| 8/12/08 | Speedy Courier-Federal Courthouse | $12.47 |
| 8/22/08 | Speedy Courier-US District Courthouse | $19.80 |
| 1/15/09 | Federal Express-Britney Lamders | $ 8.55 |
| **TOTAL** | | **$185.08** |

Thus, $185.08 should be deducted from the Receiver's costs for courier service.

H&K's invoice number 2410181 also included numerous charges for courier service or expedited postal service through UPS, Federal Express, Speedy Courier, Reliable Courier Service, Georgia Messenger Service or DLS without any explanation of why expedited service was

necessary.  Thus, these costs on the following dates should be denied: 6/6/06, 6/9/06, 6/14/06, 6/21/06, 7/19/06, 7/25/06 (3), 7/31/06, 8/8/06 (3), 8/16/06 (2), 8/30/06 (2), 9/6/06, 9/7/06, 9/12/06 (4), 9/19/06, 9/28/06, 9/29/06, 10/10/06, 10/11/06 (3), 10/16/06 (2), 10/17/06 (2), 10/24/06, 10/27/06, 10/31/06, 11/14/06 (2), 11/21/06 (2), 11/30/06 (3), 12/7/06, 12/15/06 (2), 12/21/06, 2/12/07 (2), 2/13/07, 2/21/07, 2/22/07, 3/15/07, 4/12/07, 6/8/07, 6/12/07, 7/19/07, 7/26/07, 7/31/07, 8/15/07, 8/21/07 (2), 9/13/07, 10/10/07, 11/14/07 (2), 12/18/07 (2), 4/8/08 (3), 5/14/08 (2), 5/15/08, 5/22/08 (2), 6/3/08 (2), 7/8/08, 7/16/08, 3/9/09, 3/25/09. Doc. No. 627-15 at 41-53. These costs total $1,533.28.  When compared to $128.14 spent on regular postage for the same time period, it appears that expedited mailing was the norm rather than the exception and this $1,533.28 should be denied.

In invoice number 2410206, H&K requests $67.23 in costs for courier or expedited postal service which is denied for lack of support, as discussed above, for the following dates: 4/13/09, 4/16/09, 4/20/09, 5/20/09, and 6/4/09.  Doc. No. 627-17 at 19-20.  H&K's invoice number 2410136 regarding Laurel Wood from June 2006 through March 2009 requests reimbursement for $15.60 for Speedy Courier to the "US District Courthouse" without any support for the use of a courier and that expense, too, should be denied.  Doc. No. 627-16 at 29.  H&K's invoice number 2409724 regarding Laurel Wood from April 2009 through June 2009 requests reimbursement for two entries dated 5/10/09 for Speedy Courier, again without support.  Doc. No. 627-17 at 30.  These charges, totaling $40.45 should be denied.

Thus, a total of $1,656.56 should be denied for H&K's courier or expedited postage costs.

### b.      Online Research Costs.

The Receiver and H&K seek reimbursement for "Miscellaneous Online Research."   A spreadsheet of these costs shows that they are for Pacer searches, and business and asset searches. Glenn Ross, H&K's Director of Library Services, avers that the costs for miscellaneous online research represent H&K's actual costs for this research.  Doc. No. 627-26 ¶ 6.  Accordingly, in the absence of objection, I find these costs to be reasonable.

The Receiver and H&K also seek reimbursement for substantial expenses for Lexis and Westlaw legal research.  The Receiver seeks $893.57 in reimbursement for Westlaw charges.  Doc. No. 627-8 at 9, 29.  H&K requests a total of $7,704.71 in Lexis charges, Doc. No. 627-15 at 53; Doc. No.  627-22 at 1, and a total of $18,714.32 in Westlaw charges for computerized research. Doc. No. 627-15 at 53; Doc. No.  627-16 at 29; Doc. No. 627-17 at 20, 31, 44; Doc. No. 627-22 at 1.  Thus H&K requests a total of $26,419.03 for online legal research.

In his declaration, Glenn Ross avers that during 2006, Westlaw and Lexis provided services to H&K on a flat annual fee basis. Doc. No. 627-26 ¶ 3.  In 2007, 2008 and 2009, Westlaw was H&K's exclusive computerized research provider and continued to provide its services on a flat annual fee basis.  *Id*.  Ross avers that during 2006, 2007 and 2008, H&K charged clients amounts it believed would allow H&K to recover its actual annual costs for the services.  *Id*.  However, H&K's client billings for these services were insufficient to cover H&K's costs for computerized research during those years.  *Id*. ¶ 4.   Ross then states that "the amounts invoiced to the Receivership were actually below the costs incurred by H&K."  *Id*.

The only other support provided for these charges was a spreadsheet which appeared to be assembled by H&K showing only the date, user of the services and amount charged.  The Receiver

and H&K did not include any billing or receipts from Westlaw or Lexis, nor any description of the tasks performed or time spent on the tasks.  Doc. No. 627-24.  The Court had previously advised Receiver and H&K that if they sought reimbursement for these expenses, they would need to submit evidence of the actual expense incurred.  *See* Doc. Nos. 582 at 14, 594.  They have failed to provide the evidence required to determine whether the research was necessary or reasonable.  Accordingly, I recommend that the costs for this legal research be denied.

### c.      Photocopies.[39]

The Receiver represents that all copies have been charged at a rate of $0.10, which I previously found to be a reasonable rate.  *See* Doc. No. 582 at 11.  She adjusted the invoice in which costs were not charged at $0.10.  *See* Doc. No. 627-2.  Accordingly, I find the copy charges in the invoices of both Receiver and H&K to be reasonable.   Doc. Nos. 627-9, 29; 627-16 at 53, 627-18 at 20, 31, 44; 627-17 at 29; 627-22 at 1.

The Receiver also requests costs of $30.30 for "copying," which I assume to be an outside copy service.  Doc. No. 627-8 at 29.  H&K requests $9.00 for outside copy service for June 2006 through March 2009 and $68.70 for "copying" in invoice number 2410206 covering April 2009 through June 2009.  Doc. No. 627-15 at 53, 627-17 at 20. In the absence of objection, I find these costs to be  reasonable.

_____

[39]       The Receiver submitted a declaration of Mia Stutzman, the Director of Finance/Accounting Operations of H&K, in support of the request for costs of photocopies, facsimile or telecopy transmission and tabbing and velobinding documents.  Doc. No. 627-7. Stutzman avers that she calculated the actual costs by "taking into consideration materials costs, clerical time, equipment amortization, telephone fees and other related expenses."  *Id.* at 1-2.  As noted herein, overhead costs such as "equipment amortization" and clerical time are not compensable.  Therefore, I did not give great weight to Stutzman's declaration.

The Receiver seeks reimbursement for $37.50 in color copies without providing any justification for the use of more expensive color copies. Doc. No. 627-8 at 9. Similarly, H&K requests $150.58 for color copies in invoice number 2410181 for June 2006 through March 2009. Doc. No. 627-15 at 53. Stutzman's declaration did not state what the per page charge was for color photocopies. Doc. No. 627-27. As they are separately itemized on the invoices and because color copies ordinarily are charged at higher rates than black and white copies, I have estimated the per page charge based on previously submitted commercial rates, and will utilize the lowest rate submitted, which was $0.95 per page. *See* Doc. Nos. 582 at 12, 531-5 at 4. Based on this assumption, the Receiver made 39 color copies, which at $0.10 per page yields recoverable expenses of $3.90. I recommend disallowing $33.60 the Receiver spent for color copies, which is the difference between the cost of color copies and the cost of making the same number of non-color copies. Based on this assumption, H&K made 159 color copies, which at $0.10 per page yields recoverable expenses of $15.90. I recommend disallowing $134.68 spent for color copies.

### d.        Facsimiles/Telecopies.

Both the Receiver and H&K charged for telecopies. I have previously found that $0.10 is a reasonable charge for telecopies. *See* Doc. No. 582 at 12. The Receiver does not state that she adjusted the rate charged for telecopies as she did with copies. However, the amounts charged appear to have been charged at $0.10 per page. In invoice number 2381809, the Receiver seeks reimbursement for $13.90 in telecopies. Doc. No. 627-8 at 9. I find this to be a reasonable expense. H&K requests $112.40 for telecopies. Doc. Nos. 627-15 at 53, 627-16 at 29, 627-17 at 31. Because it appears that H&K has charged $0.10 for telecopies, I find this expense to be reasonable.

> **e.       Tabs/Binding**.

The Receiver seeks reimbursement for $13.90 for tabs/velobind.  Doc. No. 627-8 at 9.  H&K

requests $349.00 for tabs/velobind.  Doc. No. 627-15 at 53; Doc. No. 627-16 at 29; Doc. No. 627-17

at 31.  There is no explanation of the necessity for tabs and velobinding.  Accordingly, these costs,

totaling $362.90, are not reimbursable.

> **f.       Contract Paralegal**.

H&K seeks to recover the costs of hiring contract paralegals from Oakland Data Services,

Inc.  Doc. No. 351-24.  The hourly rate charged for the paralegals was $50.00 per hour.  I find that

this was a reasonable hourly rate.  However, as discussed above, 25.2 hours for the contract

paralegal should be deducted, amounting to a deduction of $1,260.00.

> **g.       Miscellaneous Costs.**

The Receiver and H&K seek reimbursement of other costs, including long distance charges,

witness fees, court reporter fees, etc. In the absence of objection, I find the remainder of the costs

reasonable.

Based on the above, the total deductions from the Receiver's requested costs are $252.08,

which yields a recommended award of costs of $34,193.47.  The cost deductions for H&K total

$30,071.79, yielding a total award for costs for H&K of $59,271.89.

**IV.      RECOMMENDATION.**

For the reasons set forth in the foregoing report, I respectfully recommend that the Second

Application for Approval of Receiver's Fees and Costs (Doc. No. 625) be **GRANTED** in part and

**DENIED** in part, and that the Second Application for Approval of Fees and Costs of Receiver's

Legal Counsel (Doc. No. 626) be **GRANTED** in part and **DENIED** in part.  I recommend that the

Court deny the request for an award of fees of the Receiver and H&K.  I further recommend that the

Court grant the request for an award of costs, in part, and permit the Receiver to disburse funds to

pay $34,193.47 for the Receiver's expenses and $59,271.89 for H&K's expenses.

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 1, 2010.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy